1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT
9                        CENTRAL DISTRICT OF CALIFORNIA

10  JAMES S. EVANS, on behalf of
    himself and others similarly situated,        Case No. CV 17-07641-AB (KKx)
11
12                             Plaintiffs,
                                                  **ORDER GRANTING MOTION TO
13  v.                                            STAY PROCEEDINGS WITH
                                                  RESPECT TO COUNT VI AND
14                                                GRANTING IN PART AND
    WAL-MART STORES, INC., and                    DENYING IN PART PLAINTIFFS'
15  DOES 1-50,                                    MOTION FOR CLASS
                                                  CERTIFICATION**
16
                               Defendants.
17
18
19  **I.  INTRODUCTION**

20          Before the Court is Plaintiff James S. Evans's, on behalf of himself and others

21  similarly situated, ("Plaintiffs") motion for class certification pursuant to Federal Rule

22  of Civil Procedure 23, (Dkt. No. 50), and Defendant Wal-Mart Stores, Inc.'s

23  ("Defendant") motion to stay further proceedings related to Count VI of Plaintiffs' First

24  Amended Complaint. (Dkt. No. 71).[1] Defendant has filed an opposition to Plaintiff's

25
    _____
26  [1] The Court previously granted in part and denied in part Defendant's motion to stay
    further proceedings related to Count VI, staying all further proceedings related to this
27  count pending resolution of the Rule 23(f) petition in *Garcia v. Wal-Mart Stores, Inc.*,
    No. 18-cv-500 (S.D. Cal. 2019). On October 28, 2019, Defendant filed a notice stating
28  that the United States Court of Appeals for the Ninth Circuit denied the Rule 23(f)

                                         1.

motion for class certification, (Dkt. No. 64), and Plaintiff has filed an opposition to Defendant's motion to stay further proceedings. (Dkt. No. 80.) For the reasons stated below, the Court **GRANTS** Defendant's motion to stay further proceedings related to Count VI of Plaintiff's First Amended Complaint, and **GRANTS** in part and **DENIES** in part Plaintiff's motion for class certification.

## II. BACKGROUND

This case arises from Defendant's purported violations of various provisions of California's Labor Code and Business and Professions Code. (Dkt. No. 12 "FAC"). Through its present motion, Plaintiffs seek to certify four classes, and seek to have Plaintiff James S. Evans ("Evans") appointed as a class representative.[2]

### 1. **Plaintiffs' proposed classes**

Plaintiffs seek to certify the following four classes:

#### a. **The Regular Rate Class**
All persons employed as hourly-paid employees by Defendant in any store in California at any time on or after September 13, 2013 through the date of class certification who were paid overtime and non-discretionary bonus in any pay period.

#### b. **The Vacation/Holiday Pay Class**
All persons employed by Defendant in any store in California at any time on or after September 13, 2013 through the date of class certification who earned paid vacation days, including but not limited to, holiday pay without receiving compensation for each vested paid vacation day and/or holiday pay.

#### c. **Wage Statement Class**
All persons employed as hourly-paid employees by Defendant in any store in California at any time during the period beginning one

---

petition. (Dkt. No. 89). Because the United States Court of Appeals for the Ninth Circuit has resolved the Rule 23(f) petition from *Garcia*, the Court, on its own motion, considers whether to grant a stay as to Count VI pending complete resolution of the claim in *Garcia*.

[2] Although Plaintiff, in its moving papers, sought to have Keineisha Smith appointed as class representative, on November 14, 2019, the parties filed a joint stipulation dismissing Keineisha Smith from the case. (Dkt. No. 92.)

year before the filing of this action and ending when final judgment is entered.

**d. Waiting Time Penalty Class**

All persons employed as hourly-paid employees by Defendant in any store in California at any time during the period beginning three years before the filing of this action and ending when final judgment is entered.

## 2. Proposed class representative James S. Evans

To represent the four classes above, Plaintiffs seek to have Evans appointed as a class representative.

Evans worked as a Department Manager at the Wal-Mart Supercenter located in Brawley, California, from March 19, 2013 until October 7, 2016. (Dkt. No. 49-2, Ex. 16, at 1–7.) During his employment with Defendant, Evans was classified as an hourly, non-exempt employee. *Id.* at 5.

