Robert J. Herrington (SBN 234417)
GREENBERG TRAURIG LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Tel:  310.586.7700
Fax: 310.586.7800
herringtonr@gtlaw.com

Naomi G. Beer (*pro hac vice*)
GREENBERG TRAURIG LLP
1144 Fifteenth Street, Suite 3300
Denver, Colorado 80202
Tel: 303-572-6500
Fax: 303-572-6540
beern@gtlaw.com

Attorneys for Defendant WALMART INC.
f/k/a WAL-MART STORES, INC.

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

JAMES S. EVANS on behalf of himself, all others similarly situated

      Plaintiff,

v.

WAL-MART STORES, INC.,
a Delaware corporation and DOES 1 through 50, inclusive,

      Defendant.

CASE NO.  2:17-cv-7641-AB-KK

**DEFENDANT WAL-MART STORES, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

Honorable André Birotte, Jr.

Hearing Date: February 28, 2020
Time:      10:00 a.m.
Room:     Courtroom 7B

Action Filed: September 13, 2017
Action Removed: October 18, 2017

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 28, 2020, at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable André J. Birotte, Jr. of the above-entitled Court, in Courtroom 7B of the United States District Court for the Central District of California, located at 350 West First Street, Los Angeles, California 90012, Defendant Walmart Inc., f/k/a Wal-Mart Stores, Inc. ("Walmart") will and hereby does move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an order entering summary judgment as follows:

First, the Court should grant partial summary judgment to Walmart on Plaintiff's wage statement claim (Count V) because Walmart provided its associates with paper wage statements unless they consented to receive electronically accessible wage statements; in addition, the electronically accessible wage statements fully comply with the requirements of Section 226(a) of the California Labor Code.

Second, the Court should grant Walmart to partial summary judgment on Plaintiff's regular rate claim (Count III) because the formula used to recalculate the regular rate based on Plaintiff's receipt of the MyShare incentive bonus complies with California law.

Third, the Court should grant partial summary judgment as to Plaintiff's PAGA claim (Count VIII) because he failed to pursue class certification of such claims, he lacks standing to pursue them, and such claims cannot be manageably tried.

Fourth, the Court should granted partial summary judgment as to Plaintiff's individual vacation and PTO claims because he does not have standing to assert the vacation-pay claim and has no evidence that his PTO was miscalculated. The Court also should grant summary adjudication on the UCL and PAGA claims because they are derivative of the other claims and thus fail for the same reasons.

Walmart bases its Motion on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying Statement of Uncontroverted Facts and Conclusions of Law required by L.R. 56-1, the accompanying Declaration of

Robert J. Herrington and exhibits, as well as the Appendix of Evidence, including the other declarations contained therein, the pleadings and other materials filed in this case, and on such other and further oral or documentary evidence and argument as it may present to the Court at or prior to the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to Central District of California Local Rule 7-3, which took place on several dates, including during several discussions in December 2019 and on January 17, 22 and 24, 2020.

DATED:  January 24, 2020                  GREENBERG TRAURIG, LLP

By          */s/ Robert J. Herrington*
Robert J. Herrington
Naomi G. Beer (*pro hac vice*)

Attorneys for Defendant
Walmart Inc., f/k/a Wal-Mart Stores, Inc.

ii

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................. 1

PROCEDURAL BACKGROUND ....................................................................... 2

LEGAL STANDARD .......................................................................................... 3

STATEMENT OF UNCONTROVERTED FACTS ............................................ 3

    A.    Plaintiff James Evans ....................................................................... 3

    B.    Walmart's Wage Statement Policy ................................................... 3

    C.    Walmart's MyShare Plan .................................................................. 4

    D.    The Calculation of Additional Overtime Following a Bonus – Generally ......................................................................................... 5

    E.    Plaintiff's MyShare Awards and Calculation of Additional Overtime .... 6

ARGUMENT ........................................................................................................ 8

    A.    The Court Should Grant Summary Judgment for Walmart on the Wage Statement Claim (Count V). ................................................... 8

        1.    Walmart Associates Received Paper Wage Statements Unless They Elected Electronic Wage Statements. ...................... 8

        2.    Electronic Access To Wage Statements Complies With The Law. ................................................................................ 9

        3.    Plaintiff Cannot Show That Any Violation of Section 226 Was Knowing and Intentional ............................................ 11

    B.    Walmart's Bonus Formula Complies With California Law (Count III) ... 12

    C.    The Court Should Grant Summary Judgment in Walmart's Favor on Plaintiff's Representative PAGA Claim (Count VIII). ............................. 15

    D.    The Court Should Grant Summary Judgment on Plaintiff's Holiday, PTO and Derivative PAGA and UCL Claims (Counts IV, VII and VIII). .................................................................................... 19

CONCLUSION .................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adams v. Luxottica U.S. Holdings Corp.*,
No. 07-cv-1465-AHS, 2009 WL 7401970 (C.D. Cal. July 24, 2009)...................17, 18

*Alonzo v. Maximus, Inc.*,
832 F. Supp. 2d 1122 (C.D. Cal. 2011) ......................................................................13

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)......................................................................................................3

*Apodaca v. Costco Wholesale Corp.*,
No. 12-cv-5664, 2014 WL 2533427 (C.D. Cal. June 5, 2014) ...................................12

*Apodaca v. Costco Wholesale Corp.*,
No. CV 12-5664-DSF, 2012 WL 12336225 (C.D. Cal. Oct. 29, 2012),
*aff'd*, 675 F. App'x 663 (9th Cir. 2017) .....................................................................10

*Bates v. United Parcel Serv., Inc.*,
511 F.3d 974 (9th Cir. 2017) .......................................................................................18

*Bowers v. First Student, Inc.*,
No. 14-cv-8866-ODW, 2015 WL 1862914 (C.D. Cal. Apr. 23, 2015).......................17

*Brown v. Am. Airlines, Inc.*,
285 F.R.D. 546 (C.D. Cal. 2011).................................................................................3

*Brown v. Am. Airlines, Inc.*,
No. 10-cv-8431-AG, 2015 WL 6735217 (C.D. Cal. Oct. 5, 2015).............................16

*Califano v. Yamasaki*,
442 U.S. 682 (1979).....................................................................................................17

*Canela v. Costco Wholesale Corp.*,
No. 18-16592 (9th Cir.) ...............................................................................................17

