Shaun Setareh (SBN 204514)
  shaun@setarehlaw.com
William M. Pao (SBN 219846)
  william@setarehlaw.com
Alexandra R. McIntosh (SBN 320904)
  alex@setarehlaw.com
SETAREH LAW GROUP
315 South Beverly Drive, Suite 315
Beverly Hills, California 90212
Telephone (310) 888-7771
Facsimile (310) 888-0109

Attorneys for Plaintiff
JAMES S. EVANS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| JAMES S. EVANS and KEINEISHA SMITH, on behalf of themselves, all others similarly situated,<br><br>*Plaintiffs*,<br><br>vs.<br><br>WAL-MART STORES, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>*Defendants*. | Case No. 2:17-cv-07641-AB-KK<br><br>Assigned For All Purposes To The Honorable Andre Birotté, Jr., Courtroom 7B<br><br>**DECLARATION OF SHAUN SETAREH IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT WALMART STORES, INC.'S NOTICE OF MOTION AND MOTION TO STRIKE EXPERT REPORT AND BAR TESTIMONY OF PLAINTIFF'S PROFFERED EXPERT JAMES TONEY; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:       February 28, 2020<br>Time:      10;00 a.m.<br>Place:      Courtroom 7B<br><br>Expert/Fact Discovery Cutoff: 2/14/2020<br>Final Pretrial Conference: 5/1/2020<br>Trial: 6/16/2020 |

## DECLARATION OF SHAUN SETAREH

I, Shaun Setareh, declare as follows:

1. I am an attorney at law admitted to practice before all of the Courts of the State of California. I am the principal at Setareh Law Group and counsel for Plaintiff James Evans ("Plaintiff") in this action against Defendant Wal-Mart Stores, Inc. ("Defendant"). I make this declaration upon personal knowledge and would competently testify to the matters set forth below if called to do so.

2. On April 20, 2018, Plaintiffs propounded written discovery on Wal-Mart consisting of: Interrogatories (Sets One and Two), Requests for Production of Documents (Set One), and Requests for Admission (Set One). Included in these requests were Requests for Production Numbers 7 and 8, which required Defendants to produce the class timekeeping and payroll records. Attached hereto as **Exhibit A** is a true and correct copy of relevant excerpts of Plaintiff's Requests for Production.

3. On July 16, 2018, Wal-Mart responded to Plaintiff's first set of Requests for Production of Documents (Set One). While Defendant's responses provided handbooks, training manuals, policies and procedures, it conspicuously and unilaterally omitted from its responses and document production all class-wide timekeeping and payroll data, while only producing timekeeping and payroll data for just the two named Plaintiffs. Attached hereto as **Exhibit B** is a true and correct copy of relevant excerpts of Defendant's responses.

4. On August 14, 2018, Plaintiff sent Defendant a detailed meet and confer letter regarding the outstanding discovery, including Defendant's failure to produce the class timekeeping and payroll records (Requests for Production Numbers 7 and 8). Attached hereto as **Exhibit C** is a true and correct copy of Plaintiff's meet and confer letter.

5. On September 19, 2018, Defendants produced approximately 900 documents. None of these documents included the class payroll and timekeeping data.

6. On September 20, 2018, the Parties met and conferred telephonically regarding Defendant's deficient responses, including Defendant's failure to produce the class timekeeping and payroll records. During the meet and confer, Defendant stated that Defendant would be willing to engage in the *Belaire-West* notice process and would consider including language regarding payroll and timekeeping data in the opt-out notice.

7. On May 6, 2019, Defendant sent Plaintiff an email asking Plaintiff to "articulate for us why the full and complete payroll and time-keeping records would be relevant to Plaintiff's putative class claims here and for which claims such information would be relevant? This information can help us and Walmart narrow the query and pull back a reasonably limited selection of data and rows applicable the claims and defenses as play."

8. On July 10, 2019, just two weeks before Plaintiff's Motion for Class Certification, Defendant responded to Plaintiff's May 20, 2019 email stating, that Defendant would not produce the timekeeping information prior to class certification. However, Defendant stated "*we understand that in the event that certain of Plaintiffs' claims are eventually certified, you may be entitled to some of these records in order to calculate damages*." As Plaintiff had less than two weeks to file his Motion for Class Certification, Plaintiff was forced to file his Motion for Class Certification without the timekeeping and payroll records and seek the records once the claims were certified. Attached hereto as **Exhibit D** is a true and correct copy of Defendant's July 10, 2019 email.

