Shaun Setareh (SBN 204514)
   shaun@setarehlaw.com
William M. Pao (SBN 219846)
   william@setarehlaw.com
SETAREH LAW GROUP
9665 Wilshire Blvd., Suite 430
Beverly Hills, California 90212
Telephone (310) 888-7771
Facsimile (310) 888-0109

Attorneys for Plaintiff
JAMES S. EVANS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JAMES S. EVANS and KEINEISHA SMITH, on behalf of themselves, all others similarly situated,<br><br>                 Plaintiffs,<br><br>      vs.<br><br>WAL-MART STORES, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>                 Defendants. | Case No. 2:17-cv-07641-AB-KK<br><br>Assigned For All Purposes To The Honorable Andre Birotté, Jr., Courtroom 7B<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION *IN LIMINE* NO. 1 TO STRIKE DEFENDANT WAL-MART STORES, INC.'S EXPERT REPORTS AND BAR TRIAL TESTIMONY OF DEFENDANT'S EXPERT ELIZABETH HART NEWLON; MEMORANDUM OF POINTS AND AUTHORITIES; [PROPOSED] ORDER**<br><br>Date:   April 30, 2021<br>Time:   11:00 a.m.<br>Place:  Courtroom 7B |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 30, 2021 at 11:00 a.m., or as soon thereafter as the matter may be heard before the Honorable André J. Birotte, Jr. in Courtroom 7B of the United States District Court for the Central District of California, located at 350 West First Street, Los Angeles, California 90012, Plaintiff JAMES S. EVANS ("Plaintiff") will and does hereby move *in limine* for an order precluding Defendant WAL-MART STORES, INC. ("Walmart") from offering the report or testimony at trial of its expert, Dr. Elizabeth Hart Newlon ("Newlon"), on the grounds that Newlon's opinions are inadmissible under Rules 401, 403 and 702 of the Federal Rules of Evidence and fail to satisfy the standard set by *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 592-93 (1993) for the following reasons:

- Newlon's opinions are outside the scope of her expertise as an economist;
- Newlon's opinions lack factual and/or evidentiary foundation;
- Newlon's opinions are contrary to the law and this Court's own holdings;
- Newlon's opinions are based on a late-generated report that was produced to Plaintiff's counsel on the eve of her deposition;
- Newlon's opinions are unsupported, irrelevant and unduly prejudicial.

///
///
///
///
///
///
///

This Motion follows a conference of counsel pursuant L.R. 7-3, which took place on March 25 and April 8, 2021, and is based upon this notice, the attached memorandum of points and authorities, all pleadings and papers in the Court's file for this matter, any evidence of which the Court may take judicial notice, and such argument and evidence as may be made at the hearing on this motion.

DATED:  April 9, 2021                     SETAREH LAW GROUP


                                          /s/ Shaun Setareh
                                          SHAUN SETAREH
                                          WILLIAM M. PAO
                                          Attorneys for Plaintiff
                                          JAMES S. EVANS

PLAINTIFF'S MOTION *IN LIMINE* NO. 1 TO STRIKE THE EXPERT REPORT OF DR. ELIZABETH HART NEWLON AND/OR BAR HER TRIAL TESTIMONY

## TABLE OF CONTENTS

I. INTRODUCTION…….....……………………………………………1

II. STATEMENT OF FACTS AND PROCEDURAL HISTORY……………..2

    A. THE COURT GRANTS PLAINTIFF'S MOTION TO CERTIFY THE
    WAGE STATEMENT CLASS…………………………………………2

    B. WALMART'S MOTION FOR SUMMARY JUDGMENT AND
    DECERTIFICATION OF THE WAGE STATEMENT CLASS WAS
    DENIED……………………………………....…………………………3

        1.    Walmart's Motion for Summary Judgment………………..3

        2.    Walmart's Motion to Decertify the Wage Statement Class
        Was Denied……....………………………………………4

    C. PLAINTIFF'S EXPERT DESIGNATION…………………………..6

        1.    Toney's December 16, 2019 Expert Report ("Toney First
        Report")………....……………………………………………6

        2.    Toney's May 15, 2020 Expert Report ("Toney's Second
        Report")…………………………………………………6

        3.    Toney's July 6, 2020 Expert Report ("Toney's Third
        Report")……………………………………………………7

    D. WALMART'S REBUTTAL EXPERT DESIGNATION……………7

        1.    Newlon's January 15, 2020 Rebuttal Expert Report………7

        2.    Newlon's July 6, 2020 Rebuttal Expert Report…………..8

        3.    Newlon's February 15, 2021 Deposition Testimony..……10

III. LEGAL STANDARDS………………………………………………12

IV. ARGUMENT……………………………………...………………13

    A. NEWLON'S PROPOSED REBUTTAL OPINIONS SHOULD BE
    EXCLUDED………………………………………..………13

        1.    Newlon's Proposed Rebuttal Report Is Not a Proper
        Rebuttal……………………………………………13

iii.

a.  Newlon, As Walmart's Rebuttal Expert, Expresses
Opinions That Beyond Rebutting Toney's Report..........13

b.  Newlon's Opinions Are Irrelevant Because They
Contravene Black Letter Law As Pointed Out and Applied
By This Court When She Asserts That "Preferences Are
Relevant"…………….....…………………………………15

c.  Newlon's Opinions and Findings Were Belatedly Provided
Almost 14 Months After The Initial Expert Designation
Deadline……………………………….……………………17

2.  Newlon Is Not Qualified to Opine on Human Behavior…20

3.  Newlon's Critiques of Toney's Damages Calculations Are
Speculative, Unreliable and Misplaced…………………..23

V.  CONCLUSION……………………………………………………25

## TABLE OF AUTHORITIES

Cases

*Acree v. Gen. Motors Acceptance Corp.,* 92 Cal. App. 4th 385, 398 (2001)...........23

*Allstate Ins. Co. v. Thacher*, No. CV 08-3326-RSWL (FMOx), 2009 WL 10659480,
     at *1 (C.D. Cal. July 28, 2009).................................................................16

*Apple, Inc. v. Samsung Electronics Co*., No. 11–CV–01846–LHK, 2012 WL
     3155574, at *4 (N.D. Cal. Aug. 2, 2012) ....................................................20

*Brighton Collectibles, Inc. v. Renaissance Grp Int'l*, No. 06-CV-1115 H(POR), 2008
     WL 5500659, at *2 (S.D. Cal. May 13, 2008) .............................................20

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)........................12

*Diviero v. Uniroyal Goodrich Tire Co*., 114 F.3d 851, 853 (9th Cir. 1997)...........22

*Gable v. NBC*, 727 F. Supp. 2d at 832-33 ...........................................................20

*Greenhaw v. Lubbock Cty. Beverage Ass'n*, 721 F.2d 1019, 1027 (5th Cir. 1983) .23

*Hackett v. Procter & Gamble Co*., No. 06cv2272 WQH (WMc), 2008 WL 4646049,
     at *2 (S.D. Cal. October 17, 2008) ...............................................................20

*Hebert v. Lisle Corp*., 99 F.3d 1109, 1117 (Fed. Cir. 1996) ..................................16

*Houston Gen. Ins. Co. v. Farmington Cas. Co*., No. C11-2093 BJR, 2017 WL
     1248153, at *2 (W.D. Wash. Apr. 5, 2017) .................................................16

*Jones v. Travelers Casualty Insurance Company of America*, 304 F.R.D. 677 (N.D.
     Cal. 2015) ....................................................................................................18

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 147-48 (1999) ......................12

*Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001)12*Loud v. Eden Med.
     Ctr.*, No. 12-cv-2936, 2013 WL 4605856, at *11 (N.D. Cal. Aug. 28, 2013) .5

*Lukov v. Schindler Elevator Corp*., No. 5:11-cv-00201 EJD, 2012 WL 2428251, at *2
     (N.D. Cal. June 26, 2012)............................................................................16

*Mannick v. Kaiser Found. Health Plan, Inc*., No. C 03-5905 PJH, 2006 WL 1626909,
     at *17 (N.D. Cal. June 9, 2006)...................................................................16

*McGlinchy v. Shell Chem. Co*., 845 F.2d 802,807 (9th Cir. 1988) .........................22

v.

*MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-cv-5341 YGR, 2014 WL 2854890, at *5 (N.D. Cal. June 20, 2014) ........................................................23

*Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 888 (N.D. Cal. 2016) ...22

*Nichols v. Am. Nat'l Ins. Co.*, 154 F.3d 875, 883 (8th Cir. 1998) ...........................12

*Oracle USA, Inc., et al. v. SAP AG, et al.*, 264 F.R.D. 541, 544 (N.D. Cal. 2009)..19

*Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) .............................................13

*Ross Bros. Const. Co., Inc. v. Markwest Hydrocarbon, Inc.*, 196 F. App'x 412, 415 (6th Cir. 2006) ......................................................................................................17

*Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 562 (1931)23

*United Food & Commercial Workers Local 1776 v. Teikoku Pharma USA*, 296 F.Supp.3d 1142, 1177 (N.D. Cal. 2017).........................................................12

*United States v. Gonzalez-Maldonado*, 115 F.3d 9, 17-18 (1st Cir. 1997) .............13

*United States v. Pac. Gas & Elec. Co.*, No. 14-cr-00175-TEH, 2016 WL 1640462, at *3 (N.D. Cal. Apr. 26, 2016) ..........................................................................17

*United States v. Redlightning*, 624 F.3d 1090, 1111 (9th Cir. 2010) . 12*Yeti by Molly Ltd v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)............20

Statutes

Fed. R Civ. P. 26(b)(2)(B)(i)-(vi) ...........................................................................14

Fed. R. Civ. P. 26(b)(2)(D)(i) .................................................................................14

Fed. R. Civ. P. 26(b)(2)(D)(ii) ................................................................................14

Fed. R. Civ. P. 26(e)(1)(A) .....................................................................................19

Fed. R. Civ. P. 37(c)(1)............................................................................................20

Fed. R. Evid. 702 .....................................................................................................13

Lab. Code § 226(a) .....................................................................................................1

Lab. Code §§ 2698......................................................................................................2

vi.

PLAINTIFF'S MOTION *IN LIMINE* NO. 1 TO STRIKE THE EXPERT REPORT OF DR. ELIZABETH HART NEWLON AND/OR BAR HER TRIAL TESTIMONY

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This is a relatively simple class action arising from Walmart's violation of California Labor Code section 226 by failing to provide its California employees with an opportunity to elect to receive paper wage statements.  Now faced with uncontroverted evidence that its practices do not comply with California law, and have only provided its California employees with three ways in which to receive their wages and the accompanying wage statements – none of which include an option to receive it in paper format – Walmart is trying to muddy the waters and prejudice Plaintiff with plainly irrelevant and unreliable opinions from its designated expert.

Walmart disclosed that its proposed expert who may be a qualified economist, but she is unqualified to offer some, if not all, of the opinions in her reports.  Dr. Elizabeth Hart Newlon ("Newlon") proposes that as to whether an employee prefers to receive paper versus electronic wage statements will vary given the preferences of each individual class member and that only those who *did not* prefer electronic wage statements would have suffered an injury.  But this Court expressly rejected Walmart's contention that the resolution of this claim would be unmanageable because of individualized determinations, rather the only individualized determination that would be necessary for a jury to decide is whether each putative class member was given the opportunity to elect to receive a paper wage statement. At the same time, she – just like Walmart – fails to grasp that Labor Code section 226 does not depend on the preferences of Walmart's California employees, rather it depends on whether Walmart furnished "either as a detachable part of the check, draft, or voucher paying the employee's wages, …an accurate itemized wage statement *in writing*…" Lab. Code § 226(a).  Newlon did not even conduct a survey to support her contention, but instead offers pure conjecture made out of whole cloth. But that is not to say that Newlon, as an economist and not a human behavior expert, would be qualified to offer such opinions.  She is not.

PLAINTIFF'S MOTION *IN LIMINE* NO. 1 TO STRIKE THE EXPERT REPORT OF DR. ELIZABETH HART NEWLON AND/OR BAR HER TRIAL TESTIMONY

Walmart's strategy by creating a straw man with its proposed expert is clear; to confuse the issues, mislead the fact-finder with unreliable testimony, and unfairly prejudice Plaintiff and the class in the hopes of overcoming all of the compelling evidence against it.  This should not be permitted.

## II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff filed this class action on September 13, 2017 that included a claim for Failure to Provide Accurate Written Wage Statements.  On November 20, 2017, Plaintiff filed a First Amended Complaint that included a claim for civil penalties under the Labor Code Private Attorneys General Act of 2004 ("PAGA") (Lab. Code §§ 2698 *et seq.*).

### A.    THIS COURT GRANTS PLAINTIFF'S MOTION TO CERTIFY THE WAGE STATEMENT CLASS[1]

On July 22, 2019, Plaintiff filed his motion for class certification.[2]  After the matter was fully briefed and having considered oral arguments, this Court issued an order granting Plaintiff's motion and certifying the Wage Statement Class pursuant count V (failure to provide accurate written wage statements).  In granting class certification as to the Wage Statement Class, this Court expressly rejected Walmart's contention that the resolution of this claim would be unmanageable because of individualized determinations – which is exactly what Newlon is now attempting to do.

> "Here, Defendant argues that predominance cannot be established with respect to the Wage Statement Class because a factfinder would have to determine a bevy of individual questions, including (1) whether each member elected to receive paper wage statements; (2) why each member did or did not elect to receive paper wage statements, (3) whether each

---

[1] Although the Court granted class certification as to the Regular Rate Class and the Wage Statement Class, the claims of the Regular Rate Class were dismissed on summary judgment and the order dismissing that claim was entered on November 15, 2019.  For the purposes of Plaintiff's motion in *limine* only the claims of the Wage Statement Class will be discussed.

[2] At the time, both James S. Evans and Keineisha Smith were putative class representatives.  On November 14, 2019, the parties stipulated to dismiss Keineisha Smith from this action without prejudice. (ECF 92.)

member informed Defendant that he or she would like printed wage statements, and (4) why each member did or did not inform Defendant that he or she would like printed wage statements. (Dkt. No. 64 at 21.) However, as Plaintiffs have shown, the individualized inquiries inherent in the putative Wage Statement Class's cause of action would necessarily be more circumscribed. ***In particular, the only individualized determination that would be necessary is whether each putative class member was given the opportunity to elect to receive a paper wage statement. Because Plaintiffs challenge Defendant's purported policy of failing to*** provide employees with an opportunity to elect to receive a written wage statement, the individualized inquires required in this action are limited."

(ECF 95, at 20:10-23.) (Emphasis added.)

## B.    WALMART'S MOTION FOR SUMMARY JUDGMENT AND DECERTIFICATION OF THE WAGE STATEMENT CLASS WAS DENIED

On January 31, 2020, Walmart filed three motions: (1) Motion for Partial Summary Judgment; (2) Motion to Decertify the Wage Statement Class (and the claims of the since-dismissed Regular Rate Class); and (3) Motion to Strike the Expert Report of James Toney[3].