When Evans began working for Defendant, he was not given the option to receive paper wage statements, and instead received his wage statements and paystubs electronically. (Dkt. No. 52, "Evans Decl." at ¶ 13). Every three to four months, Defendant paid Evans a bonus, the value of which was calculated based on a number of factors, including Evans's hours worked and the store's overall performance. *Id.* ¶ 9. After Defendant terminated Evans from his employment on October 7, 2016, Evans received his final paycheck by direct deposit approximately two weeks later on October 20, 2016, but did not receive a wage statement. *Id.* ¶ 14. Upon leaving his employment, Evans was not given holiday pay for the next legal holiday. *Id.* ¶ 10.

## 3. Factual Background

### a. Allegations of incorrect overtime payment

Plaintiffs allege that Evans and the Regular Rate Class were not paid overtime at the correct regular rate of pay. (Dkt. No. 49-1 at 10.) In particular, Plaintiffs allege that Defendant did not recalculate Evans and the Regular Rate Class's regular rate of pay when Evans and the Regular Rate Class were paid bonuses through Defendant's

MyShare[3] incentive plan. *Id.* at 11–12.

As a specific example of this failure to pay overtime at the correct regular rate of pay, Plaintiffs rely on the wage statement from Evans dated November 16, 2013 to November 29, 2013. *Id.* That wage statement shows that Evans received a bonus through the MyShare incentive plan of $128.12, but that his regular earnings rate and overtime payment rates remained unchanged, at $9.20 per hour and $13.80 per hour, respectively. (Dkt. No. 49–7, Ex. 20.1, at  840).

Plaintiffs further allege that the failure to properly adjust the regular rate of pay and overtime payment rates occurred in the pay period between May 14, 2016 and May 27, 2016. (Dkt. No. 49-1 at 12.) For that pay period, Evans was paid at a regular rate of $12.24 per hour, and at an overtime rate of $18.36 per hour, according to his wage statement. (Dkt. No. 49-9, Ex. 20.3, at 906.) That wage statement shows that Evans received a bonus through the MyShare incentive plan of $110.25, but that his regular earnings rate and overtime payment rates remained unchanged. *Id.* Plaintiffs allege that the adjustments included on his wage statement, labeled OVERTIME/INCT and OT AWARD/PRIZE, resulted in underpayment in the amount of $0.26 for that pay period. (Dkt. No. 49-1 at 12.)

Because Defendant's overtime policy expressly states that "[o]ur payroll system is programmed to automatically calculate overtime pay, including an associate's regular rate of pay," (Dkt. No. 49-5, Ex. 19.1, at 28), Plaintiffs allege that these failures to correctly adjust regular rates of pay and overtime payment rates based on paid bonuses

---

[3] The MyShare incentive plan provides quarterly bonuses to Defendant's employees if both the store and the employee qualify. (Dkt. No. 64-1 "McChristian Decl.". ¶ 4). When the bonus is available, it is calculated by dividing the total number of hours worked for the period that the employee is eligible by the total number of eligible, active pay weeks in the incentive quarter. *Id.* ¶ 5. The MyShare bonus appears on an employee's wage statement as "MyShare INCT," and a retroactive adjustment to prior overtime paid appears on the employee's wage statement as "OVERTIME/INCT." *Id.* ¶ 7.

from the MyShare incentive plan occurred for all members of the Regular Rate Class.

Based on this evidence, Plaintiffs seek to certify the Regular Rate Class to bring a cause of action against Defendant under California Labor Code §§ 223, 510, 1194, 1197, 1198 for failure to pay hourly and overtime wages

### b. Allegations of unreimbursed holiday pay and paid time off

Defendant's holiday pay policy, effective January 1, 2011 to March 5, 2016, expressly recognized six holidays: New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, and Christmas Day.  (Dkt. Nos. 49-10, Ex. 21 at 236, 49-11, Ex. 22.1 at 353). Under that policy, hourly non-exempt employees were eligible for holiday pay if:

(1) they were a full-time or part-time employee, *i.e.*, not hired on a temporary basis,

(2) they had been on payroll for at least 90 calendar days prior to the holiday,

(3) they were classified as active,

(4) they worked their last scheduled day before the holiday,

(5) they worked their next scheduled day after the holiday, and

(6) they worked the day of the holiday, if they were scheduled to work that day. (Ex. 21 at 237).

Defendant's holiday pay policy does not expressly state that holiday pay does not accrue. *Id.* Plaintiffs allege that Evans and members of the Vacation/Holiday Pay Class were not properly paid their accrued holiday pay upon termination, because "[Evans and the Vacation Holiday Pay Class members] were entitled to be paid for the next available holiday following their [termination] as they worked during that time period and therefore accrued a portion of the time towards the next holiday." (Dkt. No. 49-1 at 14.)