*Davis v. U.S.*,
854 F.3d 594 (9th Cir. 2017) .........................................................................................3

*Del Thibodeau v. ADT LLC*,
No. 3:16-cv-02680-GPC, 2019 WL 1746141 (S.D. Cal. Apr. 18, 2019)...................10

iv

*Derum v. Saks & Co.*,
   95 F. Supp. 3d 1221 (S.D. Cal. 2015)............................................................8

*Fields v. QSP, Inc.*,
   No. 12-cv-1238-CAS, 2012 WL 2049528 (C.D. Cal. June 4, 2012) ...........................17

*Garcia v. Wal-Mart Assocs., Inc.*,
   No. 18-cv-500, Dkt. No. 48 (S.D. Cal. Aug. 28, 2019).....................................2

*Halliwell v. A-T Sols.*,
   983 F. Supp. 2d 1179 (S.D. Cal. Nov. 7, 2013)...........................................17

*Hurst v. Buczek Enters., LLC*,
   No. 11-cv-1379, 2012 WL 1564733 (N.D. Cal. May 2, 2012) ..............................12

*Ivey v. Apogen Techs., Inc.*,
   No. 11-CV-366-DMS, 2011 WL 3515936 (S.D. Cal. Aug. 10, 2011) .....................17

*Johns v. Stewart*,
   57 F.3d 1544 (10th Cir. 1995) ......................................................11

*Lee v. City of L.A.*,
   908 F.3d 1175 (9th Cir. 2018) ........................................................3

*Miller v. Knowles*,
   No. 04-cv-2446, 2008 WL 4427212 (E.D. Cal. Sept. 26, 2008)..............................11

*Mitchell v. Corelogic, Inc.*,
   No. SA-CV-172274-DOC, 2018 WL 6118444 (C.D. Cal. Aug. 7, 2018) ............14, 15

*Nikmanesh v. Wal-Mart Stores, Inc.*,
   No. 15-cv-202, Dkt. No. 200, slip op. (C.D. Cal. Mar. 22, 2017)........................16

*Pedroza v. PetSmart, Inc.*,
   No. 11-cv-298, 2012 WL 9506073 (C.D. Cal. June 14, 2012) ............................12

*Raphael v. Tesoro Ref. & Mktg. Co. LLC*,
   No. 15-cv-2862-ODW, 2015 WL 5680310 (C.D. Cal. Sept. 25, 2015)...........16, 17, 18

*Romano v. SCI Direct, Inc.*,
   No. 2:17-CV-03537-ODW, 2017 WL 8292778 (C.D. Cal. Nov. 27, 2017) ...............19

*Salazar v. McDonald's Corp.*,
   No. 14-cv-2096, 2017 WL 88999 (N.D. Cal. Jan. 5, 2017) ...............................16

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010)..................................................................................17

*Sluimer v. Verity, Inc.*,
    606 F.3d 584 (9th Cir. 2010) .....................................................................3

*Taylor v. W. Marine Products, Inc.*,
    No. 13-cv-4916, 2014 WL 1248162 (N.D. Cal. Mar. 26, 2014)................18

*Thompson v. APM Terminals Pac. Ltd.*,
    No. C-10-677-JSW, 2010 WL 6309364 (N.D. Cal. Aug. 26, 2010)...........17

*Troester v. Starbucks Corp.*,
    387 F. Supp. 3d 1019 (C.D. Cal. 2019), order clarified on
    reconsideration, 2019 WL 2902487 (C.D. Cal. May 21, 2019) ................12

**State Cases**

*Alvarado v. Dart Container Corp. of California*,
    4 Cal. 5th 542 (2018) ...............................................................................15

*Arias v. Superior Court*,
    46 Cal. 4th 969 (2009) .............................................................................18

*Canales v. Wells Fargo Bank, N.A.*,
    23 Cal. App. 5th 1262 (2018) ...................................................................11

*Maldonado v. Epsilon Plastics, Inc.*,
    22 Cal. App. 5th 1308 (2018) .....................................................................9

*Morgan v. United Retail Inc.*,
    186 Cal. App. 4th 1136 (2010) ...................................................................9

*Prachasaisoradej v. Ralphs Grocery Co.*,
    42 Cal.4th 217 (2007) ..............................................................................19

*Williams v. Superior Court*,
    3 Cal. 5th 531 (2017) ...............................................................................19

**State Statutes**

Cal. Evid. Code § 250 .....................................................................................11

Cal. Labor Code § 8 ........................................................................................11

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Cal. Labor Code § 216(a) ............................................................................................9

Cal. Labor Code § 226 ................................................................................8, 9, 11, 12

Cal. Labor Code § 226(a) ........................................................................8, 9, 10, 11

Cal. Labor Code § 226(e)..........................................................................................8, 12

Cal. Labor Code § 226(e)(1) ..................................................................................11

Cal. Labor Code § 2699(c) ........................................................................................19

**Rules**

Fed. R. Civ. P. 1 ........................................................................................................17

**Regulations**

29 C.F.R. § 778.209(a).............................................................................................13

29 C.F.R. § 778.209(b) .............................................................................................14

**Other Authorities**

Black's Law dictionary .............................................................................................11

DLSE Manual § 49.1.2 ..............................................................................................13

DLSE Manual § 49.2 ....................................................................................................5

DLSE Manual § 49.2.4 ............................................................................................5, 14

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

# INTRODUCTION

Plaintiff alleges that Walmart violated California law by failing to "furnish" him with a wage statement "in writing." According to Plaintiff, Walmart was required to give him a paper wage statement with every paycheck. But this is precisely what Walmart does unless an associate elects to receive electronic access to a wage statement, as Plaintiff did here. In other words, Plaintiff would have received a paper wage statement every pay period had he not signed up to receive it in another way. This uncontested fact ends the matter and requires entry of judgment for Walmart.

Plaintiff's wage statement claim also is legally deficient. The law does not require a paper copy wage statement; rather, the electronically accessible and printable wage statements Plaintiff agreed to receive were legally compliant. Notably, in July 2006, the Division of Labor Standards Enforcement ("DLSE") considered and rejected the very position Plaintiff asserts here. The DLSE stated that it considered an electronically accessible wage statement like the one received by Plaintiff compliant with California law.