9. On July 22, 2019, Plaintiff filed his Motion for Class Certification.

10. On September 30, 2019, after Plaintiff's deadline to file his Motion for Class Certification, Defendant produced a small sampling of Earning Histories and

2
DECLARATION OF SHAUN SETAREH IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT WALMART STORES, INC.'S NOTICE OF MOTION AND MOTION TO STRIKE EXPERT REPORT AND BAR TESTIMONY OF PLAINTIFF'S PROFFERED EXPERT JAMES TONEY; MEMORANDUM OF POINTS AND AUTHORITIES)

DOEs for just 1,000 putative class members or .5% of the class.[1] Notably neither the Earning Histories nor the DOEs list the payroll periods or the dates for when the wages were earned or the hours were worked.

11. On November 15, 2019, after the hearing on Plaintiff's Motion for Class Certification, I met and conferred with Defendants. During the conversation, I requested that Defendant produce the class-wide timekeeping and payroll data once the claims are certified.

12. On November 25, 2019, this Court granted in part Plaintiff's Motion for Class Certification certifying the "Regular Rate Class" and "Wage Statement Class".

13. On December 3, 2019, after the regular rate class and wage statement class were certified, and pursuant to Defendant's email on July 10, 2019, I sent an email to Defendant asking for the class timekeeping and payroll data. I also requested that Defendant stipulate and submit a proposed order to request that the Court push out the class certification deadline until 45-days after Plaintiff receives the class timekeeping and payroll data for the class. I explained that without this information, Plaintiff's expert will be unable to provide a complete expert report.

14. On December 4, 2019, in contradiction to Defendant's July 10, 2019 email acknowledging that Plaintiff needs the timekeeping and payroll data to calculate damages, Defendant refused to produce the data on the basis that "we don't see how 'timekeeping' data is at all relevant." Attached hereto as **Exhibit E** is a true and correct copy of the email exchange between counsel.

15. On December 16, 2019, Plaintiff provided his expert disclosure. In those expert disclosures, Plaintiff's expert explained why the timekeeping and payroll data is required and why a sampling of 1,000 records is insufficient to determine the

---

[1] Plaintiff agreed to a sampling of less than .5% of the purposes of his Class Certification Motion. However, Plaintiff cannot use this sampling to calculate the damages for a class that is over 200,000 people.

damages for a class of 200,000 employees. Attached hereto as **Exhibit F** is a true and correct copy of Plaintiff's expert disclosures.

16. On December 20, 2019, Plaintiff sent Defendant a second meet and confer letter regarding Defendant's deficient discovery responses. Attached hereto as **Exhibit G** is a true and correct copy of Plaintiff's meet and confer letter.

17. On December 20, 2019, Plaintiff also sent Defendant an email asking for Defendant's availability to meet and confer regarding modifying the pretrial deadlines concerning expert disclosures. Attached hereto as **Exhibit H** is a true and correct copy of Plaintiff's email.

18. On December 26, 2019, after Defendant feigned ignorance as to why Plaintiff would need to modify the expert disclosure deadlines, I emailed Defendant to explain that Plaintiff's expert needs the full timekeeping and payroll data to provide full and complete opinions at trial. I also asked Defendant its availability to meet and confer regarding the discovery issues laid out in Plaintiff's December 20, 2019 meet and confer letter. Attached hereto as **Exhibit I** is a true and correct copy of my email to Defendant.

19. On January 2, 2020 and January 3, 2020, the counsel for the parties met and conferred regarding Defendant's failure to provide complete discovery responses, including a failure to produce the class timekeeping and payroll records. During these conferences, I informed Defendant that the full timekeeping and payroll records were required in order to calculate damages for the regular rate claim and wage statement claim. I further informed Defendant that a sampling is not sufficient as Plaintiff cannot calculate the damages without the complete class timekeeping and payroll records, especially if Defendant will not agree that the sampling is representative.

20. On January 22, 2020, the Parties met and conferred telephonically on, among other things, the Summary Judgment motion that Defendant planned to file. At no time did Defendant mention that it planned to file a Motion to Strike Plaintiff's expert.

21. On February 7, 2020, I emailed Defendant inquiring as to whether it planned to withdraw its Motion to Strike Plaintiff's Expert. Defendant responded that it did not plan to withdraw the motion. Attached hereto as **Exhibit I** is a true and correct copy of these emails.

Executed on this 7th day of February, in Los Angeles, California.

                               */s/ Shaun Setareh*
                               Shaun Setareh

DECLARATION OF SHAUN SETAREH IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT WALMART STORES, INC.'S NOTICE OF MOTION AND MOTION TO STRIKE EXPERT REPORT AND BAR TESTIMONY OF PLAINTIFF'S PROFFERED EXPERT JAMES TONEY; MEMORANDUM OF POINTS AND AUTHORITIES)