### 1.  <u>Walmart's Motion for Summary Judgment</u>

On January 24, 2020, Walmart filed its motion for summary judgment seeking to dismiss the claims of both the Regular Rate Class and the Wage Statement Class. Walmart makes two chief arguments in support of their motion for partial summary judgment. First, Walmart's argues that it complied with Labor Code section 226 because the "undisputed facts now show that *all* Walmart's California associates had the opportunity to elect to receive a paper wage statements and receive live, physical payroll check with a paper wage statement attached until they affirmatively sign up for another option." (citing to the Declaration of Ms. Diana McChristian). This can hardly be characterized as an undisputed fact for several reasons. After producing thousands of

_____

[3] The parties subsequently stipulated to Walmart's withdrawal of this motion given that the Court granted Plaintiff's motion to compel and after the parties had also stipulated to a continuance of the fact-discovery cut-off solely for the purposes of deposing the parties' respective experts.

PLAINTIFF'S MOTION *IN LIMINE* NO. 1 TO STRIKE THE EXPERT REPORT OF DR. ELIZABETH HART NEWLON AND/OR BAR HER TRIAL TESTIMONY

pages in discovery, and responding to Plaintiff's numerous formal discovery requests that sought information as to how its employees were furnished with the paychecks and wage statements, and the deposition testimony of Ms. McChristian, along with the various declarations of Ms. McChristian that seemed to morph to suit the needs of Walmart at the time, what *is* undisputed is that there is nothing in the record that would support Walmart's belated contention other than Ms. McChristian's self-serving declaration. Second, Walmart again asserts, in direct contravention of this Court's prior order certifying the Wage Statement Class, that Plaintiff failed to provide a method to calculate the damages for the putative class.  Just as it did when it certified the Wage Statement Class, this Court even pointed out Walmart's counsel concession that the record was bare as to whether employee could elect to receive paper wage statements after selecting electronic payments. (ECF 181, at 23-25.)  And in denying Walmart's motion, this Court again stated:

> "As this Court explained in its class certification order, here the gravamen of Plaintiff's wage statement claim is that Walmart did not provide Plaintiff and other employees "***with an opportunity to elect to receive a [paper] wage statement***."

(ECF 181, at 7:23-26.) (Emphasis added.)

## 2. <u>Walmart's Motion to Decertify the Wage Statement Class Was Denied</u>

In filing its Motion to Decertify the Regular Rate Class and the Wage Statement Class, Walmart's claims that "the undisputed facts now show that *all* Walmart's California associates had the opportunity to receive a paper wage statement.  This is because California associates receive a live, physical payroll check with a paper wage statement attached until they affirmatively sign up for another option." (ECF 118, at 2:12-15 (citing ***only to*** the Declaration of Diana McChristian In Support of Walmart's Motion for Partial Summary Judgment (ECF 109-2.)

Again, Walmart's arguments to decertify the claims of the Wage Statement Class all focus on their contention that "[i]njury is an element of Plaintiff's wage statement claim" and cited *Loud v. Eden Med. Ctr.*, No. 12-cv-2936, 2013 WL 4605856, at *11

(N.D. Cal. Aug. 28, 2013) ("The injury requirement ins section 226€ is not satisfied simply because one of the nine itemized requirements in section 226(a) is missing."). This argument fails to address the facts of this case.  First, this case is not about Walmart failing to provide one of the nine itemized requirements in section 226(a), rather it is about Walmart utterly failing altogether to provide its California associates with a paper wage statement (or an option to elect paper wage statements).  The failure to provide wage statements in a format specified by the statute is tantamount to not providing any wage statement at all.  This is further buttressed by Labor Code section 226(e)(2)(A) which is clear and unambiguous: "An employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide a wage statement."

In denying Walmart's motion, this Court explained:

> Here, the gravamen of Plaintiffs' wage statement claim is that Defendant violated California Labor Code section 226(a) because Defendant did not provide Walmart associates with an opportunity to elect to receive wage statements in paper, rather than electronic, form. (Dkt. No. 95 at 20.) Defendant contends that predominance cannot be established with respect to the Wage Statement Class because the factfinder will need to determine a wide array of individual questions, such as (1) whether each member received a paper check and wage statement, (2) whether each member preferred to receive electronic wage statements, (3) whether each member was allegedly directed to elect electronic pay, (4) whether each member printed wage statements at work for free, and (5) whether each member accessed their wage statements on an electronic device. (Dkt. No. 137 at 11-13.)  However, as the Court previously held in its class certification order, "Plaintiffs have shown that the individualized inquiries inherent in the putative Wage Statement Class's cause of action would necessarily be more circumscribed. In particular, ***the only individualized determination that would be necessary is whether each putative class member was given the opportunity to elect to receive a paper wage statement***." (Dkt. No. 95 at 20 (emphasis added).) As this Court explained, "[b]ecause Plaintiffs challenge Defendant's purported policy of failing to provide employees with an opportunity to elect to receive a written wage statement, the individualized inquiries required in this action are limited."

(ECF 182, at 6:19-7:9) (emphasis in original.)

It logically follows that if Walmart's associates were not provided with an opportunity to elect to receive paper wage statements, and regardless of each associates' preferences for paper versus electronic wage statements, Walmart would have violated Labor Code section 226.  As the record is devoid of any evidence that its associates were

1 ever given an opportunity to elect to receive paper wage statements, it is proper for

2 Plaintiff, at least at this stage, to calculate damages for the entire class until Walmart can

3 produce evidence that it did provide its associates with an opportunity to elect to receive

4 paper wage statements.

5 ### C.  PLAINTIFF'S EXPERT DESIGNATION

6 On May 3, 2018, this Court issued a Scheduling Order that set the deadline for

7 initial expert disclosures to take place *simultaneously* no later than December 15,

8 2019. (ECF 26.)

9 #### 1.  <u>Toney's December 16, 2019 Expert Report ("Toney First Report")</u>

10

11 On December 16, 2019, and despite not having all of the timekeeping and

12 payroll records in order to calculate damages, Plaintiff nevertheless submitted his

13 expert designation along with Toney's report.  In his report, Toney was unable to

14 calculate the damages for the entire class largely due to the exceedingly small (0.5%

15 of the class) sampling of 1,000 records previously produced by Walmart.  Toney

16 further explained that the data produced by Walmart lacked the start and end dates for

17 each individual's employment with Walmart which further prevented him from

18 determining if the employment periods of the sample group are similar to the class.

19 Accordingly, any damages calculation based on this sample size could not be

20 extrapolated to the entire class.  Based on the lack of data, Toney was unable to

21 calculate the damages for the Wage Statement Class.

22 #### 2.  <u>Toney's May 15, 2020 Expert Report ("Toney's Second Report")</u>

23 Toney's role with respect to the Wage Statement Class, was to simply serve as

24 a calculator. (Setareh Decl., ¶ 2.)  Once Walmart produce the timekeeping and payroll

25 records showing the class size and whether they provided a paper wage statement or

26 not, Toney was able to calculate the damages.  Pursuant to Labor Code section

27 226(e)(1):

28

PLAINTIFF'S MOTION *IN LIMINE* NO. 1 TO STRIKE THE EXPERT REPORT OF DR. ELIZABETH HART
NEWLON AND/OR BAR HER TRIAL TESTIMONY

"An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees."