Starting on March 5, 2016, Defendant replaced its holiday pay policy with a Paid Time Off ("PTO") policy. (Ex. 22.1 at 353) (Dkt. No. 49-13, Ex. 22.3 at 422).. Defendant's PTO policy states that "[u]pon termination . . . accrued and unused PTO

will be paid out, provided you have been with [Defendant] for at least one year." (Dkt. No. 22.1 at 356). With respect to unused PTO, Defendant's policy states that if employees have unused PTO, they may carry over a certain amount of PTO hours to the next year (48 hours for both full-time, hourly employees and part-time, hourly employees). *Id.* at 354; Ex. 22.3 at 415. Defendant's PTO policy further states that "[a]ll additional unused PTO will be automatically paid out to [employees] in [employees' first paychecks each February]."[4] Ex. 22.1 at 354, Ex. 22.3 at 415.

Evans attests in his declaration that beginning in 2016, he earned one hour of PTO for every 11.8 hours worked, but that he "do[es] not believe that [he] was paid out all of [his] accrued, but unused vacation/PTO time." Evans Decl. ¶ 11.

Based on this evidence of holiday pay and PTO, Plaintiffs seek to certify the Vacation/Holiday Pay Class to bring a cause of action against Defendant under California Labor Code § 227.3 for failure to reimburse unused holiday pay and PTO.

### c. Wage statement allegations

Plaintiffs allege that Evans and members of the Wage Statement Class elected to have their wages directly deposited into their checking accounts, but that none were given the opportunity to elect to receive a paper wage statement. (Dkt. No. 49-1 at 16.)

According to Plaintiffs, Defendant gives employees three options for receiving their wages: (1) direct deposit into their checking or saving accounts, (2) a Money Network Mastercard Paycard debit card, and (3) a Money Network check. *Id*.; (*See also* Dkt. No. 49-14, Ex. 24 at 957). Defendant's electronic payment program policy states that under the Money Network programs, "[d]etailed paystub information is available [online] at walmortone.com or by using the in-store FD 300 paystub printing option."

---

[4] Plaintiffs assert that Defendant changed its PTO policy on February 1, 2017, to begin paying employees for unused PTO. (Dkt. No. 49-1 at 15). However, the policies submitted into evidence that were in effect on both March 5, 2016, and on February 1, 2017, state that Defendant's policy is to pay employees for unused PTO. *See* Ex. 22.1 at 354, Ex. 22.3 at 415.

Ex. 24 at 957. Defendant's Money Network program policy further states that "[s]ummaries of paystub information can be received using text message or phone interactive voice response." *Id.* For direct deposit recipients, Defendant's policy states that employees may "print [their] pay statement . . via the My Money . . . section of [walmartone.com]."[5] *Id.* at 963.

Because these policies allegedly deprived Evans and members of the Wage Statement Class of the ability to receive a paper wage statement, Plaintiffs seek to certify the Wage Statement Class to bring a cause of action against Defendant under California Labor Code § 226 .

### d. Waiting time penalty allegations

Plaintiffs allege that Evans was terminated from his employment with Defendant on October 7, 2016, but did not receive his final paycheck until October 20, 2016. (Ex. 20.3 at 926.)

Based on these allegations, Plaintiffs seek to certify the Waiting Time Penalty Class to bring a cause of action against Defendant under California Labor Code §§ 201, 202, 203.

## III.   LEGAL STANDARDS

### 1. Standard for a motion to stay proceedings

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1963)). "A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the

---

[5] Plaintiffs assert that for Defendant's direct deposit enrollees, they are only able to obtain their wage statements "at walmartone.com, via text message, by phone or in your work location.' (Dkt. No. 49-1 at 16.) But Plaintiffs provide no citation to the evidence demonstrating this policy in their papers, and the Court is unable to find this statement in the evidence submitted in support of Plaintiff's motion for class certification.

parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd*., 593 F.2d 857, 863 (9th Cir. 1979). Critically, "[a] stay is not a matter of right," but rather "an exercise of judicial discretion, and the propriety of its issues is dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433 (2009) (internal quotation marks and alterations omitted). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433–34.

In exercising its inherent power to stay proceedings, the Court is guided by several factors: (1) the possible damage that may result to the non-moving from the granting of a stay, (2) the hardship or inequity which a moving party may suffer in being required to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay. *See CMAX*, 300 F.2d at 268 (citing *Landis*, 299 U.S. at 254–55).