Plaintiff also claims that Walmart improperly calculated his regular rate of pay during pay periods in which he worked overtime and received a non-discretionary quarterly "MyShare" bonus. But Plaintiff has no evidence to support his claim and has refused Walmart's repeated requests for such information. Plaintiff's failure is not surprising, however, because the record is uncontroverted that Walmart correctly calculated the regular rate of pay in all ten quarters where Plaintiff received a bonus payment. Because Walmart correctly calculated Plaintiff's rate of pay for the bonus—in fact, Walmart's formula exceeded and was more generous to Plaintiff than what was required under federal and California standards—his claim necessarily fails.

Plaintiff's PAGA claim fails because it is not manageable, a fact confirmed by his refusal to submit a trial plan or any expert who could establish classwide or representative damages. Further, to the extent that Plaintiff intends to pursue a PAGA claim as to the holiday/PTO claim that was not certified,  he has not established that it

satisfies Rule 23. Plaintiff also does not have standing to pursue PAGA liability for claims where class certification was denied.

Finally, the Court should granted partial summary judgment as to Plaintiff's individual vacation and PTO claims because he does not have standing to assert the vacation-pay claim and has no evidence that his PTO was miscalculated. The Court also should grant summary adjudication on the UCL and PAGA claims because they are derivative of the other claims and thus fails for same reasons.

## PROCEDURAL BACKGROUND

Though Plaintiff's First Amended Complaint asserts eight different California wage-and-hour claims (Dkt. No. 12), he only sought class certification for a subset of those claims. (*See* Dkt. No. 57-1.) On September 30, 2019, Walmart opposed class certification, and moved for a stay of the termination-pay theory in light of an order granting class certification in *Garcia v. Wal-Mart Assocs., Inc.*, No. 18-cv-500, Dkt. No. 48 (S.D. Cal. Aug. 28, 2019) ("*Garcia*"). (*See* Dkt. Nos. 64, 71.) The Court issued its Order on class certification on November 25, 2019. (*See* Dkt. No. 95.)

In that Order, the Court granted Walmart's motion to stay Plaintiff's termination-pay theory because the same claim has already been certified in *Garcia*. (*Id.* at 9-10.) The Court granted class certification of Plaintiff's paper wage statement theory and his regular rate/MyShare theory, but denied certification on the vacation and PTO theories, holding that Plaintiff lacked standing and that he failed to provide evidence showing that the PTO theory could be tried on a classwide basis. (*Id.* at 10-21.) Walmart now moves for summary judgment on the two certified claims (written wage statement – Count V, and regular rate of pay – Count III, as well as any derivative PAGA or UCL claims based thereon) as well as his remaining uncertified PAGA claims (Count VIII).[1]

---

[1]   The parties anticipate sending class notice by January 29, 2020. In light of this, and to ensure its due process rights remain protected, Walmart reserves the right to request that the Court defer its ruling on summary judgment until the notice period has closed.

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## LEGAL STANDARD

"Summary judgment ... is appropriate … where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Lee v. City of L.A.s*, 908 F.3d 1175, 1182 (9th Cir. 2018) (citation and internal quotation marks omitted); *Brown v. Am. Airlines, Inc.*, 285 F.R.D. 546, 554 (C.D. Cal. 2011) ("Summary judgment or summary adjudication is appropriate … where the record, read in the light most favorable to the non-moving party, indicates that there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.") (citation and internal quotation marks omitted). The party moving for summary judgment "bears the burden of establishing the basis for its motion and identifying evidence that demonstrates the absence of a genuine issue of material fact." *Davis v. U.S.*, 854 F.3d 594, 598 (9th Cir. 2017) (citation omitted). But the moving party "has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial," and may instead "point out . . . an absence of evidence to support the non-moving party's case." *Sluimer v. Verity, Inc.*, 606 F.3d 584, 586 (9th Cir. 2010) (citation omitted). The burden then shifts to the nonmovant to provide admissible evidence to show that summary judgment is not appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## STATEMENT OF UNCONTROVERTED FACTS

### A.   Plaintiff James Evans

In March 2013, Plaintiff began working at the Walmart Supercenter in Brawley, California. (Undisputed Fact ("UF") 1.) He worked at that location for over four years, holding a variety of hourly positions until October 7, 2016. (UF 2.)

### B.   Walmart's Wage Statement Policy

Walmart's California associates receive a live, physical payroll check with a paper wage statement attached unless they affirmatively sign up for another option. (UF 3.) Walmart offers, but does not require, direct deposit and other electronic payment options, although many associates prefer these options so that they can receive pay more quickly.

(UF 4.) In these instances, an electronic pay stub is available to the associate no later than the day the funds are provided. (UF 5.) If an associate did not take the steps to sign up for an electronic option, thereby voluntarily choosing to receive a non-paper wage statement, he or she will continue receiving checks along with the paper wage statements. (UF 6.)

Regardless of how an associate receives his or her paycheck, Walmart provides several additional ways associates can obtain detailed paystub information. (UF 7.) First, every Walmart store in California has FD-300 machines, which allow associates to access and print complete paystubs free of charge. (UF 8.) Plaintiff admits he did just this on numerous occasions while employed at Walmart. (UF 17.) Second, Walmart associates can access electronic paystubs by visiting the website walmartone.com from any in-store computer or using a computer outside the store, including at their home or at any other location. (UF 9.) Using walmartone.com, associates can view their pay stubs and year-to-date earnings and deductions; they also have the option to download or print paystubs. (UF 10.)

**C.     Walmart's MyShare Plan**

Walmart uses an incentive program called the MyShare Quarterly Incentive Plan ("MyShare Plan") for its associates who work at Walmart retail stores, supercenters, and/or neighborhood markets in California. (UF 18.) The MyShare Plan provides quarterly awards – but only if both the store and associate qualify by meeting certain performance benchmarks. (UF 20.) In other words, not every California retail location qualifies for the award on a quarterly basis, and not every associate at a location that qualified for the incentive is personally eligible to receive an award. (UF 21.) When both conditions are met, Walmart takes great strides to ensure that it properly calculates the associate's wages and that the associate understands how the wages were calculated.

Specifically and as it relates to Plaintiff's certified claim here, the MyShare Plans during the time when Plaintiff was employed (2013-3017) expressly provided that awards "will be included in the regular rate of pay when calculating overtime for the incentive quarter." (UF 23.) The MyShare Plan incentive award was reflected on an

4

associate's wage statement as "MyShare INCT," and, where applicable, a retroactive adjustment to prior overtime paid in that quarter was reflected on the statement as "OVERTIME/INCT." (UF 24 and 25.)