Because the claims of the Wage Statement Class involve Walmart's failure to furnish paper wage statements or provide its associates with an opportunity to elect to receive paper wage statements and because Labor Code section 226(e)(2) provides that "[a]n employee is deemed to suffer injury for the purposes of this subdivision if the employer fails to provide a wage statement," this wholesale failure to provide its associates with an opportunity to elect paper wages statements justifies a calculation based on a 100% violation rate.

### 3. Toney's July 6, 2020 Expert Report ("Toney's Third Report")

Pursuant to Rule 26(a)(3), Toney supplemented his report by correcting the calculations made in his May 15, 2020 report, but otherwise did not make any other substantive changes.

### D.    WALMART'S REBUTTAL EXPERT DESIGNATION

Walmart did not designate Newlon, or *any* expert, by the December 15, 2019 deadline. (Setareh Decl., ¶ 3.)  Instead, Walmart designated Newlon as its rebuttal expert *after* Plaintiff designated Toney as his expert. (Setareh Decl., ¶ 4.)

### 1. Newlon's January 15, 2020 Rebuttal Expert Report

In Newlon's First Report, she opines that:

- "In Section 7 of his December 2019 declaration, Mr. Toney presents a brief and limited description of how he proposes to determine when a wage statement penalty is owed.  Wage statement penalties can flow from Plaintiff's overtime payment and wage statement claims.  Yet, as Mr. Toney says in the final sentence of the section, there is only one wage statement penalty payment possible per pay period.  However, in his proposed methodology for calculating Wage Statement Class damages, Mr. Toney does not explain how he will address the different potential outcomes of this case." (Newlon's First Report, ¶ 18);

- "In addition, Mr. Toney does not present any evidence for the central question whether Walmart's process for furnishing wage statements to Mr. Evans or

7

class members violated California law.  Mr. Toney does not consider whether the class members did receive paper statements.  If there are class members who did receive paper statements, there are class members who were offered the choice of a paper statement.  Mr. Toney also does not explain how this fact would affect his calculation of damages for the Wage Statement Class." (Newlon's First Report, ¶ 18);

- "Furthermore, Mr. Toney does not offer a methodology for identifying the class members who did not prefer to receive a paper wage statement and, therefore, were not affected by the alleged lack of a paper option.  These are the class members who believe that they were "provided with an accurate itemized statement in writing " with either the electronic version or the ability to print their wage statement.  Mr. Toney's methodology assumes that all class members have the same preferences for the form of their wage statement. However, it has not been proven by Plaintiff that all or nearly all class members did not receive a choice of an itemized statement in writing simply because they might no9t have received a paper option.  Moreover, Plaintiff and Plaintiff's expert have not demonstrated how the failure to offer an option that an individual would not have considered leads economic injury." (Newlon's First Report, ¶ 19).

Having conducted no independent investigation of her own, Newlon nevertheless opines that Toney's damages calculation for the entire class did not take into account each individual's preferences.  As this Court pointed out in its order certifying the Wage Statement Class and then denying Walmart's Motion for Summary Judgment and Motion to Decertify the Wage Statement Class, Plaintiff has shown that "… ***the only individualized determination that would be necessary is whether each putative class member was given the opportunity to elect to receive a paper wage statement***." (ECF 95, at 20.) (emphasis in original.)  Therefore, evidence as to each individual's preferences is wholly irrelevant.

## 2.  <u>Newlon's July 6, 2020 Rebuttal Expert Report</u>

In Newlon's Second Report, she opines that:

- "To identify penalties for the Wage Statement Class, Mr. Toney uses data containing pay check information ("Wage Statement Data"), including whether the payment was made by paper check or electronically.  Yet Mr. Toney made no attempt to answer the question of which class members were somehow injured based on receiving an electronic statement rather than a paper statement.  Instead, he assumes that every time an associate received an electronic statement, they were injured, and a wage statement penalty is owed." (Newlon's Second Report, ¶ 19.)

- "Given the general diversity of human preferences for goods and services, it is likely that some of the members of the Wage Statement Class had different preferences for electronic versus paper wage statements.  Some may have

preferred electronic. Some may have preferred paper. Some may have had different preferences at different times. And others may have had no preference at all. To treat every electronic statement as causing injury, Mr. Toney must have evidence that all or nearly all of t he class members were injured when they received an electronic statement. Yet, Mr. Toney provides no basis for his assumption. Moreover, he admitted in his deposition that he did not look for evidence in support of his assumption." (Newlon's Second Report, ¶ 20.)

- "Mr. Toney also ignores that there is evidence in the Wage Statement Data that class members had a variety of preferences for the form of their wage statements. There are 188,846 associates in the Wage Statement Class. Of these associates, 27,367, or 14.5 percent, always received paper checks, thus providing evidence that some class members preferred paper wage statement and were able to chose to receive that form of wage statement exclusively. If 14.5 percent of the class had a choice of their type of wage statement, it is not unreasonable to ask whether some of the class members who switched from a paper statement to an electronic statement chose to do so because they preferred to receive an electronic wage statement. Out of the 50,995 class members, or 27 percent of all class members, who received an electronic wage statement after receiving paper statements, it remains unclear how many switched because they preferred receiving an electronic statement. Mr. Toney did not attempted to answer this question in his declaration." (Newlon's Second Report, ¶ 21);

- "The evidence that class members had different preferences for the form of their wage statement and a choice over whether they received a paper or an electronic statement casts significant doubt on the validity of Mr. Toney's assumption that all class members were injured when they received an electronic statement. Even for class members who only received electronic statements, there is no evidence that every person always preferred to receive paper statements. If class members have different preferences for the form of their wage statements or no preference at all, Mr. Toney's assumption that class members were injured with every electronic wage statement is incorrect, and he has provided no methodology to identify injured class members versus uninjured class members. This failure leads to Mr. Toney proposing to award penalties to a substantial number of class members who may have had no injury at all." (Newlon's Second Report, ¶ 22.)

Newlon's Second Report fares no better as it continues to rely on the same argument that this Court has already rejected because the issue is not whether any individual preferred electronic versus paper wage statements, but is instead whether Walmart provided its California associates with an opportunity to elect to receive paper wage statements. In the utter absence of any such evidence, Labor Code section 226(e))(A)(2) makes clear that damages are presumed when employers fail to provide its employees with a wage statement in a format provided by law.

///

9

### 3. **Newlon's February 15, 2021 Deposition Testimony**

Walmart served on Plaintiff after hours on Friday, February 12, 2021 at 5:47

p.m. before her deposition was to take place on Monday, February 15, 2021, a late-

generated report that shows associates who were receiving electronic wage statements

subsequently changed to receiving paper wage statements. Newlon assumes –

through the introduction of the late-generated report – that it must mean that there is

some method for electing paper wage statements.

Specifically, Newlon testified to the following:

- "I bring up the evidence that there were people switching to and from having a paper wage statement to having an e-wage statement or an electronic wage statement." (Setareh Decl., ¶ 10; Newlon Deposition Transcript ("Newlon Tr."), 60:19-22.)

- "I also raised the issue that 14.5 percent of associates in the class always received a paper wage statement." (Newlon Tr., 60:23-25.)

- "And as I brought up earlier, I've also – and, you know, after the additional ruling last year, at the end of last year, I also went back and checked and looked at the data; and I do see that people were switching from an e-statement to a paper statement, as well. That's about 8 percent of the class or 15,646 people." (Newlon Tr., 61:5-10.)