### 2.  Standard for class certification

To certify a class, Plaintiffs bear the burden of showing they meet each of the four requirements of Federal Rule of Civil Procedure ("Rule") 23(a), together with at least one of the requirements of Rule 23(b).  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979 (9th Cir. 2011).  Rule 23(a) requires that:

1. the class is so large that joinder of all members is impracticable (numerosity);

2. there are one or more questions of law or fact common to the class (commonality);

3. the named parties' claims are typical of the class (typicality); and

4. the class representatives will fairly and adequately protect the interests of other members of the class (adequacy of representation).

Fed. R. Civ. P. 23(a)(1-4); *Ellis*, 657 F.3d at 980.  The party seeking to certify a class bears the burden of demonstrating that each element of Rule 23 is satisfied and must "affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original). The district court then must engage in a "rigorous analysis" to ensure that the prerequisites of Rule 23(a) have been satisfied. *Id.* Evaluating whether the plaintiff has satisfied the Rule 23 requirements "is intimately involved with the merits of the claims." *Ellis*, 657 F.3d at 980. "Frequently th[e] 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Dukes*, 564 U.S. at 351.

As for Rule 23(b), Plaintiffs seek to certify the proposed class under the third prong, which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

## IV.    DISCUSSION

### 1.    Defendant has shown that a stay is warranted as to Count VI Plaintiffs' FAC pending resolution of the same claim in the *Garcia* case

Defendant moved this Court for a stay of Count VI of Plaintiffs' FAC, (failure to pay timely wages in violation of California Labor Code §§ 201, 202, 203) on the ground that the same claim was recently certified for class action treatment in another case, *Garcia v. Wal-Mart Assocs., Inc.*, et al., No. 18-cv-500, Dkt. No. 48 (S.D. Cal. Aug. 28, 2019). Defendant contended that Plaintiffs in this action were also members of the class certified in *Garcia*, that Plaintiffs would suffer little to no prejudice by the issuance of a stay, that Defendant would be highly prejudiced by the issuance of a stay, and that a stay would be in the interests of judicial economy. (Dkt. No. 71.) On October 23, 2019, the Court granted in part and denied in part Defendant's motion for stay, staying all

proceedings related to Count VI of Plaintiffs' FAC pending resolution of the Rule 23(f) petition in *Garcia*. Five days later, on October 28, 2019, Defendant filed a notice of the denial of the Rule 23(f) petition in *Garcia*, and again requested that the Court issue a stay pending final resolution of the failure to pay timely wages claim in *Garcia*.

As before, the Court concludes that the potential prejudice to Plaintiffs due to a stay is minimal, because Plaintiffs are already members of the certified class in *Garcia*. (Dkt. No. 88 at 6.) The Court further concludes that the balance of hardships tips in Defendant's favor because Defendant will likely incur unnecessary and burdensome litigation costs absent a stay by being forced to litigate approximately identical claims in two separate judicial forums. *Id.* at 8. Finally, the Court concludes that the interests of judicial economy weigh heavily in favor of granting the stay, as the *Garcia* court will decide issues of fact and law directly pertinent to Plaintiffs' claims, and the issuance of a stay may prevent duplicative or inconsistent judicial rulings. *Id.* at 8–9. The Court therefore concludes that Defendant has met its burden under *Landis* to show that a stay is warranted.

The Court accordingly **GRANTS** Defendant's motion to stay Count VI of Plaintiffs' FAC pending resolution of the failure to pay timely wages claim in *Garcia*.

## 2. Plaintiffs' proposed Regular Rate Class satisfies Rule 23's requirements for class certification

Plaintiffs' first proposed class, the Regular Rate Class, satisfies the Rule 23 requirements for class certification.

### a. Numerosity

To satisfy Federal Rule of Civil Procedure 23(a)(1), Plaintiffs must show that the proposed class is so numerous as to render joinder of all members impracticable. Fed. R. Civ. P. 23(a)(1). Here, Plaintiffs assert that the proposed Regular Rate Class comprises more than 200,000 individuals, a number that Defendant does not contest. (Dkt. No. 64 at 2.) Because the number of proposed class members far exceeds the forty putative class members which has been held to be a minimum to presumptively establish

10.

numerosity, and would undoubtedly create practicability problems if joinder were pursued, the Court concludes that Plaintiffs have satisfied the numerosity requirement with respect to the Regular Rate Class. *See Napolitano v. Fonality, Inc.*, No. 14-cv-01061, 2014 WL 12567145, at \*2 (C.D. Cal. Aug. 7, 2014).