**D.    The Calculation of Additional Overtime Following a Bonus – Generally**

The DLSE provides guidance on how to factor bonuses into the regular rate in Section 49.2. (https://www.dir.ca.gov/dlse/DLSEManual/dlse_enfcmanual.pdf). Section 49.2.4 states that "when a bonus is based on a percentage of production or some formula other than a flat amount . . . [and] was earned during straight time as well as overtime hours, the overtime 'premium' on the bonus is half-time or full-time (for double time hours) on the regular bonus rate. The regular bonus rate is found by dividing the bonus by the total hours worked during the period to which the bonus applies. The total hours worked for this purpose will be all hours, including overtime hours."

Walmart fully complied with this guidance, as detailed below:

- Because the MyShare incentive bonus depended in part on the performance of the location over the entirety of the incentive quarter, the bonus was divided by the number of work weeks in the quarter, which yielded a "Weekly Incentive Amount."

- The Weekly Incentive Amount was divided by the hours the associate worked during the week up to a maximum of 40 hours (thus weekly overtime hours are not included in the denominator), which resulted in an "Additional Regular Rate."

- The Additional Regular Rate was multiplied by 1.5 for overtime (and 2.0 for double time), which yielded an "Additional Overtime Rate" and an "Additional Double Time Rate."

- The Additional Overtime Rate was multiplied by the overtime hours for that work week (if any), which yielded an "Additional Overtime Payment" for that work week.

5

- The Additional Double Time Rate was multiplied by the double time hours for that work week (if any), which yielded an "Additional Double Time Payment" for that work week.

- The process was repeated for each work week and the additional payments summed, yielding an additional payment (OVERTIME/INCT) attributable to the MyShare incentive award that was made at the same time the associate received the MyShare bonus.

(UF 26.)

Notably, Walmart's formula described above is more employee friendly than the formula provided by the DLSE. For example, the DLSE recommends using "total hours worked … including overtime hours" as the denominator, while Walmart uses hours worked up to 40 hours, thus not including weekly overtime hours. (UF 26.) Because Walmart uses a smaller number as the divisor than what is recommended by the DLSE, this results in a higher "additional regular rate" of pay that inures to the benefit of the associate. In addition, the DLSE formula suggests half-time to calculate the overtime premium on the bonus, while Walmart uses time-and-a-half, again to the benefit of the associate. (UF 26.)

**E.     Plaintiff's MyShare Awards and Calculation of Additional Overtime**

During the four years he worked at Walmart, Plaintiff was eligible for and received ten MyShare incentive bonuses. (UF 28.) In each case, Walmart used the formula discussed above to recalculate and pay Plaintiff any additional overtime due because of the MyShare award. (UF 29.) The table below provides an example of how Walmart's formula operated for Evans's MyShare bonus in Q1 2016:

| Weekly End Date | Regular Hours | Overtime Hours | Total Hours Up to 40 | MyShare Incentive Allocation | Regular Rate Adjustment | Adjusted Overtime Calculation |
|---|---|---|---|---|---|---|
| (1) | (2) | (3) | (4) | (5) | (6) (5)/(4) | (7) (3)*(6)*1.5 |
| 1/30/2015 | 23.81 | 0.04 | 23.85 | $  16.96 | $  0.71 | $  0.04 |
| 2/6/2015 | 31.37 | 0.02 | 31.39 | 16.96 | 0.54 | 0.02 |

6

| Weekly End Date (1) | Regular Hours (2) | Overtime Hours (3) | Total Hours Up to 40 (4) | MyShare Incentive Allocation (5) | Regular Rate Adjustment (6) (5)/(4) | Adjusted Overtime Calculation (7) (3)*(6)*1.5 |
|---|---|---|---|---|---|---|
| 2/13/2015 | 31.80 | 0.10 | 31.90 | 16.96 | 0.53 | 0.08 |
| 2/20/2015 | 33.92 | 0.20 | 34.12 | 16.96 | 0.50 | 0.15 |
| 2/27/2015 | 37.81 | 0.05 | 37.86 | 16.96 | 0.45 | 0.03 |
| 3/6/2015 | 31.88 | 0.15 | 32.03 | 16.96 | 0.53 | 0.12 |
| 3/13/2015 | 29.69 | 0.02 | 29.71 | 16.96 | 0.57 | 0.02 |
| 3/20/2015 | 17.37 | 0.00 | 17.37 | 16.96 | 0.98 | - |
| 3/27/2015 | 31.20 | 0.00 | 31.20 | 16.96 | 0.54 | - |
| 4/3/2015 | 29.26 | 0.00 | 29.26 | 16.96 | 0.58 | - |
| 4/10/2015 | 35.89 | 0.00 | 35.89 | 16.96 | 0.47 | - |
| 4/17/2015 | 31.31 | 0.00 | 31.31 | 16.97 | 0.54 | - |

$ 0.46

| | |
|---|---|
| Walmart Adjusted Overtime Payment: | $ 0.46 |

(McChristian Decl. ¶ 21.)

As illustrated in the table below, Walmart's calculation exceeded the standards of the DLSE, providing Plaintiff more than required (the difference column shows Walmart's excess payment).

| Quarter (1) | MyShare Incentive (2) | Hours Total (3) | Hours Overtime (4) | Overtime Premium (5) | Adjusted Overtime Payment | | |
|---|---|---|---|---|---|---|---|
| | | | | | DLSE (6) (2)/(3)*(4)*(5) | Walmart (7) | Difference (8) (7)-(6) |
| 2014 Q3 | 128.1 | 143.2 | 0.0 | 0.5 | $ - | $ - | $ - |
| 2014 Q4 | 151.4 | 427.1 | 0.2 | 0.5 | 0.04 | 0.11 | 0.07 |
| 2015 Q1 | 265.3 | 385.7 | 6.4 | 0.5 | 2.19 | 5.41 | 3.22 |
| 2015 Q4 | 309.3 | 401.3 | 1.9 | 0.5 | 0.74 | 2.16 | 1.42 |
| 2016 Q1 | 203.5 | 365.9 | 0.6 | 0.5 | 0.16 | 0.46 | 0.30 |
| 2016 Q2 | 76.0 | 432.3 | 0.8 | 0.5 | 0.07 | 0.19 | 0.12 |
| 2016 Q3 | 198.9 | 504.7 | 0.2 | 0.5 | 0.04 | 0.11 | 0.07 |
| 2016 Q4 | 368.3 | 424.0 | 0.4 | 0.5 | 0.19 | 0.51 | 0.32 |
| 2017 Q1 | 110.3 | 525.4 | 1.8 | 0.5 | 0.18 | 0.56 | 0.38 |
| 2017 Q2 | 155.3 | 408.1 | 2.9 | 0.5 | 0.54 | 1.57 | 1.03 |

7

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

(UF 30; *see also* Herrington Decl., ¶¶ 3-4.) In one quarter (Q3 2014), Evans received a MyShare bonus but not an additional overtime adjustment because he did not work any overtime during the period he was eligible for the MyShare bonus. (UF 31.)