- "So there is evidence that goes to the contrary of Plaintiff's conjecture that people didn't have a choice of receiving a paper statement. And, really, primarily, that's also, you know, a criticism of Mr. Toney, Plaintiff's expert. He did not look at any of this. Even after I had said he needed to look at it, in his opinion in my January 2020 report, he didn't look at that. He didn't talk about that. He just went forward and assumed Plaintiff's point of view; that people didn't haver a choice to use a paper statement." (Newlon Tr., 61:11-20.)

In fact, Newlon even admits that the additional opinion was not contained in

her previous reports.

```
Q Did you note this in your report, this testimony
that you just gave us?

A No. I had said this was an additional opinion
that I was offering today.

Q When did you say that?

A At the beginning of the deposition. When I
first brought up the 15,646 people, you switched from an
e-statement to a paper statement. And then we said we
```

10

1    would get to that more in detail later.

2    Q Other than a garnishment, what other reasons
     would Walmart go from electronic to paper?

3
4    A We'd have to talk to managers to find out more
     about that. You know, talk to maybe Diana McChristian.

5
6    (Newlon Tr., 66:3-15.)  When asked to identify evidence that demonstrates Walmart

7    gives its associates an opportunity to elect paper wage statements, Newlon could only

     testify to the following:

8
9    Q Do you believe that Walmart -- do you have any
     evidence to demonstrate that Walmart gives employees the
     opportunity to receive written wage statements?

10
11   A Do I have any evidence that Walmart provides
     associates with the opportunity to receive paper wage
     statements?

12
13   Am I understanding your question correctly?

     Q Yes.

14
15   A The evidence that I see would be people that
     only ever received paper wage statements through their
     career with Walmart, so associates, that's that

16   14.5 percent of the associates in the Wage Statement
     Class.

17
18   We also see people receiving more than just one
     wage statement that's paper. Even though even one paper
     wage statement seems to reflect that people started out

19   with paper and could have chosen to keep going with paper
     because they didn't receive -- for example, you know

20   backing out from Toney's calculations, like I said, there
     was about 18 or 19 percent of the class that would have

21   received four or more paper wage statements, and he had
     found like 63 percent received at least one paper wage

22   statement.

23   As well as I had brought up that new study we
     had done that shows that 8 percent of the class switched

24   at some point from electronic to paper.

25   So all of that is evidence in support of a
     reasonable idea that Walmart would have offered paper

26   wage statements as an option to people.

27   I'm curious to know how many people preferred
     electronic wage statements, how many people that was

28   their preferred way of receiving their compensation each

11

1    pay period.

2    MR. SETAREH: Move to strike as nonresponsive.

3    Newlon's testimony, her opinions and reports, to the extent that they exceed

4    the scope of rebuttal expert testimony under Rule 26(a)(2), they should be stricken

5    and Walmart should not be permitted to introduce such testimony, opinions and/or

6    reports.

7    ## III. <u>LEGAL STANDARDS</u>

8    Trial courts must perform a "gatekeeping function" to ensure expert testimony

9    satisfies the "reliable and relevant" prongs of Rule 702 of the Federal Rules of

10    Evidence; *United States v. Redlightning*, 624 F.3d 1090, 1111 (9th Cir. 2010); *see*

11    *also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993) (expert

12    testimony must be "not only relevant, but reliable"). The party proffering the expert

13    has the burden of proving that the testimony is admissible under Rule 702. *United*

14    *Food & Commercial Workers Local 1776 v. Teikoku Pharma USA*, 296 F.Supp.3d

15    1142, 1177 (N.D. Cal. 2017).

16    Rule 702 and Daubert apply "not only to testimony based on scientific

17    knowledge, but also to testimony based on technical and other specialized

18    knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 147-48 (1999).

19    Expert opinion testimony is appropriate only where the trier of fact would not

20    ordinarily be able to resolve a factual issue without technical or specialized

21    assistance. *Daubert*, 509 U.S. at 591; *Kumho*, 526 U.S. at 156; *Lauzon v. Senco*

22    *Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) ("[E]vidence based on scientific,

23    technical, or other specialized knowledge must be useful to the finder of fact in

24    deciding the ultimate issue of fact. . . . This is the basic rule of relevancy.").

25    If a jury is capable of drawing its own inferences from the available evidence,

26    expert testimony is not "helpful to the trier of fact." *Nichols v. Am. Nat'l Ins. Co*., 154

27    F.3d 875, 883 (8th Cir. 1998). In fact, such opinion testimony can result in unfair

28    prejudice to the opposing party by confusing the issues or misleading the jury. *See*

12

*United States v. Gonzalez-Maldonado*, 115 F.3d 9, 17-18 (1st Cir. 1997) ("By appearing to put the expert's stamp of approval on [a] theory, such testimony might unduly influence the jury's own assessment of the inference that is being urged.").

"Rule 702 sets forth the overarching requirement of reliability, and an analysis of the sufficiency of the expert's basis cannot be divorced from the ultimate reliability of the expert's opinion." Fed. R. Evid. 702 advisory committee notes to 2000 amendment. An expert opinion is reliable "if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010). The trial court must consider whether the testimony: (1) is "based on sufficient facts or data"; (2) is "the product of reliable principles and methods"; and (3) applies "the principles and methods to the facts of the case." Fed. R. Evid. 702. The knowledge underlying the expert's opinion must also have a valid connection to the pertinent inquiry. *Primiano*, 598 F.3d at 565.

Courts should exclude expert testimony under Rule 403 if its "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595.

## IV.   ARGUMENT

### A.   NEWLON'S PROPOSED REBUTTAL OPINIONS SHOULD BE EXCLUDED

#### 1.   Newlon's Proposed Rebuttal Report Is Not a Proper Rebuttal

##### a.   *Newlon, As Walmart's Rebuttal Expert, Expresses Opinions That Beyond Rebutting Toney's Report*

Rule 26(a)(2) governs a party's obligation in disclosing expert testimony. Experts specially engaged to provide expert testimony must furnish written reports

13

PLAINTIFF'S MOTION *IN LIMINE* NO. 1 TO STRIKE THE EXPERT REPORT OF DR. ELIZABETH HART NEWLON AND/OR BAR HER TRIAL TESTIMONY

that include a "complete statement of all opinions the witness will express and the basis and reasons for them," all "facts or data considered by the witness," and various disclosures related to the expert's qualifications, compensation, and prior expert testimony. Fed. R Civ. P. 26(b)(2)(B)(i)-(vi).  Absent a court order to the contrary, the parties must disclose "at least 90 days before the date set for trial." Fed. R. Civ. P. 26(b)(2)(D)(i).  A party may also, however, offer rebuttal expert testimony – testimony "intended solely to contradict or rebut evidence on the same subject matter" as another party's expert disclosure – within 30 days after the other party's disclosure. Fed. R. Civ. P. 26(b)(2)(D)(ii).

Newlon is being offered as a rebuttal expert on the reliability of Plaintiff's expert – Mr. James Toney ("Toney") – methodology for the calculation of damages as to the Wage Statement Class. *See* Expert Report of Dr. Elizabeth Hart Newlon dated January 15, 2020 ("Newlon's First Report") and July 6, 2020 ("Newlon's Second Report").  However, much of her opinions go beyond just rebutting Toney's report.

In his July 6, 2020 report, Toney opined that based on the data produced by Walmart, there were approximately 191,400 employees who received electronic wage statements. (Setareh Decl., ¶ 7.)   Employees that received a paper check during the period were approximately 121,000 or 63%. (Setareh Decl., ¶ 7.)  Of the employees who received checks, 70% of them received 3 or fewer checks during the entire period available. (Setareh Decl., ¶ 7.)  Payments coded as "D" represented 90% of the disbursements made and numbered approximately 5,740,000.