### b. Commonality

"To show commonality, Plaintiffs must demonstrate that there are questions of fact and law that are common to the class." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (citing Fed. R. Civ. P. 23(a)(2)). The Court's rigorous analysis must determine whether the moving party has shown that "the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotation marks omitted).

Here, Plaintiffs assert that all proposed members of the Regular Rate Class have suffered the same injury, and thus present common questions of law and fact, because Defendant automatically calculated the proposed members' regular rate of pay without factoring in the MyShare incentive plan bonuses these proposed members received. (Dkt. No. 49-1 at 10–13.) In response, Defendant argues that Plaintiffs fail to present a viable theory of recovery under California law, because California's Labor Code does not require that production-based bonuses such as the MyShare incentive plan, as opposed to flat-sum bonuses, be factored into an employee's regular rate of pay in the manner specified by Plaintiffs, and that Defendant did in fact correctly calculate Evans's overtime pay rate. (Dkt. No. 64 at 13–15.)

First, because Defendant's arguments as to the viability of Plaintiffs' legal theories does not affect the Court's Rule 23 analysis, the Court declines to consider these arguments at this procedural stage. *See Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 568 U.S. 455, 466 (2013) ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."); *see also Alcantar v. Hobart Serv*,

800 F.3d 1047, 1053 (9th Cir. 2015) ("[W]hether class members could actually prevail on the merits of their claims is not a proper inquiry in determining the preliminary question whether common questions exist . . . To hold otherwise would turn class certification into a mini-trial . . . when the purpose of class certification is merely to select the method best suited to adjudication of the controversy fairly and efficiently.") (internal citations, quotation marks, and alteration omitted).

Second, Plaintiffs have presented sufficient evidence to show that putative members of the Regular Rate Class present common questions of fact and law, and have suffered from the same purported injury. In particular, Plaintiffs present wage statements from Evans, dated November 16, 2013 to November 29, 2013, and May 14, 2016 to May 27, 2016, which allegedly show that Evans's regular rate of pay was not adjusted based on the bonuses he received through Defendant's MyShare incentive plan. (*See* Exs. 20.1 at 840, 20.3 at 906.) Plaintiffs have further presented evidence that Defendant automatically calculates the regular rate of pay for determining overtime compensation rates for all of its employees. Ex. 19.1, at 28. Thus, common questions of fact and law exist as to the putative members of the Regular Rate Class as to (1) whether their regular rate of pay was adjusted based on the payment of MyShare bonuses, and (2) whether that adjustment or failure to adjust the regular rate of pay resulted in a breach of California's Labor Code. Because Plaintiffs have demonstrated that all members of the Regular Rate Class suffer from the same purported injury, commonality under Rule 23(a)(2) is satisfied.

### c. **Typicality**

To satisfy the third requirement of Rule 23(a), Plaintiffs must show that the named parties' claims are typical of the class. Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis*, 657 F.3d at 984

(internal quotation marks omitted).

Here, Plaintiffs have persuasively argued that Evans suffered from the same or similar injury as all putative members of the Regular Rate Class, as his regular rate of pay for weeks in which he was paid the MyShare incentive plan bonus was automatically calculated by Defendant, and Defendant automatically calculates all putative class members' regular rates of pay, including when they receive bonuses through the MyShare incentive plan. Further, Defendant's allegedly automatic calculation of putative class members' regular rates of pay provides evidence that all putative class members were purportedly injured by the same course of conduct. The Court accordingly concludes that Plaintiffs have met the typicality requirement of Rule 23(a)(3).

### d. Adequacy

To satisfy the fourth requirement of Rule 23(a), Plaintiffs must show that the named plaintiffs fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). In determining adequacy, the Court must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class." *Ellis*, 657 F.3d at 985 (internal quotation marks omitted).

Here, Plaintiffs have shown that Plaintiffs' counsel and Evans have no known conflicts of interest with the putative members of the Regular Rate Class. (*See* Dkt. No. 49-1 at 22–23). Further, the only evidence indicating that the named plaintiffs and their counsel will not prosecute the action vigorously is Smith's failure to attend a scheduled deposition, and the parties have now stipulated to dismiss Smith from the case. (Dkt. No. 92.) Because the ongoing discovery process does not show that Plaintiffs and their counsel are unable to vigorously prosecute the action, the Court concludes that Plaintiffs have demonstrated the adequacy requirement of Rule 23(a)(4).