## ARGUMENT

### A.   The Court Should Grant Summary Judgment for Walmart on the Wage Statement Claim (Count V).

To prove a violation arising under section 226 of the Labor Code, Plaintiff must establish that Walmart violated section 226(a) and that the violation was knowing and intentional. *See* Cal. Labor Code § 226(e); *Derum v. Saks & Co.*, 95 F. Supp. 3d 1221, 1225 (S.D. Cal. 2015). Because Plaintiff cannot satisfy this burden, summary judgment in Walmart's favor is warranted.

### 1.   Walmart Associates Received Paper Wage Statements Unless They Elected Electronic Wage Statements.

The gravamen of Plaintiff's wage statement claim is that Walmart did not provide him with a paper wage statement with every paycheck. As this Court explained in its class certification order, "Plaintiffs challenge Defendant's purported policy of failing to provide employees with an opportunity to elect to receive a written wage statement." (Dkt. No. 95, at 20.) The record is uncontroverted on this single issue: Walmart's policy does allow employees to elect to receive a written wage statement, thus requiring entry of judgment in favor of Walmart.

Every California Walmart associate received a paper wage statement unless they – like Plaintiff – voluntarily elected to receive one electronically. (UF 3.) Put differently, receiving a paper wage statement was the default policy. (UF 3.) Because Walmart gave Plaintiff and all associates the opportunity to receive a paper wage statement—in fact they necessarily received one unless they elected not to do so—the wage statement theory fails as a matter of law.

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### 2.    Electronic Access To Wage Statements Complies With The Law.

Section 226(a) states that "[a]n employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employee, <u>either</u> as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing …" Cal. Labor Code § 216(a). According to Plaintiff, this requires that Walmart hand him a paper wage statement with every paycheck. It does not.

As an initial matter, Plaintiff's strained reading of the statute defies common sense. "The purpose of section 226 is to document the paid wages to ensure the employee is fully informed regarding the calculation of those wages." *Maldonado v. Epsilon Plastics, Inc.*, 22 Cal. App. 5th 1308, 1337 (2018); *Morgan v. United Retail Inc.*, 186 Cal. App. 4th 1136, 1148 (2010) (the purpose of section 226(a) is to make it "easier for employees to determine whether they were being paid for all hours worked at the appropriate rates of pay"). Plaintiff, like all associates who voluntarily elected electronic access to their wage statements, had the ability to view and print the wage statement in several ways, including access to multiple computers and a free printer at his store. In fact, it is undisputed that Plaintiff accessed and printed his wage statement at least ten different times during his employment. (UF 17.) This type of access is fully consistent with the purpose underlying Section 226(a).

Not surprisingly, the DLSE has considered and rejected the position Plaintiff asserts here. In July 2006, the DLSE examined whether "an employer's obligation to provide an employee with a 'wage statement' may be met by providing an employee with such a record in electronic form, as an alternative to a 'hard copy' paper document." July 6, 2006 DLSE Op. Ltr. at 1. In answering that question, the DLSE made clear that electronic access to a wage statement satisfies section 226(a): "[A]n electronically stored wage statement which is accessible by an employee may be read on a screen or printed and read as a hard copy," and it thus "appears to qualify as a 'statement in writing,'" and providing "electronic wage statements" complies with the statute "so long as each

9

employee retains the right to elect to receive a written paper stub or record," and those employees "who are provided with electronic wage statements retain the ability to easily access the information and convert the electronic statements into hard copies at no expense to the employee." *Id.* at 2-3.[2]

The undisputed facts show that that Walmart's processes fully complied with this DLSE guidance. Specifically, associates always had the option to elect to receive paper wage statements, as this was the default and took place absent an express choice to the contrary. (UF 3.) Walmart's electronic wage statements contained all nine categories of information required under section 226(a), and those statements were available on a secure website by no later than pay day. (UF 5, 11, 16.) Associates could access their statements through a secure website by entering identification numbers and confidential passwords. (UF 11, 13.) Associates could access their electronic wage statement at in-store computers and on their personal computers or devices. (UF 9.) Associates also could print, at no charge, copies of their wage statements from FD-300 machines at Walmart stores, or they could download and print wage statements from any location with internet access. (UF 8.) Finally, the electronic wage statements were maintained electronically for at least three years and were thus continually accessible to associates for that entire period of time. (UF 14 and 15.) These uncontroverted facts confirm that Walmart's provision of electronically-accessible wage statements at the associates choosing complies with DSLE guidance.

To avoid summary judgment, Plaintiff will almost certainly ask the Court to disregard the DSLE's guidance and instead focus on the statute's language. According to Plaintiff, the language "furnish . . . in writing" means that Walmart must "actually give employees a hard paper copy of their wage statements." (Dkt. No. 75 at 6.) It does not.

---

[2]    *See generally Del Thibodeau v. ADT LLC*, No. 3:16-cv-02680-GPC, 2019 WL 1746141, at *10 (S.D. Cal. Apr. 18, 2019); *see also Apodaca v. Costco Wholesale Corp.*, No. CV 12-5664-DSF, 2012 WL 12336225, at *2 (C.D. Cal. Oct. 29, 2012), *aff'd*, 675 F. App'x 663 (9th Cir. 2017) (citing DLSE Opinion Letter dated July 6, 2006).