Significantly, Newlon testified that she found about the same number of employees who received electronic wage statements.

```
Q Okay. And do you know how many people were on
this wage statement?

A Well, he found 191,000 as it's reported right
there. We excluded checks that had zero -- you know,
they were voided or had zero as the amount paid as well
as garnishments from that.
```

Q Any other checks that you excluded?

A I'm just trying to replicate what he did. I mean, we didn't, you know -- so I would say, you know, we interpreted it as having or I would interpret it as having fewer people in it that weren't really analyzable, and then you have to address the people that worked potentially outside of -- well, actually, if they worked at a Walmart store outside of California, they also did work inside of California.

So you actually had to look at the statute of limitations and who was in there. So there may have been fewer people within the statute of limitations because their time working outside of California was within the statute of limitations but their time in California was outside of it, things like that; but, generally, we found about the same number of employees.

Q Dr. Newlon, other than the zero paystubs or garnishments, you know, some payroll accounts outside of California, was there a difference in the number of employees that you found?

A In the raw data, I believe there are, as he said, 191,000 associates. When you look at -- you know, as I said, removing just the people who or just the checks that looked to be erroneous or unrelated to the allegation because of the particular nature of the garnishment, I believe there was 188,000, and I'd have -- yeah, **188,000 thereabouts. So it's close.**

(Newlon Tr., 90:13-91:20.) (emphasis added.)

### b. *Newlon's Opinions Are Irrelevant Because They Contravene Black Letter Law As Pointed Out and Applied By This Court When She Asserts That "Preferences Are Relevant"*

As this Court pointed out when it granted Plaintiff's motion to certify the Wage Statement Class, "…Plaintiffs have shown, the individualized inquiries inherent in the putative Wage Statement Class's cause of action would necessarily be more circumscribed.  In particular, the only individualized determination that would be necessary is whether each putative class member was given the opportunity to elect to receive a paper wage statement." (ECF 95 at p. 20:16-23.)  This Court again confirmed this when it denied Walmart's motion for6 decertification, "In particular, ***the only individualized determination that would be necessary is whether each***

1    *putative class member was given the opportunity to elect to receive a paper wage*
2    *statement.*" (ECF 182 at p. 7:3-6) (emphasis in original.)

3         Newlon now proposes to opine that the damages calculations performed by
4    Toney are "unreliable" because, according to Newlon's bare speculation, Toney did
5    not make an individualized inquiry as to whether each class member was injured.
6    (Newlon's First Report, ¶¶ 18-19; Newlon's Second Report, ¶¶ 19-20.)

7         Newlon's proposed opinions are legal conclusions that are contrary to black
8    letter law and this Court's own holdings.  Therefore, her opinions should be excluded.
9    *See Houston Gen. Ins. Co. v. Farmington Cas. Co*., No. C11-2093 BJR, 2017 WL
10    1248153, at *2 (W.D. Wash. Apr. 5, 2017) ("It is well within the power of the Court
11    to exclude expert testimony at summary judgment if that testimony is based on
12    incorrect conclusions of law."); *Hebert v. Lisle Corp*., 99 F.3d 1109, 1117 (Fed. Cir.
13    1996) ("Incorrect statements of law are no more admissible through experts than are
14    falsifiable scientific theories.").

15         In addition, Newlon's proposed opinions should be excluded as improper legal
16    opinion.  Courts regularly strike expert testimony that "invades the province of the
17    Court" with legal conclusions cloaked as expert evidence. *Lukov v. Schindler*
18    *Elevator Corp*., No. 5:11-cv-00201 EJD, 2012 WL 2428251, at *2 (N.D. Cal. June
19    26, 2012); *Allstate Ins. Co. v. Thacher*, No. CV 08-3326-RSWL (FMOx), 2009 WL
20    10659480, at *1 (C.D. Cal. July 28, 2009); *Gable*, 727 F. Supp. 2d at 833 ("[A]n
21    expert cannot offer his legal opinion as to whether a triable issue of fact exists
22    regarding copyright infringement; such an analysis is the exclusive province of the
23    Court."); *Mannick v. Kaiser Found. Health Plan, Inc*., No. C 03-5905 PJH, 2006 WL
24    1626909, at *17 (N.D. Cal. June 9, 2006) ("[F]ederal courts typically prohibit experts
25    from interpreting the law for the court or from advising the court about how the law
26    should apply to the facts of a particular case. Testimony which articulates and applies
27    the relevant law . . . circumvents the [fact finder's] decision-making function by
28    telling it how to decide the case.").

Here, whether Walmart's conduct complied with the California Labor Code and whether damages can be proven with common proof rather than an inquiry as to each individual's preferences for paper versus electronic wage statements are not appropriate expert opinions.  Likewise, whether a particular class member was injured as a result of a class-wide practice of not providing them with an opportunity to elect paper wages statements is also not appropriate expert opinion.  Newlon is not qualified to make these conclusions (nor is any expert).  Her legal opinions should, therefore, be excluded. *See United States v. Pac. Gas & Elec. Co*., No. 14-cr-00175-TEH, 2016 WL 1640462, at *3 (N.D. Cal. Apr. 26, 2016) (excluding expert "from testifying in any manner that would invite the jury to substitute another standard" for the actual standard that must be proven); *Ross Bros. Const. Co., Inc. v. Markwest Hydrocarbon, Inc*., 196 F. App'x 412, 415 (6th Cir. 2006) (excluding expert conclusions about whether tender of payment was in "good faith").

### c. Newlon's Opinions and Findings Were Belatedly Provided Almost 14 Months After The Initial Expert Designation Deadline

Walmart – through the testimony of its expert – seeks to introduce evidence that class members were provided with an opportunity to elect to receive paper wage statements because its late-generated report shows that associates who were receiving their wages electronically subsequently changed to receiving paper checks.  Newlon's proposed opinion is outside the scope of proper rebuttal because the late-generated report[4] (derived from the data previously produced to Plaintiff) that she relied upon was not even produced to Plaintiff until after hours on Friday, February 12, 2021 at 5:47 p.m. before her deposition was to take place on Monday, February 15, 2021.

---

[4] This subsequently generated report contains a list of Walmart's associates who switched from receiving electronic wage statements to paper wage statements. Walmart implies – through Newlon's opinion – that because these individuals exist, that it must mean that they were given the opportunity to elect paper wage statements.

17

(Declaration of Shaun Setareh ("Setareh Decl."), ¶ 11.); *Jones v. Travelers Casualty Insurance Company of America*, 304 F.R.D. 677 (N.D. Cal. 2015)  Therefore, this data could not even have been relied upon by Toney, and more importantly, was disclosed to Plaintiff not only after well past the January 15, 2020 rebuttal expert disclosure deadline but after hours on a Friday when Walmart's counsel knew (or should have known) that Plaintiff's counsel would not even look at them (or even if they did, would not have time to send to Toney for review and analysis). (Setareh Decl., ¶ 12.)  As this Court is well aware, even Walmart's counsel conceded on the record at the hearing on Walmart's motion for summary judgment and motion for decertification that there is no evidence on the record Walmart's associates were provided with an opportunity to elect paper wage statements.

> THE COURT:    Got it.  Someone who initially agrees to electronic payments, can they opt out and switch to paper at a later point?
>
> MR. HERRINTON:    There isn't any evidence on that in the record, Your Honor.
>
> THE COURT:    Okay.  Do you know the answer to that, though?
>
> MR. HERRINGTON:    Just to make sure I am understanding the Court's question, you are talking about basically going back through the door, reversing through the door once you go electronic –
>
> THE COURT:    Correct.
>
> MR. HERRINGTON:    -- once you go paper.  The answer is I don't know the answer to that question.