### e.  Predominance and Superiority

Under Rule 23(b)(3), Plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

Here, the Court concludes that questions of law or fact common to putative members of the Regular Rate Class clearly predominate over any questions affecting only individual members. In particular, all putative members of the Regular Rate Class present (1) the common factual question of whether their regular rate of pay in determining their overtime compensation rate accounted for bonuses received through Defendant's MyShare incentive plan, and (2) the common legal question of whether the failure to account for bonuses received through Defendant's MyShare incentive plan violated California's Labor Code. Defendant challenges this conclusion, arguing that individualized calculations and analysis will be necessary for each member of the putative Regular Rate Class, requiring analysis of each individual members' wage statement. (Dkt. No. 64 at 20.) However, while Defendant is correct that analysis of each individual member's wage statement would be required to determine whether their regular rate of pay accounted for payments through the MyShare incentive plan, the elements of Plaintiffs' regular rate claim outlined above are subject to common proof by answering the same underlying factual and legal questions. *See Erica P. John Fraud, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) ("Considering whether questions of law or fact common to class members predominate begins . . . with the elements of the underlying cause of action."). Because questions of law and fact common to putative members of the Regular Rate Class predominate over any questions affecting only individual putative members, the Court concludes that Plaintiffs have adequately shown predominance under Rule 23(b)(3).

With respect to superiority, Rule 23(b)(3) provides four factors for the Court to

14.

consider: (1) the class members' interests in individually controlling the prosecution or defense of separate actions, (2) the extent and nature of any litigation concerning the controversy already begun, (3) the desirability or undesirability of concentrative the litigation of the claims in the particular forum, and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)–(D). Here, Plaintiffs have clearly shown that the class action procedure provides a clear benefit to putative members of the Regular Rate Class, as the amounts in controversy for each putative class member are likely too small to encourage litigation on an individual basis. *Cf. Blackie v. Barrack*, 524 F.3d 891, 899 (9th Cir. 1975) ("Congress, by authorizing and approving Rule 23(b)(3), created a vehicle to put small claimants in an economically feasible litigating posture."). Further, there has been no showing that any other litigation concerning the Regular Rate Controversy has yet begun. Finally, although Defendant contends that the proposed Regular Rate Class will be unmanageable, the proof required to prevail on Plaintiffs' regular rate claims is not so individualized and complex as to render the case unmanageable as a class action. The Court accordingly concludes that Plaintiffs have demonstrated superiority under Rule 23(b)(3).

Because the Court concludes that all of the requirements of Rule 23(a), and Rule 23(b)(3) have been satisfied with respect to the Regular Rate Class, the Court **GRANTS** Plaintiffs' motion to certify the Regular Rate Class.

### 3. Plaintiffs' Proposed Vacation/Holiday Pay Class does not satisfy Rule 23's requirements for class certification

Plaintiffs' second proposed class, the Proposed Vacation/Holiday Pay Class, does not satisfy the standing requirements for class certification or Rule 23(a)'s commonality requirements.

#### a. The named Plaintiffs lack standing to bring a claim based on a failure to reimburse unused holiday time

Plaintiffs seek to certify a class to bring a claim under California Labor Code § 227.3 for failure to pay unused holiday time. In particular, based on Defendant's

15.

Holiday Pay policy program, in effect from January 1, 2011 to March 5, 2016, *see supra* at 5, Plaintiffs contend that Evans, and similarly situated members of the putative class, did not receive payment for the *upcoming* holiday upon termination. (See Dkt. No. 49-1 at 13–14.) However, as Defendant correctly points out, the evidence in the record, including Plaintiffs' own moving papers, clearly shows that Defendant no longer paid employees under its Holiday Pay Program by the time that Evans was terminated on October 20, 2016. (*See* Ex. 22.1 at 353.) Because the evidence shows that Evans, like all similarly situated employees of Defendant. was not eligible to receive holiday pay at the time of termination, Evans has not demonstrated injury and therefore lacks standing to bring this claim. *See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) ("In a class action, standing is satisfied if at least one named plaintiff meets the requirements.").

### b. Plaintiffs have not shown that there are in fact common questions of fact with respect to its unpaid PTO claim

Plaintiffs also seek to certify a class to bring a claim under California Labor Code § 227.3 for failure to pay unused PTO. However, the only evidence Plaintiffs identify in support of their motion to certify the class based on this theory is a single declaration from Evans in which he states that "[b]eginning in 2016, [he] earned one hour of PTO time per 11.8 hours worked with a maximum of 176 hours per year," and that "[he] does not believe that [he] was paid out all of his accrued, but unused[,] vacation/PTO time." Evans Decl. ¶ 11. In order to satisfy Rule 23(a)'s commonality requirement, Plaintiffs must show that there are "*in fact* . . . common questions of law or fact." *Dukes*, 564 U.S. at 350 (emphasis in original). Here, this bare bones evidence of unpaid PTO as to a single individual, with no indication that the failure extended to other individuals, or that the failure to pay unused PTO did in fact occur, is insufficient to meet the commonality requirements of Rule 23(a)(2).