10

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Under California law, "furnish" simply means "to provide with what is needed or to supply or give." *Canales v. Wells Fargo Bank, N.A.*, 23 Cal. App. 5th 1262, 1270 (2018).[3] By giving Plaintiff the ability to see, review, download, and print his wage statements at no cost, Walmart "provided him with what was needed," or, put differently, "furnished" the wage statement to him. And "in writing" does not mean, as Plaintiff hopes, "a paper copy." The California Labor Code defines "writing" to "include[] *any form* of recorded message capable of comprehension by ordinary visual means." Cal. Labor Code § 8 (emphasis added).[4] An electronic wage statement is in writing. It is a form of recorded message capable of comprehension by ordinary visual means as demonstrated by Plaintiff's access to his wage statement electronically on at least ten separate occasions when he viewed and printed them.

The undisputed facts thus show that Walmart "furnished … in writing" the wage statements required by section 226(a) consistent with the DLSE guidance and the statute's plain language. Summary judgment for Walmart is required.

### 3. Plaintiff Cannot Show That Any Violation of Section 226 Was Knowing and Intentional.

Plaintiff's wage statement theory fails for an even more fundamental reason. To prove a violation of section 226(a), Plaintiff must show a "knowing and intentional failure by [the] employer to comply with subdivision (a)." Cal. Labor Code §226(e)(1).

---

[3]   *See also Johns v. Stewart*, 57 F.3d 1544, 1556 (10th Cir. 1995) ("Black's Law dictionary defines furnish as to supply, provide, or equip, for accomplishment for a particular purpose," and "Webster's dictionary defines furnish as to provide with what is needed"); *Miller v. Knowles*, No. 04-cv-2446, 2008 WL 4427212, at *4-5 (E.D. Cal. Sept. 26, 2008) (agreeing that  "furnish" means "to supply or provide in any way, including giving or making item available for use").

[4]   *See also* Cal. Evid. Code § 250 (defining "[w]riting" as "handwriting, typewriting, printing, photostating, photographing, photocopying, transmitting by electronic mail or facsimile, and every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof, and any record thereby created, regardless of the manner in which the record has been stored").

11

"Where an employer has a good faith belief that it is not in violation of Section 226, any violation is not knowing and intentional." *Apodaca v. Costco Wholesale Corp.*, No. 12-cv-5664, 2014 WL 2533427, at *3 (C.D. Cal. June 5, 2014) (citation omitted). Indeed, "[t]he good faith defense to the willfulness element of [section 226(e)] is clearly established under California law." *Pedroza v. PetSmart, Inc.*, No. 11-cv-298, 2012 WL 9506073, at *4-5 (C.D. Cal. June 14, 2012); *see also Hurst v. Buczek Enters., LLC*, No. 11-cv-1379, 2012 WL 1564733, at *17 (N.D. Cal. May 2, 2012) (granting summary judgment to defendant on plaintiff's section 226(e) claim on the basis of the good-faith dispute defense).

Here, the undisputed evidence demonstrates that Walmart's processes for furnishing wage statements tracked DLSE guidance and were consistent with the statute's plain language. Plaintiff has no evidence to the contrary. Even if this Court were to entertain Plaintiff's request to ignore the clear and on point DLSE guidance and create a novel interpretation of the statute's plain language, summary judgment for Walmart is still proper. Walmart's reliance on the DLSE guidance and the plain language of the statute as interpreted by legal decisions was necessarily good faith. *See Troester v. Starbucks Corp.*, 387 F. Supp. 3d 1019, 1030 (C.D. Cal. 2019), order clarified on reconsideration, 2019 WL 2902487 (C.D. Cal. May 21, 2019) (granting summary judgment based on good faith defense where employer "reasonabl[y] relied on "DLSE Enforcement Manual"). And that good faith position precludes, as a matter of law, a finding of a knowing violation. Summary judgment should thus be granted in Walmart's favor.

## B.   Walmart's Bonus Formula Complies With California Law (Count III).

Plaintiff's second certified claim relates to Walmart's calculation of his regular rate of pay for purposes of overtime in those quarters for which he received a MyShare incentive bonus. As an initial matter, Plaintiff does not dispute that the MyShare plans expressly state that "[e]arned MyShare awards will be included in the regular rate of pay when calculating overtime for the incentive quarter." (UF 23.) Instead, Plaintiff contends

that Walmart's calculations were somehow incorrect, but he has never explained how. After class certification, Walmart expressly asked Plaintiff to state the formula he contends should have been used, and he responded with only objections. (UF 32 and 33.) Because Plaintiff has refused to provide any evidence supporting his regular rate claim, summary judgment should be granted.

Plaintiff's failing is not surprising, however, because the undisputed facts show that Walmart's formula complied with California law and, notably, was more employee-friendly than the formula suggested by the Fair Labor Standards Act ("FLSA") and the DLSE. California law does not define "regular rate of pay," and thus courts look to standards set forth in the FLSA in determining how to the make the calculation. *See* DLSE Manual § 49.1.2 ("In not defining the term 'regular rate of pay,' the Industrial Welfare Commission has manifested its intent to adopt the definition of 'regular rate of pay' set out in the [FLSA]."); *Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122, 1127 (C.D. Cal. 2011) ("California courts look to federal regulations under the FLSA for guidance in the absence of controlling or conflicting California law").

Federal regulations specifically address a bonus like MyShare that is deferred over several weeks and ascertainable only after determining if performance thresholds were met:

> When the amount of the bonus can be ascertained, it must be apportioned back over the workweeks of the period during which it may be said to have been earned. The employee must then receive an additional amount of compensation for each workweek that he worked overtime during the period equal to one-half of the hourly rate of pay allocable to the bonus for that week multiplied by the number of statutory overtime hours worked during the week.

29 CFR § 778.209(a). The regulation continues: "if it is impossible to allocate the bonus among the workweeks of the period in proportion to the amount of the bonus actually earned each week, some other reasonable and equitable method of allocation must be adopted." *Id.*

13

This is the case for the MyShare incentive award. Walmart cannot determine the amount of the bonus actually earned each week because the bonus depends on multiple factors, including store and individual performance over the entire incentive quarter. (UF 27.) In this situation, the employer can apportion the bonus to each week of the period to which the bonus relates:

> [I]t may be reasonable and equitable to assume that the employee earned an equal amount of bonus each week of the period to which the bonus relates, and if the facts support this assumption additional compensation for each overtime week of the period may be computed and paid in an amount equal to one-half of the average hourly increase in pay resulting from bonus allocated to the week, multiplied by the number of statutory overtime hours worked in that week.