(Setareh Decl., ¶ 13; Transcript of Hearing on August 4, 2020, at 12:2-16.)

If Walmart's own counsel, who is intimately involved in this case since its inception and presumably would have come across this information during discovery, does not know whether it is even possible for Walmart's associates to *voluntarily* switch to paper after electing to receive their wages electronically, then Newlon's testimony implied from the late-generated report, is nothing but pure speculation and conjecture.  Even more troubling is that Newlon's opinion contradicts Walmart's Rule 30(b)(6) witness and the thousands of pages that it produced in discovery – none

18

of which makes any reference to an associate being given the option to *voluntarily* elect paper wage statements.  Notably, there is no language that expressly communicates to an associate that once they elect to receive their wages electronically, they will no longer receive paper wage statements.  In other words, there is **no election** by an associate to receive their **wage statements** electronically.

> Q:    When an employee elects to receive their pay electronically, do you know if that election documents or process has language that says they are electing to receive their wage statements also electronically?
>
> A:    I actually don't know. I don't see it in here.

(Setareh Decl., ¶ 14; Transcript of Deposition of Diana McChristian, 31:12-16.)

The fact that there are associates who were receiving electronic wage statements but then changed to paper may be the result of changing bank accounts, garnishments, and a host of other reasons – that may be voluntary and/or involuntary – **none** of which conclusively demonstrates that associates were given an option to *voluntarily* elect paper wage statements.  Because there is nothing on the record pertaining to class members having an opportunity to elect to voluntarily receive paper wage statements – as confirmed by Walmart's discovery responses, its corporate representative and even its own counsel – this last-ditch effort to introduce evidence through Newlon's opinion and the late-generated report served on Plaintiff after hours on the eve of her deposition – should be wholly excluded.

Furthermore, Rule 26(e)(1) of the Federal Rules of Civil Procedure requires all parties to supplement or correct, among other things, responses to discovery requests "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).  The parties are expected to supplement and/or correct their disclosures promptly when required under that Rule, without the need for a request from opposing counsel or an order from the Court. See *Oracle USA, Inc., et al. v. SAP AG, et al.*, 264 F.R.D. 541, 544 (N.D. Cal. 2009). In addition,

PLAINTIFF'S MOTION *IN LIMINE* NO. 1 TO STRIKE THE EXPERT REPORT OF DR. ELIZABETH HART
NEWLON AND/OR BAR HER TRIAL TESTIMONY

Rule 37 mandates that a party's failure to comply with the obligations under Rule 26(e)(1) results in that party being precluded from "use [of] that information ... to supply evidence on a motion, at a hearing or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 37(c)(1) is "self-executing" and "automatic." *Yeti by Molly Ltd v. Deckers Outdoor Corp*., 259 F.3d 1101, 1106 (9th Cir. 2001). Once non-compliance is shown, the burden is on the party who failed to comply to demonstrate that it meets one of the two exceptions to mandatory sanctions. *Apple, Inc. v. Samsung Electronics Co*., No. 11–CV–01846–LHK, 2012 WL 3155574, at *4 (N.D. Cal. Aug. 2, 2012).

On this factor alone, this Court should exclude Newlon's testimony.

## 2. Newlon Is Not Qualified to Opine on Human Behavior

Newlon is an economist, but her report includes opinions on consumer behavior that are unsupported by anything other than rank speculation. Newlon also has no knowledge, skill, experience, training, or education that would qualify her to offer such opinions. *See*, *e.g.*, *Gable v. NBC*, 727 F. Supp. 2d at 832-33 (excluding copyright expert's testimony on literary analysis); *Hackett v. Procter & Gamble Co*., No. 06cv2272 WQH (WMc), 2008 WL 4646049, at *2 (S.D. Cal. October 17, 2008) (excluding testimony of consumer confusion given by expert in chemistry and research in the development of hair dyes); *Brighton Collectibles, Inc. v. Renaissance Grp Int'l*, No. 06-CV-1115 H(POR), 2008 WL 5500659, at *2 (S.D. Cal. May 13, 2008) (excluding expert testimony on consumer confusion because witness was not qualified to give opinion).

In Newlon's First Report, she opines that:

- "In Section 7 of his December 2019 declaration, Mr. Toney presents a brief and limited description of how he proposes to determine when a wage statement penalty is owed. Wage statement penalties can flow from Plaintiff's overtime payment and wage statement claims. Yet, as Mr. Toney says in the final sentence of the section, there is only one wage statement penalty payment possible per pay period. However, in his proposed methodology for calculating Wage Statement Class damages, Mr. Toney does not explain how he will address the different potential outcomes of this case." (Setareh Decl., ¶ 8; Newlon's First Report, ¶ 18);

- "In addition, Mr. Toney does not present any evidence for the central question whether Walmart's process for furnishing wage statements to Mr. Evans or class members violated California law. Mr. Toney does not consider whether the class members did receive paper statements. If there are class members who did receive paper statements, there are class members who were offered the choice of a paper statement. Mr. Toney also does not explain how this fact would affect his calculation of damages for the Wage Statement Class." (Newlon's First Report, ¶ 18);

- "Furthermore, Mr. Toney does not offer a methodology for identifying the class members who did not prefer to receive a paper wage statement and, therefore, were not affected by the alleged lack of a paper option. These are the class members who believe that they were "provided with an accurate itemized statement in writing " with either the electronic version or the ability to print their wage statement. Mr. Toney's methodology assumes that all class members have the same preferences for the form of their wage statement. However, it has not been proven by Plaintiff that all or nearly all class members did not receive a choice of an itemized statement in writing simply because they might no9t have received a paper option. Moreover, Plaintiff and Plaintiff's expert have not demonstrated how the failure to offer an option that an individual would not have considered leads economic injury." (Newlon's First Report, ¶ 19).

In Newlon's Second Report, she opines that:

- "To identify penalties for the Wage Statement Class, Mr. Toney uses data containing pay check information ("Wage Statement Data"), including whether the payment was made by paper or electronically. Yet Mr. Toney made no attempt to answer the question of which class members were somehow injured based on receiving an electronic statement rather than a paper statement. Instead, he assumes that every time an associate received an electronic statement, they were injured, and a wage statement penalty is owed." (Setareh Decl., ¶ 9; Newlon's Second Report, ¶ 19);

- "Given the general diversity of human preferences for goods and services, it is likely that some of the members of the Wage Statement Class had different preferences for electronic versus paper wage statements. Some may have preferred electronic. Some may have preferred paper. Some may have had different preferences at different times. And others may have had no preference at all. To treat every electronic statement as causing injury, Mr. Toney must have evidence that all or nearly all of t he class members were injured when they received an electronic statement. Yet, Mr. Toney provides no basis for his assumption. Moreover, he admitted in his deposition that he did not look for evidence in support of his assumption." (Newlon's Second Report, ¶ 20.)

- Mr. Toney also ignores that there is evidence in the Wage Statement Data that class members had a variety of preferences for the form of their wage statements. There are 188,846 associates in the Wage Statement Class. Of these associates, 27,367, or 14.5 percent, always received paper checks, thus providing evidence that some class members preferred paper wage statement and were able to chose to receive that form of wage statement exclusively. If 14.5 percent of the class had a choice of their type of wage statement, it is not unreasonable to ask whether some of the class members who switched from a paper statement to an electronic statement chose to do so because they

21

preferred to receive an electronic wage statement.  Out of the 50,995 class members, or 27 percent of all class members, who received an electronic wage statement after receiving paper statements, it remains unclear how many switched because they preferred receiving an electronic statement.  Mr. Toney did n0t attempted to answer this question in his declaration. (Newlon's Second Report, ¶ 21);

- The evidence that class members had different preferences for the form of their wage statement and a choice over whether they received a paper or an electronic statement casts significant doubt on the validity of Mr. Toney's assumption that all class members were injured when they received an electronic statement. Even for class members who only received electronic statements, there is no evidence that every person always preferred to receive paper statements. If class members have different preferences for the form of their wage statements or no preference at all, Mr. Toney's assumption that class members were injured with every electronic wage statement is incorrect, and he has provided no methodology to identify injured class members versus uninjured class members. This failure leads to Mr. Toney proposing to award penalties to a substantial number of class members who may have had no injury at all. (Newlon's Second Report, ¶ 22.)

Newlon is utterly unqualified to render these opinions on consumer behavior, which are based on nothing more than pure speculation. What's more, Newlon has not conducted any independent confirmation or analysis of *her* assumptions.  Newlon has also conducted no independent confirmation or analysis to support *her* opinions. This is all pure, unfounded, inadmissible speculation, and it should be excluded. *See Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 888 (N.D. Cal. 2016) ("Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."); s*ee Diviero v. Uniroyal Goodrich Tire Co*., 114 F.3d 851, 853 (9th Cir. 1997) ("Rule 702 demands that expert testimony . . . not include unsubstantiated speculation and subjective beliefs."); *McGlinchy v. Shell Chem. Co*., 845 F.2d 802,807 (9th Cir. 1988) (affirming trial court's exclusion of an expert study, where review of the expert study showed that, among other things, the plaintiff's expert did not confirm the relevant market, contained unsupported speculation, and "[h]is study rests on unsupported assumptions and ignores distinctions crucial to arriving at a valid conclusion"). It should likewise be excluded here, including under Rule 403,

because of the likelihood that this proposed testimony would confuse the jury and unfairly prejudice Plaintiff.

### 3. Newlon's Critiques of Toney's Damages Calculations Are Speculative, Unreliable and Misplaced

Plaintiff is not required to prove damages with "exact precision." *Mullins*, 178 F. Supp. 3d at 898; *In re Sugar Indus. Antitrust Litig.*, MDL No. 201, 1976 WL 1374, at *27 (N.D. Cal. May 21, 1976) ("[A]bsolute precision has never been required in the proof of the amount of damages."). Only a "reasonable approximation" is required. *Acree v. Gen. Motors Acceptance Corp.,* 92 Cal. App. 4th 385, 398 (2001) ("Where the fact of damages is certain, as here, the amount of damages need not be calculated with absolute certainty. The law requires only that some reasonable basis of computation be used, and the result reached can be a reasonable approximation."); *see also MediaTek Inc. v. Freescale Semiconductor, Inc.*, No. 11-cv-5341 YGR, 2014 WL 2854890, at *5 (N.D. Cal. June 20, 2014) (denying motion to exclude damages testimony where expert's estimates were a "reasonable approximation[]"); *In re Lenovo Adware Litig.*, No. 15-md-02624-RMW, 2016 WL 6277245, at *21 (N.D. Cal. Oct. 27, 2016) ("[C]alculation of restitution damages requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation.").

Furthermore, the Supreme Court has long made clear that "there is a clear distinction between the measure of proof necessary to establish the fact that petitioner had sustained some damage and the measure of proof necessary to enable the jury to fix the amount." *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 562 (1931). "The rule which precludes the recovery of uncertain damages applies to such as are not the certain result of the wrong, not to those damages which are definitely attributable to the wrong and only uncertain in respect of their amount." Id.; *see also Greenhaw v. Lubbock Cty. Beverage Ass'n*, 721 F.2d 1019, 1027 (5th Cir. 1983) ("The rigorous measure urged by defendants would not allow for the use

23

1  of reasonable inferences and educated projections. It is too much to demand for

2  courtroom proof.").

3          Plaintiff will meet his burden at trial to prove both the fact and amount of

4  injury by introducing expert testimony from Toney, deposition testimony of

5  Walmart's corporate representative, and last but not least, Walmart's own Payment

6  Selection Form that offers three ways for its associates to receive their pay, none of

7  which expressly includes an option to receive paper wage statements. *See* Toney's

8  First Report, ¶ 7; Toney's Second Report, ¶ 7; Toney's Third Report, ¶ 7.)

9          Newlon's report opines that Toney's damages calculations are "unreliable" and

10 overstated, because he failed to obtain evidence of actual injury (i.e., whether a

11 particular individual preferred paper versus electronic wage statements – and if the

12 latter, Newlon **assumes** that there would be no damages.  But Newlon herself did not

13 even conduct a survey to determine whether any class member preferred paper versus

14 electronic wage statements because Newlon did not conduct any independent

15 calculation of total damages. (Newlon's First Report, ¶ 3; Newlon's Second Report, ¶

16 1-2.)  Moreover, even Walmart's own expert concedes that she herself does not even

17 know whether there could be other explanations – whether voluntary or involuntary –

18 for an associate to switch from electronic to paper wage statements.

19          Q Other than a garnishment, what other reasons
            would Walmart go from electronic to paper?
20
            A We'd have to talk to managers to find out more
21          about that. You know, talk to maybe Diana McChristian.

22 (Newlon Tr., 66:3-15.)  Without any independent analysis, Newlon has no basis to

23 conclude that Toney's calculations are not a "reasonable approximation" of damages.

24 Nevertheless, Newlon's (and Walmart's) fundamental misunderstanding of Plaintiff's

25 claim, as well as this Court's orders granting class certification as to the Wage

26 Statement Class, and denying both Walmart's motion for summary judgment and a

27 concurrently filed motion for decertification demonstrates that Walmart has no viable

28 defenses given the utter absence of any evidence that class members were provided

24

an opportunity to elect paper wage statement.  Therefore, whether an individual class member prefers paper versus electronic wage statements and Newlon's straw man argument is completely undermined by the express language of Labor Code section 226(e)(2) which states:

> An employee is deemed to suffer injury for purposes of this subdivision if the employer fails to provide a wage statement.

As the statute itself focuses solely on the employer's conduct, Newlon's opinion should be excluded because it is based on pure speculation, without any supporting evidence, and contrary to the statute and this Court's holdings.  This is nothing but a veiled attempt to introduce *some* "evidence" given the utter absence of any corroborating evidence by Walmart that its associates were provided with an opportunity to elect paper wage statements.

## V.    CONCLUSION

For the foregoing reasons, although Newlon may be well-credentialed as an economist, Walmart proposes to offer opinions that go far beyond the scope of her expertise and that are based on pure straw man speculation that are contrary to this Court's own holdings.  Accordingly, Newlon is being offered solely to confuse the jury and unfairly prejudice Plaintiff and the Class.  For the reasons set forth above, Newlon testimony should be excluded.

DATED:  April 9, 2021                    SETAREH LAW GROUP


                                         /s/ *Shaun Setareh*
                                         SHAUN SETAREH
                                         WILLIAM M. PAO
                                         Attorneys for Plaintiff
                                         JAMES S. EVANS

PLAINTIFF'S MOTION *IN LIMINE* NO. 1 TO STRIKE THE EXPERT REPORT OF DR. ELIZABETH HART
NEWLON AND/OR BAR HER TRIAL TESTIMONY