Because Plaintiffs lack standing to bring a claim under California Labor Code § 227.3 based on the failure to pay unused holiday time, and because Plaintiffs have

failed to show common questions of fact with respect to their § 227.3 claim based on a failure to pay unused PTO, the Court **DENIES** Plaintiffs' motion to certify the Vacation/Holiday Pay Class.

### 4. Plaintiffs' proposed Wage Statement Class satisfies Rule 23's requirements for class certification

Plaintiffs' final proposed class is the Wage Statement Class. Plaintiffs seek to certify this class to bring a cause of action under California Labor Code § 226(a) against Defendant based on Defendant's purported failure to provide employees with the opportunity to receive paper wage statements.

#### a. Numerosity

First, as to numerosity, Plaintiffs state that there are more than 200,000 members of the proposed Wage Statement Class, (Dkt. No. 49-1 at 21), a number that Defendant does not contest. (Dkt. No. 64 at 2). Because the number of proposed class members exceeds the forty putative class members which has been held to be a minimum to presumptively establish numerosity, and would create practicability problems if joinder were pursued, the Court concludes that Plaintiffs have satisfied the numerosity requirement with respect to the Wage Statement Class. *See* Napolitano, 2014 WL 12567145, at *2.

#### b. Commonality

"To show commonality, Plaintiffs must demonstrate that there are questions of fact and law that are common to the class." *Ellis*, 657 F.3d at 981 (citing Fed. R. Civ. P. 23(a)(2)). The Court's rigorous analysis must determine whether the moving party has shown that "the class members have suffered the same injury." *Dukes*, 564 U.S. at 350 (internal quotation marks omitted).

Here, Plaintiffs argue that the Wage Statement Class presents common questions of fact and law, and that the Wage Statement Class has suffered the same injury. In particular, Plaintiffs argue that the Wage Statement Class presents the common factual

question of whether Defendant provided employees with an opportunity to elect to receive paper wage statements. Plaintiffs cite Defendant's own payment policy in support of this assertion, arguing that it shows that Defendant provides three potential methods of payment to all class members, none of which includes receiving a paper wage statement. (Ex. 24 at 957–58). Plaintiffs further argue that the Wage Statement Class presents the common legal question of whether Defendant's payment options comply with California Labor Code § 226(a)'s requirement that employees be provided with "an accurate itemized statement in writing." Cal. Labor Code § 226(a).

In opposing certification of the Wage Statement Class, Defendant argues that Plaintiffs fail to present common evidence, that Defendant does in fact allow for employees to elect to receive written wage statements, and that Defendant's policy of allowing employees with electronic wage statements to print those statements either online or in stores renders the policy compliant with California Labor Code § 226(a). However, as noted in the paragraph above, Plaintiffs have provided common evidence as to Defendant's payment policy as it applies to putative class members. Further, Defendant's arguments that it does  in fact provide paper wage statements, and that its policy with respect to electronic wage statements, go purely to the merits of Plaintiffs' claim, and do not affect the Court's Rule 23 analysis. *See Amgen*, 568 U.S. at 466 ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."); *see also Alcantar*, 800 F.3d at 1053.

Because the Court concludes that Plaintiffs' putative Wage Statement Class presents common issues of fact and law, and Plaintiffs have shown that the putative class members suffered the same injury, the Court concludes that the commonality requirement of Rule 23(a)(2) is satisfied.

### c. Typicality

To satisfy the third requirement of Rule 23(a), Plaintiffs must show that the

named parties' claims are typical of the class. Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis*, 657 F.3d at 984 (internal quotation marks omitted).

Because Plaintiffs have shown that Evans was not given the opportunity to receive paper wage statements, Evans Decl. ¶ 13, and that Evans was subjected to the same payment policy as other putative members of the Wage Statement Class, Ex. 24 at 957–58, Plaintiffs have shown that other members of the Wage Statement Class have suffered the same or similar injury, and that the action is based on conduct that is not unique to Evans. Further, because Plaintiffs show that the alleged injury occurred pursuant to a policy of Defendant, Plaintiffs have demonstrated that class members were purportedly injured by the same course of conduct. The Court according concludes that the typicality requirement of Rule 23(a)(3) is satisfied.