29 C.F.R. § 778.209(b).

Walmart's formula is consistent with this regulation. Walmart allocated the MyShare bonus to each workweek within the incentive quarter by dividing the bonus by the number of workweeks. (UF 26.) Once that calculation was done, Walmart used the more employee-friendly one-and-one-half to calculate the OVERTIME/INCT based on the MyShare bonus rather than using "one-half of the average hourly increase in pay resulting from bonus allocated to the week" as the federal standard suggests. (UF 26.)

Walmart's calculation is also more employee-friendly than the DLSE's proposed formula. The DLSE Manual directs employers to calculate the overtime "premium" on a production bonus by using half-time on the regular bonus rate. *See Mitchell v. Corelogic, Inc.*, No. SA-CV-172274-DOC, 2018 WL 6118444, at *10 (C.D. Cal. Aug. 7, 2018) ("regular bonus rate is found by dividing the bonus by the total hours worked during the period to which the bonus applies. The total hours worked for this purpose will be all hours, including overtime hours.") (quoting DLSE Manual § 49.2.4). Again, Walmart uses one-and-one-half time for its calculation (rather than just half-time) and does not include weekly overtime hours in the denominator—both of which were more employee

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

friendly. (UF 26.) These employee-friendly aspects mean that Walmart's formula resulted in payments to Evans that were *more* than required by the federal standard and the DLSE formula. (UF 26; *see also* Herrington Decl., ¶¶ 3-4.) This ends the matter and requires entry of summary judgment for Walmart.

In spite of all of this, Plaintiff may incorrectly suggest (as he did during the class certification stage), that Walmart's formula was improper under *Alvarado v. Dart Container Corp. of California*, 4 Cal. 5th 542 (2018). But *Alvarado* applied only to flat sum bonuses like attendance bonuses, and the Court expressly carved out production bonuses like the one at issue here. *Id.* at 561, n.6. There, for flat sum bonuses, the court required that an employer exclude overtime hours when calculating the bonus premium. But for production bonuses, like MyShare, total hours, including overtime hours, can be used. Judge Carter recently dismissed a similar regular rate claim where the employer calculated the bonus premium for a production bonus using the total hours (including overtime) as the denominator, holding that this calculation was consistent with California law. *Mitchell*, 2018 WL 6118444, at *11 (dismissing claims "based on alleged improper calculation of overtime payments as a result of the total hours divisors"). Here, again, Walmart's formula is more employee friendly because it does not include weekly overtime hours, instead capping the denominator at 40. (UF 26; *see also* Herrington Decl., ¶¶ 3-4.)

In sum, it is undisputed that Plaintiff's regular rate of pay was properly adjusted based on the payment of MyShare bonuses as required by California law. The Court should thus grant summary judgment on this claim in Walmart's favor.

## C. The Court Should Grant Summary Judgment in Walmart's Favor on Plaintiff's Representative PAGA Claim (Count VIII).

Plaintiff also asserts a claim under PAGA in which he seeks to represent other allegedly aggrieved employees as to the claims set forth in the operative complaint. (*See*

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1    Dkt. No. 12 ¶¶ 131-137.) The PAGA claim independently fails for multiple reasons.[5]

2    First, Plaintiff has not shown that his PAGA claim is manageable, in any form.

3    After class certification, Walmart asked Plaintiff to provide his trial plan, and he

4    responded with only objections. (UF 34 and 35.) Plaintiff also has no damages model.

5    Plaintiff failed to timely submit an expert report by the deadline, and, in any event, his

6    expert's report does not compute damages for any theory and does not even mention

7    PAGA. (UF 36-38.) Courts routinely dismiss representative PAGA claims where the

8    Plaintiff fails to provide a manageable way for the case to be tried. *See, e.g., Nikmanesh*

9    *v. Wal-Mart Stores, Inc.*, No. 15-cv-202, Dkt. No. 200, slip op. at 4-5 (C.D. Cal. Mar. 22,

10   2017) (dismissing uncertified PAGA claim "as unmanageable").[6] Here, with no trial plan

11   and no damages model, Plaintiff cannot show that his PAGA claim, under whatever

12   theory, is manageable.

13   Second, Plaintiff's PAGA claim fails because it cannot be maintained in federal

14   court without first satisfying Rule 23.[7] In federal court, a PAGA action cannot proceed

15   unless and until Plaintiff satisfies the requirements of Rule 23, which "*automatically*

16   applies 'in all civil actions and proceedings in the United States district courts,'"

17

18   _____

19   [5]    To the extent Plaintiff is pursuing a PAGA claim based on his wage statement

20   and/or regular rate theories, summary judgment for Walmart is warranted for the reasons
     discussed in Sections (A) and (B), *supra*.

21   [6]    *Accord Salazar v. McDonald's Corp.*, No. 14-cv-2096, 2017 WL 88999, at *7-9

22   (N.D. Cal. Jan. 5, 2017) (striking representative PAGA claims as unmanageable where
     underlying claims would require individualized determinations); *Brown v. Am. Airlines,*

23   *Inc.*, No. 10-cv-8431-AG, 2015 WL 6735217, at *4 (C.D. Cal. Oct. 5, 2015) (striking

24   PAGA claims because "[t]here appear[ed] to be too many individualized assessments to
     determine PAGA violations concerning overtime pay"); *Raphael v. Tesoro Ref. & Mktg.*

25   *Co. LLC*, No. 15-cv-2862-ODW, 2015 WL 5680310 at *2-3 (C.D. Cal. Sept. 25, 2015)

26   (granting motion for judgment on the pleadings where resolving a PAGA claim would
     require the court to "engage in a multitude of individualized inquires making the PAGA

27   action unmanageable and inappropriate").

28   [7]    Walmart acknowledges that this Court has rejected similar arguments in the
     *Hamilton v. Walmart Stores, Inc.* case, but offers them again to preserve them for appeal.

preempting any conflicting or inconsistent state procedural rules. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010) (emphasis in original) (quoting Fed. R. Civ. P. 1 & citing *Califano v. Yamasaki*, 442 U.S. 682, 699-700 (1979)). Multiple courts have held that Rule 23 governs PAGA representative claims in federal court. *See, e.g.*, *Halliwell v. A-T Sols.*, 983 F. Supp. 2d 1179, 1183-84 (S.D. Cal. Nov. 7, 2013); *Ivey v. Apogen Techs., Inc.*, No. 11-CV-366-DMS, 2011 WL 3515936, at *3 (S.D. Cal. Aug. 10, 2011); *Thompson v. APM Terminals Pac. Ltd.*, No. C-10-677-JSW, 2010 WL 6309364, at *2-3 (N.D. Cal. Aug. 26, 2010).