### d. Adequacy

To satisfy the fourth requirement of Rule 23(a), Plaintiffs must show that the named plaintiffs fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). In determining adequacy, the Court must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class." *Ellis*, 657 F.3d at 985 (internal quotation marks omitted).

As before, the Court concludes that Plaintiffs have shown that Evans and class counsel have no conflicts of interests with other class members. *See supra* at 13–14. Further, because the discovery violation identified by Defendant is not sufficient at this juncture to hold that Evans is not an adequate class representative, and the record shows that Plaintiffs have vigorously prosecuted this action as of present, the Court concludes

that the second element of the adequacy inquiry is also satisfied. Based on the foregoing, the Court concludes that the adequacy requirement of Rule 23(a)(4) is satisfied with respect to the Wage Statement Class.

### e. Predominance and Superiority

Under Rule 23(b)(3), Plaintiffs must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Here, Defendant argues that predominance cannot be established with respect to the Wage Statement Class because a factfinder would have to determine a bevy of individual questions, including (1) whether each member elected to receive paper wage statements, (2) why each member did or did not elect to receive paper wage statements, (3) whether each member informed Defendant that he or she would like printed wage statements, and (4) why each member did or did not inform Defendant that he or she would like printed wage statements (Dkt. No. 64 at 21.) However, as Plaintiffs have shown, the individualized inquiries inherent in the putative Wage Statement Class's cause of action would necessarily be more circumscribed. In particular, the only individualized determination that would be necessary is whether each putative class member was given the opportunity to elect to receive a paper wage statement. Because Plaintiffs challenge Defendant's purported policy of failing to provide employees with an opportunity to elect to receive a written wage statement, the individualized inquiries required in this action are limited.

Because the required individualized inquiries are limited, the Court concludes that Plaintiffs have satisfied the predominance requirement. In this action, the common factual question of whether Defendant provided employees with an opportunity to elect to receive paper wage statements, and the common legal question of whether Defendant's payment policy violated California Labor Code § 226(a), clearly

predominate over any questions affecting only individual members. The Court accordingly concludes that the predominance requirement of Rule 23(b)(3) is met.

As for superiority, Rule 23(b)(3) provides four factors for the Court to consider: (1) the class members' interests in individually controlling the prosecution or defense of separate actions, (2) the extent and nature of any litigation concerning the controversy already begun, (3) the desirability or undesirability of concentrative the litigation of the claims in the particular forum, and (4) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)–(D). As Plaintiffs showed for the Regular Rate Class, putative members of the Wage Statement Class would likely benefit greatly from the procedural mechanisms of a class action, as each of their individual claims is likely too small in isolation to warrant bringing a separate action. Further, there has been no showing that any litigation concerning the Wage Statement Class's controversy has already begun. And Finally, although Defendant argues that the Wage Statement Class would be unmanageable because of the required individualized determinations, (Dkt. No. 64 at 23–24), because the Court concludes that the Wage Statement Class presents limited individualized inquiries, the Court similarly concludes that the Wage Statement Class is manageable.

Because the Court concludes that the predominance and superiority requirements of Rule 23(b)(3) are satisfied, and that the requirements of Rule 23(a) are also satisfied, the Court **GRANTS** Plaintiffs' motion to certify the Wage Statement Class.

### 5. The Court declines to rule on the sufficiency of Plaintiffs' proposed Waiting Time Penalty Class

Because, as noted above, *supra* at 10–11, the Court **GRANTS** Defendant's motion to stay all proceedings related to Count VI of Plaintiffs' FAC pending resolution of the claims in *Garcia*, the Court declines to rule at this juncture on the sufficiency of Plaintiffs' proposed Waiting Time Penalty Class.

//

1

## V. CONCLUSION

2

3        For the reasons stated above, the Court **GRANTS** Defendant's motion to stay all

4   proceedings related to Count VI of Plaintiffs' FAC, **GRANTS** Plaintiffs' motion to

5   certify the Regular Rate Class, **DENIES** Plaintiffs' motion to certify the

6   Vacation/Holiday Pay Class, and **GRANTS** Plaintiffs' motion to certify the Wage

7   Statement Class.

8

9   Dated: November 25, 2019   _____

10                              HONORABLE ANDRÉ BIROTTE JR.
                                UNITED STATES DISTRICT COURT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28