Here, Plaintiff has never sought class certification of his PAGA claim under any theory. It follows, therefore, that the failure to obtain class certification requires dismissal of the uncertified PAGA claim. *See Raphael v. Tesoro Ref. & Mktg. Co. LLC*, No. 15-cv-2862-ODW, 2015 WL 5680310, at *2 (C.D. Cal. Sept. 25, 2015) (holding that plaintiff lacks standing to represent the rights and interests of aggrieved employees after failing to move for class certification); *Bowers v. First Student, Inc.*, No. 14-cv-8866-ODW, 2015 WL 1862914, at *3-4 (C.D. Cal. Apr. 23, 2015) (striking PAGA claims and recognizing that "[b]ecause Rule 23 is a procedural statute that clearly outlines requirements for third-party representation, … PAGA representative claims must abide by Rule 23"); *Fields v. QSP, Inc.*, No. 12-cv-1238-CAS, 2012 WL 2049528, at *4-5 (C.D. Cal. June 4, 2012) (granting motion for judgment on the pleadings as to PAGA claim where plaintiff had not moved for class certification); *Ivey*, 2011 WL 3515936, at *3 (dismissing PAGA claims for failing to meet Rule 23 requirements); *Thompson*, 2010 WL 6309364, at *2 (same); *Adams v. Luxottica U.S. Holdings Corp.*, No. 07-cv-1465-AHS, 2009 WL 7401970, at *5-7 (C.D. Cal. July 24, 2009) (dismissing the PAGA claim for lack of standing when plaintiffs failed to move for class certification).[8]

---

[8]   The Ninth Circuit has not yet decided whether a PAGA representative action is permissible in federal court without satisfying Rule 23, although that question is presented in a case currently pending before that Court. *See Canela v. Costco Wholesale Corp.*, No. 18-16592 (9th Cir.).

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Third, to the extent Plaintiff continues to pursue a representative PAGA claim based on a holiday/PTO theory, such a claim fails because, having failed to obtain class certification of that claim, he lacks standing to represent any allegedly aggrieved employees. Although a plaintiff in state court has the choice of pursuing a representative PAGA claim as a class action or on a non-class, representative basis, *see Arias v. Superior Court*, 46 Cal. 4th 969, 975 (2009), the same is not true in federal court, where representative actions must satisfy constitutional standing requirements. *See, e.g., Raphael*, 2015 WL 5680310, at *2 (plaintiff "lacks standing to represent the rights and interests of the aggrieved employees," because "'[a]lthough PAGA authorizes representative actions, California state law cannot alter federal procedural and jurisdictional requirements'"); *see also Taylor v. W. Marine Products, Inc.*, No. 13-cv-4916, 2014 WL 1248162, at *2-3 (N.D. Cal. Mar. 26, 2014) (rejecting the contention that the plaintiff had "Article III standing to seek PAGA penalties as to every type of labor code violation, every employee, and every location, without satisfying the requirements of Rule 23," because, although a "state legislature may relax standing requirements for the state courts," it may "not do so for cases heard in federal court"); *Adams*, 2009 WL 7401970, at *6 (dismissing non-class, representative PAGA claim for lack of standing, and explaining that a "'perfectly viable'" claim in state court "'may nonetheless be foreclosed … in federal court, if [the plaintiff] cannot' meet federal procedural and jurisdictional requirements.").

As this Court previously recognized, "the evidence in the record … clearly shows that [Walmart] no longer paid employees under its Holiday Pay Program by the time that Evans was terminated on October 20, 2016," and "[b]ecause the evidence shows that Evans, like all similarly situated employees of [Walmart,] was not eligible to receive holiday pay at the time of termination, Evans has not demonstrated injury and therefore lacks standing to pursue this claim." (Dkt. No. 95 at 16 [citing *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2017) ("In a class action, standing is satisfied if at least one named plaintiff meets the requirements.")].) Plaintiff's own lack of standing on

18

the holiday-pay theory forecloses his ability to pursue it under PAGA on a representative basis. It is well-settled law that "PAGA imposes a standing requirement," and that in order for a plaintiff "to bring an action, [she] must have suffered harm." *Williams v. Superior Court*, 3 Cal. 5th 531, 558 (2017); Cal. Labor Code § 2699(c).

The PTO claim fares no better. As the Court has explained, the "bare bones evidence [Plaintiff offers] of unpaid PTO as to a single individual, with no indication that the failure extended to other individuals, or that the failure to pay unused PTO did in fact occur, is insufficient to meet the commonality requirements of Rule 23(a)(2)." (Dkt. No. 95 at 16.) That Plaintiff lacks common evidence on the PTO claim also dooms his ability to pursue that claim under PAGA, because the same individualized inquiries that this Court identified also render the representative PAGA claim unmanageable.

### D.   The Court Should Grant Summary Judgment on Plaintiff's Holiday, PTO and Derivative PAGA and UCL Claims (Counts IV, VII and VIII).

The Court should granted partial summary judgment as to Plaintiff's individual vacation pay because Evans does not have this claim, as the Court already found. (Dkt. No. 95 at 15; *see also* UF 39.) The Court should grant summary judgment to Walmart on Plaintiff's PTO claim because he has no evidence that his PTO was miscalculated. (UF 41.) The Court also should grant summary adjudication on the UCL and PAGA claims because they are derivative of the other claims and thus fail for the same reasons. *See Romano v. SCI Direct, Inc.,* No. 2:17-CV-03537-ODW, 2017 WL 8292778, at *9 (C.D. Cal. Nov. 27, 2017) ("'Because the underlying causes of action fail, the derivative ... PAGA claim[ ] also fail[s].'")*; Prachasaisoradej v. Ralphs Grocery Co.*, 42 Cal.4th 217, 244 (2007) (same, regarding derivative UCL claim).

### CONCLUSION

For the foregoing reasons, the Court should grant partial summary judgment in Walmart's favor.

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Respectfully submitted,

DATED:  January 24, 2020        GREENBERG TRAURIG, LLP

By        /s/ Robert J. Herrington
          Robert J. Herrington
          Naomi G. Beer (*pro hac vice*)

          Attorneys for Defendant
          Walmart Inc., f/k/a Wal-Mart Stores, Inc.

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT