# EXHIBIT 4

Robert J. Herrington (SBN CA 234417)
GREENBERG TRAURIG LLP
1840 Century Park East, Suite 1900
Los Angeles, California 90067
Tel: (310) 586-7816
Fax: (310) 586-0219
Email: herringtonr@gtlaw.com

Naomi Beer (Admitted *Pro Hac Vice*)
GREENBERG TRAURIG LLP
1144 15th Street, Suite 3300
Denver, Colorado 80202
Telephone: 303-572-6500
Facsimile: 303-572-6540
beern@gtlaw.com
Attorneys for Defendant WALMART INC.
f/k/a WAL-MART STORES, INC.

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES S. EVANS, on behalf of himself, all others similarly situated,<br><br>    Plaintiff,<br><br>    vs.<br><br>WAL-MART STORES, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>    Defendants. | Case No. 2:17-cv-07641-AB-KKx<br><br>**DEFENDANT'S REBUTTAL EXPERT WITNESS DISCLOSURE** |

ACTIVE48225400

Defendant Walmart Inc., f/k/a Wal-Mart Stores, Inc. ("Walmart") submits this disclosure of its rebuttal expert pursuant to Federal Rules of Civil Procedure 26(a)(2).

**A.**    **RETAINED EXPERT**

1.    Dr. Elizabeth Hart Newlon
Director
NERA
777 South Figueroa Street
Suite 1950
Los Angeles, CA 90017
Dr. Newlon's Expert Report is enclosed.

* * *

Walmart reserves the right to amend, supplement or modify this designation as may be appropriate in light of Plaintiff's designations of fact or expert witnesses, further proceedings, papers, pleadings or orders in this action, further discovery in this action, or such other reasons as may make amendment, supplementation or modification appropriate. Walmart reserves the right to designate as witnesses in this action any party or any witness designated by any other party and to call any witness to testify only by their deposition that may have been or may be taken in this action. Walmart further reserves the right not to call any witness designated herein or hereafter as a witness at trial or any other proceeding or to strike any witness from this or future designations.

DATED:  January 15, 2020          GREENBERG TRAURIG, LLP


                                   By /s/ *Robert J. Herrington*
                                   Robert J. Herrington
                                   Attorneys for Defendant WALMART INC. f/k/a
                                   WAL-MART STORES, INC.

DEFENDANT'S REBUTTAL EXPERT DISCLOSURE
*ACTIVE48225400*

I, Elizabeth Newlon, hereby declare:

## I.    Introduction

## A.    Qualifications

1.    My name is Elizabeth Newlon.  I am an Associate Director at NERA, an
international firm of economists founded in 1961 with more than 400
professionals in over 20 offices across North America, Europe, and Asia.  I
am an economist specializing in econometrics, labor economics, and
competition economics.  I have provided economic consulting services and
testimony in a number of matters related to allegations of wage and hour
violations.

2.    I received a Ph.D. (and an M.S.) in Economics from Carnegie Mellon
University in 2001.  Prior to joining NERA in 2006, I worked as an
economic expert for Navigant Consulting and prior to that, Welch
Consulting.  Before becoming an economic consultant, I was an Assistant
Professor of Economics at the University of Kentucky, where I taught
courses in applied microeconomics and general equilibrium theory.  For over
15 years, I have provided consulting and expert testimony on a variety of
issues such as competition analysis, class certification, liability, damages,
and other economic matters.  A copy of my current curriculum vitae is
attached to this declaration as **Exhibit 1**.  NERA is being compensated for
my time at a rate of $550 per hour.  Neither NERA's compensation nor my
own depends on the outcome of this litigation.

## B.    Assignment

3.    I was asked by Counsel for the Defendant, Wal-Mart Stores, Inc.
("Walmart"), to review the December 16, 2019 declaration of Mr. James
Toney[1] and opine about the reliability of Mr. Toney's proposed calculation
of classwide damages and Mr. Toney's request for additional data.  As Mr.
Toney did not calculate damages for Plaintiff or either of the certified
classes in the Evans matter and did not provide a complete theory or
methodology for calculating classwide damages, I reserve the right to

---

[1] Declaration of James Toney, December 16, 2019 ("Toney December").  I have also reviewed Mr. Toney's prior declaration
filed on October 1, 2019 ("Toney October").

supplement my opinion in response to any supplemental filings produced by
Mr. Toney or any additional expert reports produced by Plaintiff.[2]

## C.     Materials Considered

4.      In preparing this declaration, I, and economists working under my direction,
have reviewed documents, data, and declarations produced in this matter by
the Plaintiff and Defendant.  The opinions expressed in this declaration are
based on my review of this information as well as my training and
experience as an economist.  A list of the information sources and materials
I considered in forming my opinions is presented in **Exhibit 2**.

## D.     Summary of Opinions

5.      Based on my analysis to date, I have reached the following opinions:

- In cases addressing classwide claims, once class certification
  has been determined by the court it is necessary for Plaintiff's
  economic expert to opine about class members' damages and
  sometimes the merits of Plaintiff's claims.  However, Plaintiff's
  expert, Mr. Toney, has not provided evidence for Plaintiff's
  theory about the Regular Rate Class's allegedly incorrect
  overtime payments or estimated damages for even some of the
  class members in either certified class.  Instead, I find that Mr.
  Toney focuses on describing in abstract the data and methods
  for his future damages analysis.

- Moreover, the information that Mr. Toney requested was
  produced by Walmart for the Named Plaintiff, James Evans
  ("Mr. Evans"), and the earnings histories for 1,000 Walmart
  associates.  In particular, he has the information he says is
  needed to perform his proposed regular rate damages
  calculation for Mr. Evans and class members within the 1,000-
  associate data.  Despite having this information, Mr. Toney did
  not calculate damages for anyone.  Mr. Toney also does not
  demonstrate that Walmart did not use the steps he describes in
  his declaration for calculating overtime payments related to the
  MyShare Quarterly Incentive Bonus ("Incentive Bonus").  Nor

---

[2] I take no position on the legal issues in this matter.

does he show that Walmart's Incentive Bonus overtime payments violated California Labor Law.

- When describing his procedure for determining when a wage statement penalty would be owed to class members, Mr. Toney does not consider whether the class members did receive paper wage statements, nor does he consider whether there are class members who believe that they were "provided with an accurate itemized statement in writing" with either the electronic version or the ability to print their wage statement. Instead, Mr. Toney simply assumes that all class members received the same choices and have the same preferences for the form of their wage statement.

6.   These opinions and the following analysis are based on my review of the documents and information made available to me to date. As noted, I reserve the right to update my opinions should additional information be provided to me. I also reserve the right to respond to any data analysis set forth by the Plaintiff, if such an analysis is conducted, once it has been provided to me.

## II. Despite Having Access to Relevant Information, Mr. Toney Produced Only a Description of Possible Future Analyses Instead of Damages Estimates and Evidence in Support of Plaintiff's Theories

7.   Mr. Toney was asked by Plaintiff's counsel to produce a "discussion" of the data he determined to be necessary to address "the issues in this matter."[3] Mr. Toney then describes the relevant "issues" in the Evans matter to be "Regular Rate computation and the related rate utilized in the payment of premium hours worked, Paystub Penalties due to under payment of wages when premium hours are worked during the bonus period, and the inability of employees to obtain paper copies of their paystub."[4]

8.   Mr. Toney's brief characterization of the status of the Evans matter neglects the most significant information related to Plaintiff's classwide claims for

---

[3] Toney December, p. 1.

[4] Toney December, p. 1.

3

damages. Judge Andre Birotte Jr. has certified *two classes* of Walmart
associates:[5]

- The Regular Rate Class – "All persons employed as hourly-paid
  employees by Defendant in any store in California at any time on or
  after September 13, 2013 through the date of class certification who
  were paid overtime and non-discretionary bonus in any pay period."[6]

- The Wage Statement Class – "All persons employed as hourly-paid
  employees by Defendant in any store in California at any time during
  the period beginning one year before the filing of this action and
  ending when final judgment is entered."[7]

9.    Once classes have been certified, it is necessary for Plaintiff's expert to
      opine about the damages related to (and sometimes the merits of) Plaintiff's
      claims. Moreover, the calculation of damages must flow directly from
      Plaintiff's theory of classwide injury. As I will show, in his December 2019
      filing, Plaintiff's expert does not provide evidence for Plaintiff's theory
      about the overtime payments to the Regular Rate Class or estimate damages
      for the Plaintiff or any class member. Instead, Mr. Toney only describes the
      data and methodologies he *will* use, presumably at a future date, to calculate
      damages.

## A.    Mr. Toney Has the Type of Data He Requested for Calculating Damages

10.   In Section 4 of his December 2019 declaration, Mr. Toney lists the data and
      documents that he has reviewed.[8] First, Mr. Toney lists two files containing
      payroll data for Plaintiff Evans—the first file contains PDFs of his original
      paystubs and the second file presents his compensation and hours by pay
      period and pay type in a machine-readable format.[9] Mr. Toney also

---

[5] Order Granting Motion to Stay Proceedings with Respect to Count VI and Granting In Part and Denying in Part Plaintiffs'
Motion for Class Certification, filed November 25, 2019 ("Class Cert Order"), pp. 15, 21, and 22.

[6] Class Cert Order, p. 2.

[7] Class Cert Order, pp. 2-3.

[8] Toney December, p. 3, Section 4.

[9] PDFs of Mr. Evans's paystubs, DOC000822-DOC000927. The machine-readable format is the Excel file of Mr. Evans's
compensation and hours by pay period, DOC000815. [See, https://opendatahandbook.org/glossary/en/terms/machine-readable/.] The Excel file has two tabs, the first contains payroll records of Mr. Evans's earnings history for hours worked
("Earnings_History") and the second tab contains the DOE history for other payments related to Mr. Evans's earnings
("DOE_History").

reviewed internal Walmart documents describing the structure of the
Incentive Bonus for fiscal years 2014 through 2016.[10] Although the
documentation for the fiscal year 2017 Incentive Bonus was produced, it is
unclear why Mr. Toney did not review that document.[11]

11.   Mr. Toney also refers to the production of data on the "pay records" of 1,000
      associates but does not cover this information in his list of documents
      reviewed.[12] Therefore, I assume that Mr. Toney did not review the 1,000
      associates' payroll data. It is my understanding that Plaintiff received this
      data on September 30, 2019.[13]

12.   After presenting the information that he reviewed, Mr. Toney describes his
      data requirements "for the calculation of unpaid wages related to the
      improper rate utilized when calculating premium hour payments."[14] Mr.
      Toney requests the follow information:

      • The Start and End Dates for the Incentive Bonus Periods[15]

        The Walmart documents describing the structure of the Incentive
        Bonus for each fiscal year contain this information for fiscal years
        2014 through 2017.[16] Mr. Toney says that he reviewed these
        documents for fiscal years 2014 through 2016.[17] Each Incentive
        Bonus document has the dates for the "Company's quarters that are
        used to determine average weekly hours" for the Incentive Bonus
        calculation in each quarter of the fiscal year.[18] **Exhibit 3** shows the
        start and end dates by fiscal year and incentive quarter contained in
        these documents.

---

[10] FY2014, DOC000980-DOC000992. FY2015, DOC000993-DOC001005. FY2016, DOC001006-DOC001020.

[11] DOC000001-DOC000015.

[12] Toney December, pp. 1 and 4.

[13] Communication with Counsel.

[14] Toney December, p. 4, Section 5.

[15] "The period for which the incentive was based or calculated. The start and end date for the incentive period." [Toney December, p. 4, Section 5, a.]

[16] FY2014, DOC000980-DOC000992; FY2015, DOC000993-DOC001005; FY2016, DOC001006-DOC001020; FY 2017, DOC000001-DOC000015.

[17] Toney December, p. 3, Section 4, c.-e.

[18] See, for example, DOC000980-DOC000992.

**Exhibit 3**
**Start and End Dates by Fiscal and Incentive Quarter, 2014-2017**

| Quarter | Fiscal Quarter | | Incentive Quarter | | Source |
|---|---|---|---|---|---|
| | Start Date | End Date | Start Date | End Date | |
| Q1 2014 | 2/1/2013 | 4/30/2013 | 1/26/2013 | 4/19/2013 | DOC000982 |
| Q2 2014 | 5/1/2013 | 7/31/2013 | 4/20/2013 | 7/26/2013 | DOC000982 |
| Q3 2014 | 8/1/2013 | 10/31/2013 | 7/27/2013 | 10/18/2013 | DOC000982 |
| Q4 2014 | 11/1/2013 | 1/31/2014 | 10/19/2013 | 1/24/2014 | DOC000982 |
| Q1 2015 | 2/1/2014 | 4/30/2014 | 1/25/2014 | 4/18/2014 | DOC000995 |
| Q2 2015 | 5/1/2014 | 7/31/2014 | 4/19/2014 | 7/25/2014 | DOC000995 |
| Q3 2015 | 8/1/2014 | 10/31/2014 | 7/26/2014 | 10/31/2014 | DOC000995 |
| Q4 2015 | 11/1/2014 | 1/31/2015 | 11/1/2014 | 1/23/2015 | DOC000995 |
| Q1 2016 | 2/1/2015 | 4/30/2015 | 1/24/2015 | 4/17/2015 | DOC001008 |
| Q2 2016 | 5/1/2015 | 7/31/2015 | 4/18/2015 | 7/24/2015 | DOC001008 |
| Q3 2016 | 8/1/2015 | 10/31/2015 | 7/25/2015 | 10/30/2015 | DOC001008 |
| Q4 2016 | 11/1/2015 | 1/31/2016 | 10/31/2015 | 1/22/2016 | DOC001008 |
| Q1 2017 | 2/1/2016 | 4/30/2016 | 1/23/2016 | 4/29/2016 | DOC000003 |
| Q2 2017 | 5/1/2016 | 7/31/2016 | 4/30/2016 | 7/22/2016 | DOC000003 |
| Q3 2017 | 8/1/2016 | 10/31/2016 | 7/23/2016 | 10/28/2016 | DOC000003 |
| Q4 2017 | 11/1/2016 | 1/31/2017 | 10/29/2016 | 1/20/2017 | DOC000003 |

It is clear from his October 2019 declaration that Mr. Toney knows how to find the start and end dates for the period of time over which the Incentive Bonus was calculated. In his October 2019 declaration, Mr. Toney performs an analysis of Mr. Evans's Incentive Bonus overtime payment for the fourth quarter of fiscal year 2016.[19] "Based on DOC001006-DOC001020," the Walmart document containing Incentive Bonus information for fiscal year 2016, the fourth quarter incentive period goes from "10/31/15 – 1/22/16."[20] Mr. Toney then lists the hours worked in each pay period within the fourth quarter incentive period.[21] Therefore, before submitting his report on October 1, 2019, Mr. Toney understood that the Incentive Bonus documents contained the dates for each incentive period and had the confidence in that knowledge to perform an analysis of the Incentive Bonus overtime payment for a specific quarter. In his December 2019

---

[19] Toney October, p. 5, Section 7.

[20] Toney October, p. 5, Section 7.

[21] Toney October, p. 5, Section 7, a.-f.

6

declaration, Mr. Toney does not explain why he now believes that he does not have information about or cannot determine the dates for incentive periods from the documents received.

- Incentive Bonus Payments and Date of Payment[22]

Mr. Toney received information on each of Mr. Evans's Incentive Bonus payments as well as the payments received by the 1,000 associates.  The Incentive Bonus payments are found in the payroll data under the code "MYSHARE INCT."[23]  The date in the electronic payroll data associated with each payment is the "Payroll Run Date," which is generally the Sunday following the close of the pay period.[24]

**Exhibit 4** presents the Incentive Bonus information for Mr. Evans by quarter.

---

[22] "The incentive paid to each employee for each period an incentive was earned." "The pay date for each incentive period payment for each employee." [Toney December, p. 4, Section 5, b. and d.]

[23] DOC000815, in Excel tab "DOE_History."

[24] DOC000815.  The relevant pay period can be confirmed by comparing the payroll run date of payments to the pay period listed in the paystub PDFs [DOC000822-DOC000927].

**Exhibit 4**
**Start and End Dates and Mr. Evans's MyShare Incentive and Overtime Adjustment Payments by Incentive Quarter, 2014-2017**

| Quarter | Incentive Quarter[25] | | MyShare Incentive | | Overtime Adjustment | |
|---|---|---|---|---|---|---|
| | Start Date | End Date | Payroll Date | Amount | Payroll Date | Amount |
| Q1 2014 | 1/26/2013 | 4/19/2013 | n/a | $ n/a | n/a | $ n/a |
| Q2 2014 | 4/20/2013 | 7/26/2013 | n/a | n/a | n/a | n/a |
| Q3 2014 | 7/27/2013 | 10/18/2013 | 12/1/2013 | 128.12 | n/a | n/a |
| Q4 2014 | 10/19/2013 | 1/24/2014 | 3/9/2014 | 151.41 | 3/9/2014 | 0.11 |
| Q1 2015 | 1/25/2014 | 4/18/2014 | 6/1/2014 | 265.29 | 6/1/2014 | 5.41 |
| Q2 2015 | 4/19/2014 | 7/25/2014 | n/a | n/a | n/a | n/a |
| Q3 2015 | 7/26/2014 | 10/31/2014 | n/a | n/a | n/a | n/a |
| Q4 2015 | 11/1/2014 | 1/23/2015 | 3/8/2015 | 309.32 | 3/8/2015 | 2.16 |
| Q1 2016 | 1/24/2015 | 4/17/2015 | 5/31/2015 | 203.53 | 5/31/2015 | 0.46 |
| Q2 2016 | 4/18/2015 | 7/24/2015 | 9/6/2015 | 76.04 | 9/6/2015 | 0.19 |
| Q3 2016 | 7/25/2015 | 10/30/2015 | 11/29/2015 | 198.85 | 11/29/2015 | 0.11 |
| Q4 2016 | 10/31/2015 | 1/22/2016 | 3/6/2016 | 368.28 | 3/6/2016 | 0.51 |
| Q1 2017 | 1/23/2016 | 4/29/2016 | 5/29/2016 | 110.25 | 5/29/2016 | 0.56 |
| Q2 2017 | 4/30/2016 | 7/22/2016 | 9/4/2016 | 155.31 | 9/4/2016 | 1.57 |
| Q3 2017 | 7/23/2016 | 10/28/2016 | n/a | n/a | n/a | n/a |
| Q4 2017 | 10/29/2016 | 1/20/2017 | n/a | n/a | n/a | n/a |

In his October 2019 declaration, Mr. Toney shows that he knows the Incentive Bonus payment information is in the payroll data for Mr. Evans. Mr. Toney uses the PDFs of Mr. Evans's paystubs to determine when he received an Incentive Bonus and the date of payment.[26] Again using his Incentive Bonus example, Mr. Toney also shows that he knows how to determine the period when the Incentive Bonus was earned.[27]

---

[25] The incentive quarter start and end dates can be found at the following bates numbers for each fiscal year: FY2014, DOC000982; FY2015, DOC000995; FY2016, DOC001008; FY2017, DOC000003.

[26] "The calculations referenced above will be demonstrated based on the MyShare Quarterly Incentive Plan payment made on the Advice # 369687636 with a deposit date of 03-10-2016. This paystub can be found in the file DOC001006-DOC001020 on page 78." [Toney October, p. 4 Section 5.] Mr. Toney's citation is incorrect. The paystub is on page 78 of DOC000822-DOC000927. "The earnings include […] the MYSHARE INCT amount of $368.28 […]." [Toney October, p. 5, Section 6.]

[27] "Based on DOC001006-DOC001020, page 3 the 'Incentive Quarter' for the period that proceeds the Advice# 369687636 on 3-10-16 was Fourth Quarter: 10/31/15 – 1/22/16." [Toney October, p. 5, Section 7.] Mr. Toney is saying that the MYSHARE INCT amount of $368.28 paid on March 10, 2016 was earned in the fourth incentive quarter of fiscal year 2016, running from October 31, 2015 to January 22, 2016.

Therefore, Mr. Toney has the information on Mr. Evans's Incentive
Bonuses that he claims he needs.  Moreover, if Mr. Toney had
reviewed the payroll data for the 1,000 associates, he would have seen
that, where applicable, this payment information appears there too.

- Hours Worked by Class Member During Incentive Periods[28]

Walmart produced the regular and overtime hours worked by pay
period for Mr. Evans and the 1,000 associates.[29]  It is also clear that
the "incentive period coincides with the payroll cycle," and therefore,
as Mr. Toney observes, pay records can be used to determine the total
hours worked in each incentive period.[30]  Mr. Toney demonstrates that
he knows the pay periods align with the incentive period dates.  In his
October 2019 declaration, Mr. Toney identifies all the pay periods that
fall within the fourth incentive quarter in fiscal year 2016 and uses the
work hours in each pay period to calculate the alleged unpaid
overtime payment related to the Incentive Bonus.[31]

In **Exhibit 5**, I present a subset of the columns in Mr. Evans's raw
payroll data that show his hours worked in the last quarter in which
Mr. Evans earned an Incentive Bonus.

---

[28] "The hours worked for each employee for each period that an incentive was earned." [Toney December, p. 4, Section 5, c.]

[29] DOC000815; DOC001022-DOC002021.

[30] "The hours worked for each employee for each period that an incentive was earned.  If the incentive period coincides with the
payroll cycle, pay records can be utilized." [Toney December, p. 4, Section 5, c.]  The pay period start and end dates are listed
on each PDF paystub for Mr. Evans, showing that the pay periods do indeed coincide with the incentive quarter start and end
dates.

[31] Toney October, p. 5, Section 7.

**Exhibit 5**

**Data for James Evans's Hours Worked in Pay Periods Within Incentive Quarter 2, Fiscal Year 2017**

| FIRST_NAME | LAST_NAME | PAYROLL_RUN_DATE | REGULAR_HOURS | OVERTIME_HOURS |
|---|---|---|---|---|
| JAMES | EVANS | 2016-05-15 | 60.49 | 0.17 |
| JAMES | EVANS | 2016-05-29 | 77.5 | 1.29 |
| JAMES | EVANS | 2016-06-12 | 65.7 | 0.05 |
| JAMES | EVANS | 2016-06-26 | 73.02 | 0.14 |
| JAMES | EVANS | 2016-07-10 | 64.7 | 0.7 |
| JAMES | EVANS | 2016-07-24 | 63.86 | 0.51 |

The data on work hours for each of Mr. Evans's incentive periods is complete for his employment period. If Mr. Toney had reviewed the payroll data for the 1,000 associates, he would have seen their work hours information too.

13.    One item missing from Mr. Toney's list of required information is the actual overtime payment provided by Walmart with each Incentive Bonus. This information was provided by Walmart for Mr. Evans and, where applicable, the 1,000 associates.[32] It is unclear whether Mr. Toney overlooked the Incentive Bonus overtime payments in his request for information or simply did not request the information because it had already been produced.

14.    Finally, given that Mr. Toney claims that information produced by Walmart is inadequate, it is worth noting that he reviewed the same set of data and documents for his October 2019 declaration during the class certification briefing.[33] However, Mr. Toney did not request additional data and documents at that time. Instead, he waited to describe the data that he claims are necessary for his analysis of the Regular Rate Class damages until the deadline for Plaintiff's damages analysis. In addition, Mr. Toney does not explicitly describe the data that he will need to calculate damages for the Wage Statement Class. I reserve the right to respond if Mr. Toney describes what he requires for his analysis of the Wage Statement Class.

---

[32] For Mr. Evans, this can be found in DOC000815, in Excel tab "DOE_History." For the 1,000 associates, this can be found in DOC001022- DOC002021. As Mr. Toney observed in his October declaration, Incentive Bonus overtime payments have the pay code "OVERTIME/INCT." [Toney October, p. 5, Section 6, d.]

[33] Toney October, pp. 3-4. Mr. Toney's October 2019 Declaration was produced as an attachment to Plaintiffs' Reply in Support of Motion for Class Certification, October 1, 2019.

**B.    Mr. Toney Could Have Calculated Damages for Plaintiff and Some Class Members but He Did Not**

**1.    For the Regular Rate Class, Mr. Toney Only Provides a Vague Description of a Process for Calculating the Additional Overtime Payment Related to the Incentive Bonus**

15.    In Section 6 of his December 2019 declaration, Mr. Toney describes the process he proposes to use to calculate the overtime payment associated with the Incentive Bonus.[34]  In this section, Mr. Toney presents what he alleges is the correct formula for calculating the additional overtime owed due to the Incentive Bonus.  However, Mr. Toney provides no support for his conclusion that this formula is the correct way to calculate overtime on production bonuses.  Mr. Toney also does not explain why he changed his approach to calculating overtime for the Incentive Bonus from the two methods presented in his October 2019 declaration.[35]

16.    Mr. Toney has the information he claims he needs to perform his proposed steps for calculating the overtime payment for the Incentive Bonuses paid to Mr. Evans and class members within the 1,000 associates.  Reviewing the earnings histories of the 1,000 associates, I found 614 associates received an Incentive Bonus related to a fiscal quarter in which they worked overtime during the Regular Rate class period.[36]  In his first step, Mr. Toney sums the straight time, overtime, and double time worked by incentive period.  The machine-readable payroll data provided by Walmart contains the regular hours and overtime hours worked per pay period.[37]  Mr. Toney also knows the amount and payroll run date of each Incentive Bonus, along with the dates of the incentive quarters.  He also has the amount of the overtime adjustment paid by Walmart for each Incentive Bonus.  With this information, he can perform all three of the steps in his proposed process and could have presented a damage estimate for Mr. Evans and others within the class.

---

[34] Toney December, pp. 4-5, Section 6.

[35] Toney October, p. 4, Section 5.

[36] I determined whether an associate worked overtime during an incentive quarter using the "Earnings_History" tab of the earnings history files. [DOC001022-DOC002021.]

[37] See, Exhibit 5.

11

### 2. For the Wage Statement Class, Mr. Toney Only Provides a Limited Description of His Proposed Damages Calculation

17.   In Section 7 of his December 2019 declaration, Mr. Toney presents a brief and limited description of how he proposes to determine when a wage statement penalty is owed. Wage statement penalties can flow from Plaintiff's overtime payment and wage statement claims. Yet, as Mr. Toney says in the final sentence of the section, there is only one wage statement penalty payment possible per pay period.[38] However, in his proposed methodology for calculating Wage Statement Class damages, Mr. Toney does not explain how he will address the different potential outcomes of this case.

18.   In addition, Mr. Toney does not present any evidence for the central question whether Walmart's process for furnishing wage statements to Mr. Evans or class members violated California law. Mr. Toney does not consider whether the class members did receive paper wage statements. If there are class members who did receive paper statements, there are class members who were offered the choice of a paper statement. Mr. Toney also does not explain how this fact would affect his calculation of damages for the Wage Statement Class.

19.   Furthermore, Mr. Toney does not offer a methodology for identifying the class members who did not prefer to receive a paper wage statement and, therefore, were not affected by the alleged lack of a paper option. These are the class members who believe that they were "provided with an accurate itemized statement in writing" with either the electronic version or the ability to print their wage statement. Mr. Toney's methodology assumes that all class members have the same preferences for the form of their wage statement. However, it has not been proven by Plaintiff that all or nearly all class members did not receive a choice of an itemized statement in writing simply because they might not have received a paper option. Moreover, Plaintiff and Plaintiff's expert have not demonstrated how the failure to offer an option that an individual would not have considered leads to economic injury.

---

[38] I also understand that Plaintiff's counsel intends to remove class members who received a wage statement penalty as part of the *Magadia v. Wal-Mart*, Case No. 5:17-cv-00062 (N.D. Cal.) decision. Mr. Toney, however, does not address how he intends to remove class members who already received a wage statement penalty.

Dated January 15, 2020

Elizabeth H. Newlon

**NERA**
Economic Consulting

National Economic Research Associates, Inc.
Suite 1950
777 South Figueroa Street
Los Angeles, California 90017
+1 213 346 3000 Fax +1 213 346 3030
Direct dial: +1 213 346 3019
elizabeth.newlon@nera.com
www.nera.com

# ELIZABETH HART NEWLON
## DIRECTOR

Dr. Newlon has extensive expertise applying economics and statistics to matters relating to labor and antitrust litigation. During her 15 years as an economic consultant and testifying expert, she has prepared expert reports, testified, and consulted on matters involving a wide range of topics related to FLSA, state labor law, and antitrust law violations, including allegations of wage suppression. Dr. Newlon has analyzed labor and antitrust claims in individual and class/collective actions (addressing questions at certification, liability, and damages phases). In addition to her knowledge of economic and statistical analyses, she also has experience building large and complex databases from diverse sources to address market-wide economic questions.

In labor litigation, Dr. Newlon has significant experience with contractor misclassification and joint-employer claims. She has performed damages calculations for wage and hour allegations under FLSA and state labor laws, including extensive experience with violations of California labor statutes resulting in unpaid overtime, incorrect regular-rate calculation, missed meal penalties, timesheet rounding bias, and waiting-time and itemization penalties. Dr. Newlon also has significant experience analyzing pay disparities by gender and race for internal audits and litigation. Moreover, Dr. Newlon has assessed economic losses in single-plaintiff matters related to alleged wrongful termination, injury, and incarceration.

At the nexus of labor and antitrust litigation, Dr. Newlon has significant experience evaluating allegations of compensation suppression by employers. She has assisted clients in a range of industries including high tech, childcare, and healthcare. Dr. Newlon has also analyzed antitrust claims related to collusive agreements, price fixing, and foreclosure.

Prior to entering private practice, Dr. Newlon was an Assistant Professor of Economics at the University of Kentucky, where she taught graduate classes in equilibrium theory and undergraduate classes in microeconomics. Her university research focused on the optimal provision of public goods, such as education and policing. Dr. Newlon has published articles on these subjects and has presented her work at various professional economic conferences and special seminars.

*MMC* Marsh & McLennan Companies

**Exhibit 1**
Dr. Elizabeth Newlon

## Education

**Carnegie Mellon University**
Ph.D., Economics, Tepper School of Business, 2001

**Carnegie Mellon University**
M.S., Economics, Tepper School of Business, 1994

**The Ohio State University**
B.S., Economics, 1993

## Professional Experience

**NERA Economic Consulting**

| | |
|---|---|
| 2018 | Director |
| 2012-2017 | Vice President – Associate Director |
| 2007-2012 | Senior Consultant |
| 2006-2007 | Consultant |

**Navigant Consulting**

| | |
|---|---|
| 2005 | Managing Consultant |

**Welch Consulting**

| | |
|---|---|
| 2003-2005 | Economist |

**University of Kentucky**

| | |
|---|---|
| 2000-2002 | Assistant Professor, Gatton College of Business and Economics |

## Retained as Expert and Expert Testimony

*Clergy Community Coalition v. Premier Health Partners,* U.S. Department of Health and Human
Services - Office for Civil Rights, Transaction No. 18-305219.
*Report* submitted on November 10, 2013 for Premier Health addressing Plaintiffs' disparate
impact allegations under Title VI and Affordable Care Act.

*Luis Ruano and Leticia Ruano v. Los Angeles Unified School District, et al.*, Superior Court of
the State of California, County of Los Angeles, Case No. BC677331.
*Report* submitted for LAUSD addressing Plaintiff's Expert's damages estimates, signed
September 10, 2019.  *Deposition testimony* on September 13, 2019.

Exhibit 1
Dr. Elizabeth Newlon

*Jimmy H. Thomas and Sony Thomas v. Akzo Nobel Coatings, Inc., et al.*, Superior Court of the
State of California, County of Alameda, Case No. RG 17882514.

*Susan Teasley v. Equinor US Holdings, Inc.,* American Arbitration Association, Case No. 01-18-
0002-1427.
*Report* submitted on June 28, 2019 for Equinor US Holdings addressing Plaintiff's
discrimination allegations. *Arbitration testimony* on November 1, 2019.

*Jeffrey Cox v. Roadrunner Intermodal Services, LLC, et al.*, United States District Court for the
Eastern District of California, Case No. 1:17-CV-01207-DAD-BAM.
*Report* submitted on April 12, 2019 for Roadrunner Intermodal Services addressing
Plaintiffs' Expert's damages estimates.

*Cassandra Enochs v. Behavioral Autism Therapies, LLC, et al.*, Superior Court of the State of
California, County of San Bernardino, Case No. 1719939.
*Affidavit* submitted for Behavioral Autism Therapies for mediation on October 31, 2018.

*Consulting expert* on compensation equity audit for high-tech company, August 2018 to present.

*Consulting expert* on compensation equity audit for multinational consulting company, June
2018 to August 2018.

*Chelsea Hamilton, et al. v. Wal-Mart Stores, Inc., et al.*, United States District Court for the
Central District of California, Case No. 5:17-cv-01415 AB (KKx).
*Declaration* submitted for Wal-Mart, Inc. addressing Plaintiffs' and Plaintiffs' Expert's
proposed methodologies to analyze liability and damages, filed on July 13, 2018. *Deposition
testimony* on July 30, 2018. *Declaration* submitted for Wal-Mart, Inc. in rebuttal to
Plaintiffs' Expert's damages declaration on October 22, 2018.

*Juan Garcia v. Wal-Mart Stores, Inc.*, United States District Court for the Central District of
California, Case No. 5:16-CV-01645 TJH (RAOx).
*Declaration* submitted for Wal-Mart, Inc. addressing Plaintiff's Expert's proposed
methodologies to analyze liability and damages, filed on April 16, 2018. *Deposition
testimony* on May 7, 2018. *Reply Declaration* submitted on June 7, 2018. *Rebuttal
declaration* submitted on May 6, 2019 in response to Plaintiff's expert's declaration.
*Deposition testimony* on May 23, 2019.

*Stephanie Cekov v. Pitzer College*, Superior Court of the State of California, County of
Sacramento, Case No. BC682871.
*Consulting expert* for Pitzer College from April 2018 to June 2018.

*Mr. Benjamin Harris v. Vision Service Plan,* Superior Court of the State of California, County of
Sacramento, Case No. 34-2016-00189041.
*Report* submitted for Vision Service Plan addressing Plaintiff's Expert's damages estimates,
signed December 21, 2017. *Deposition testimony* on January 4, 2018.

*Fluegel, et al. v. FedEx Corporation, et al.,* United States District Court for the Northern District
of Illinois, Case No. 1:05-cv-02326. *Consulting Expert* for FedEx Ground from October 2017
to August 2018.

*Laura Ann DeCrescenzo v. Church of Scientology International, et al.*, Superior Court of the
State of California, County of Los Angeles, Case No. BC411018.
*Report* submitted in opposition to Plaintiffs' Expert's report estimating Plaintiff's alleged lost
wages, August 8, 2017.

*Consulting expert* for FedEx Ground Package Systems on wage and hour matter in the United
States District Court for the District of New Jersey from August 2017 to present.

*Consulting expert* for FedEx Ground Package Systems on wage and hour matter in the United
States District Court for the District of New Mexico from August 2017 to present.

*Johana Paola Beltran, et al. v. InterExchange, Inc., et al.*, United States District Court for the
District of Colorado, Case No. 14-cv-03074-CMA-KMT.
*Report* submitted in opposition to certification of the labor class and collective actions,
signed January 13, 2017. Class and collective actions rebuttal *report* submitted, signed
February 3, 2017. *Deposition testimony* on April 12, 2017. Merits and damages *report*
submitted, signed July 31, 2017. Merits and damages rebuttal *report* submitted, signed
October 30, 2017. *Deposition testimony* on March 9, 2018.

*Eillen Voellinger v. Sumo Logic*, Superior Court of the State of California, County of San Mateo,
Case No. 16CIV00371.
*Declaration* submitted in opposition to Plaintiffs' Motion to Quash Defendant's Subpoena
for Records, signed January 17, 2017.

*Nikmanesh, et al. v. Wal-Mart Stores, Inc., et al.*, United States District Court for the Central
District of California, Southern Division, Case No. 8:15-CV-00202-AG-JCG.
*Declaration* submitted in opposition to Plaintiffs' Expert's proposed use of timekeeping and
alarm data, signed November 7, 2016. *Report* served to Plaintiffs on April 24, 2017.

*Consulting expert* for FedEx Ground Package Systems on wage and hour matter in New York
State Court from April 2016 to present.

*Consulting expert* for FedEx Ground Package Systems on wage and hour matter in the United
States District Court for the Western District of New York from April 2016 to present.

*Clyde E. Woomer, et al. v. FedEx Ground Package System, Inc.*, Court of Common Pleas of
Allegheny County, Pennsylvania, No. GD 05-020678.
*Consulting Expert* for FedEx Ground from January 2016 to October 2018.

*Woomer vs. Fedex Ground Package System Inc.*, Court of Common Pleas of Allegheny County,
Pennsylvania, No. GD-05-020678.
*Consulting Expert* for FedEx Ground from December 2015 to May 2017.

Exhibit 1
Dr. Elizabeth Newlon

*Consulting Expert* for numerous cases in the MDL, In re FedEx Ground Package System, Inc.,
*Employment Practices Litigation*, Case No. 3:05-md-527-RM, (MDL-1700), in the United States
District Court for the Northern District of Indiana:

*Dean Alexander, et al. v. FedEx Ground Package System, Inc.*, Civil No. 3:05-cv-00528-
   RLM-CAN (**CA**), from November 2014 to June 2015.

*Lawrence Asbury, et al. v. FedEx Ground Package System, Inc.*, Civil No. 3:06-cv-00826-
   RLM-CAN (**WV**), from August 2015 to June 2016.

*Ryan Boudreaux, et al. v. FedEx Ground Package System, Inc.*, Civil No. 3:08-cv-00193-
   RLM-CAN (**LA**), from August 2015 to June 2016.

*Donald E. Carlson, et al. v. FedEx Ground Package System, Inc.*, Civil No. 3:05-cv-00664-
   RLM-CAN (**FL**), from February 2015 to November 2015.

*Gregory Cooke, et al. v. FedEx Ground Package System, Inc.*, Civil No. 3:05-cv-00668-
   RLM-CAN (**SC**), from August 2015 to June 2016.

*Daniel Fishler, et al. v. FedEx Ground Package System, Inc.*, Civil No. 3:08-cv-00053-RLM-
   CAN (**UT**), from August 2015 to June 2016.

*Tina Floyd v. FedEx Ground Package System, Inc.*, Civil No. 3:06-cv-00428-RLM-CAN
   (**AL**), from August 2015 to June 2016.

*Margaret Gibson, et al. v. FedEx Ground Package System, Inc.*, Civil No. 3:07-cv-00272-
   RLM-CAN (**AZ**), from August 2015 to June 2016.

*John Humphreys, et al. v. FedEx Ground Package System, Inc.*, Civil No. 3:05-cv-00540-
   RLM-CAN (**TX**), from August 2015 to June 2016.

*Paul Kelly, et al. v. FedEx Ground Package System, Inc.*, Civil No. 5:08-cv-01225-RLM-
   CAN (**OH**), from August 2015 to June 2016.

*Gary Lee Larson, et al. v. FedEx Ground Package System, Inc.*, Civil No. 3:05-cv-00601-
   RLM-CAN (**WI**), from August 2015 to June 2016.

*Katrina Lee, et al. v. FedEx Ground Package System, Inc.*, Civil No. 3:05-cv-00533-RLM-
   CAN (**MN**), from August 2015 to June 2016.

*Larry Louzau, et al. v. FedEx Ground Package System, Inc.*, Civil No. 3:05-cv-00538-RLM-
   CAN (**NY**), from August 2015 to June 2016.

*Roger Riewe, et al. v. FedEx Ground Package System, Inc.*, Civil No. 3:05-cv-00390-RLM-
   CAN (**IN**), from August 2015 to June 2016.

*Edward Slayman, et al. v. FedEx Ground Package System, Inc.*, Civil No. 3:05-cv-00596-
   RLM-CAN (**OR**), from November 2014 to September 2015.

NERA Economic Consulting

**Exhibit 1**
Dr. Elizabeth Newlon

In combination with the follow-on cases:

*Jon Leighter, et al. v. FedEx Ground Package System, Inc.*, Case No. 3:07-cv-00818-KI

*Christopher Cordova, et al. v. FedEx Ground Package System, Inc.*, Case No. 3:14-cv-01663

*Arthur Smith, et al. v. FedEx Ground Package System, Inc.*, Civil No. 3:05-cv-00600-RLM-CAN (**TN**), from August 2015 to June 2016.

*Raymond Tierney, et al. v. FedEx Ground Package System, Inc.*, Civil No. 3:05-cv-00599-RLM-CAN (**RI**), from August 2015 to June 2016.

*Michael Tofaute, et al. v. FedEx Ground Package System, Inc.*, Civil No. 3:05-cv-00595-RLM-CAN (**NJ**), from August 2015 to June 2016.

*Thomas Westcott v. FedEx Ground Package System, Inc.*, Civil No. 3:06-cv-00485-RLM-CAN (**MD**), from August 2015 to June 2016.

*Earnest White, et al. v. FedEx Ground Package System, Inc.*, Civil No. 3:07-cv-00411-RLM-CAN (**GA**), from August 2015 to June 2016.

*Sharon B. Whiteside, et al. v. FedEx Ground Package System, Inc.*, Civil No. 3:07-cv-00326-RLM-CAN (**NC**), from August 2015 to June 2016.

*Derek D. Willis v. FedEx Ground Package System, Inc.*, Civil No. 3:05-cv-00597-RLM-CAN (**PA**), from August 2015 to June 2016.


*Sheldrick McNeal, Sr. v. Nucor Steel Tuscaloosa, Inc.*, United States District Court for the Northern District of Alabama, Western Division, Civil Action No. 7:15-cv-01305-LSC. *Consulting Expert* in single plaintiff discrimination case, from April 2016 to June 2016.

*Deanna Matthews v. Sutter West Bay Hospitals, Inc.,* Superior Court of the State of California, County of Marin, Case No. CIV1303547.
Retained as *Testifying Expert* in single plaintiff wrongful termination case, February 2016.

*David Daniels v. Sutter West Bay Hospitals, Inc.,* Superior Court of the State of California, County of Marin, Case No. CIV1304891.
Retained as *Testifying Expert* in single plaintiff wrongful termination case, October 2015.

*Greggory R. Devore, M.D., a Medical Corporation v. Heritage Provider Network, Inc., et al.,* Superior Court of the State of California, County of Los Angeles, Case No. BC484067. *Consulting Expert* for antitrust case related to damages from termination of physician's contract, from October 2014 to August 2015.

**Exhibit 1**
Dr. Elizabeth Newlon

*Monet Alvarez v. M.A.C Cosmetics Inc.*, Superior Court of the State of California, County of Orange, Case No. 30-2014-00750745.
*Consulting Expert* in class-action wage and hour matter related to allegations of unpaid work filed under PAGA, June 2015.

*Michele Castillo v. M.A.C Cosmetics Inc.*, Superior Court of the State of California, County of Marin, Case No. CIV1402791.
*Consulting Expert* in class-action wage and hour matter related to allegations of unpaid final wages, June 2015.

*Tina Hamilton, et al. v. NHS Management, L.L.C., et al.*, United States District Court for the Western District of Missouri, Southwestern Division, Case No. 3:12-cv-05044-JTM.
*Declaration* submitted in support of Defense's motion for decertification, signed November 4, 2014.

*Jerome Davis v. Brown Shoe Company*, United States District Court for the Eastern District of California, Fresno Division, Case No. 1:13-cv-01211-LJO-BAM.
*Declaration* submitted in opposition to Plaintiff's Statement Re: Discovery Disagreement, signed September 4, 2014.

*Sean Burke v. Broker Solutions, Inc., et al.*, Superior Court of the State of California, County of Orange, Case No. 30-2014-00722233-CU-OE-CXC.
*Consulting Expert* in class-action wage and hour matter related to alleged errors in calculating regular rate, from August 2014 to May 2015.

*Aaron Eubanks v. Wilshire Associates Incorporated,* Superior Court of the State of California, County of Los Angeles, Case No. BC 483580, ADRS Case No. 13-0178-PLC.
*Expert Report* and *Testimony* at arbitration on February 28, 2014 relating to damages arising from alleged wrongful termination.

*John Kellenbenz v. Seton Medical Center*, Superior Court of the State of California, County of San Mateo, Case No. CIV 514600.
*Consulting Expert* in class-action wage and hour matter related to allegations of failure to pay for all hours worked and unpaid final wages, from February 2013 to July 2013.

*Maral Hintiryan, et al. v. Condusiv Technologies Corporation,* Superior Court of the State of California, County of Los Angeles, Case No. BC 424 359.
*Consulting Expert* in class-action wage and hour matter related to allegations of incorrect overtime and double-time payments, pay statement itemization, and waiting-time penalties, from June 2012 to September 2012.

*Sue A. Leeder v. Secretary of Defense, Leon Panetta,* United States District Court for the Northern District of California, San Jose Division, Case No. C 10-01822-HRL.
*Expert Report* submitted on May 15, 2012 relating to damages arising from alleged wrongful termination.

*Robert A. & Pearl Fletcher v. Commissioner of Internal Revenue; Thousand Oaks Residential
Care Home v. Commissioner of Internal Revenue; and Thousand Oaks Residential Home,
Inc. v. Commissioner of Internal Revenue,* Federal Tax Court, Docket Nos. 1481-10, 1448-
10, and 1480-10.
*Expert Report* and *Trial Testimony* on December 16, 2011 about reasonable compensation
for owners of a residential care facility in Southern California.

*Woodson & Rummerfield's House of Design, Inc. v. Lisa Beaulieu (A/K/A Lisa Marie Presley),*
before the American Arbitration Association, Western Case Management Center, AAA Case
No. 72 529 Y 00894 09 JISI.
*Deposition testimony* on January 19, 2011 about damages incurred by Defendant in relation
to dispute about design services provided by Plaintiffs.

*Moshe Marciano, et al. v. Ameriflight, LLC, et al.,* Superior Court of the State of California,
County of Los Angeles, Case No. EC045694.
Expert opinion prepared regarding damages for wrongful injury claim prepared for
Ameriflight.

*Report* "Assessing the Property Value Impact of Mississippi Cottages," written pro-bono for
Mississippi Center for Justice, dated October 10, 2010.

## Experience Working for Other Experts

### *Labor and Wage Suppression Cases:*

» Analysis of class damages and preparation of report in case alleging compensation
suppression by seven major tech firms in Silicon Valley.

» Analysis of economic losses due to alleged wrongful termination of five women in financial
management positions by a major investment bank.

» Recommendations on a compensation model for clinic medical directors' pay on Part 494
hours worked for a national chain of dialysis clinics.

» Analysis of regular rate calculations for the purpose of assessing overtime and missed meal
penalty payments to nurses at a major hospital in Southern California.

» Analysis of economic losses due to alleged wrongful termination by Verizon Wireless, Inc.

» Analysis of compensation and promotion practices of a major aero-space company with
respect to claims of gender discrimination in compensation and promotion.

» Audit of differences in compensation by gender and race for group of financial and business
consulting companies.

» Survey analysis for matter involving claim of misclassification of independent contractors by
IRS against a California city.

» Estimated damages in a wrongful termination action against a California software company.

Exhibit 1
Dr. Elizabeth Newlon

» In a collective action against a technology company, analyzed allegation that older workers were more likely to be discharged through reductions in force.

» Estimated damages in a wrongful imprisonment action against City police in Massachusetts.

» Analysis of economic losses due to alleged wrongful termination by Diagnostic Products Corporation.

*Antitrust and Intellectual Property Cases:*

» Modeling of Arizona dentists' incentives to join competing carriers' networks and analysis of NetMinder provider network affiliation data.

» Analysis of foreclosure claims by Orthopedic Spine Surgeon against Hospital in Santa Barbara and competing Neurosurgeons.

» Analysis of antitrust liability associated with claims of foreclosure and tying in a case relating to physician privileges at a general acute care hospital in California.

» Analysis of class action nursing monopsony claims against a major hospital association relating to the wage effect of a price ceiling on bill rates for nursing services.

» Valuation of future royalties of a pharmaceutical product for an intellectual property case.

» Valuation of future royalties of a prosthetic device for an intellectual property case.

» Analysis of claims data for major multi-district litigation related to out-of-network reimbursement of provider claims.

» Analysis of antitrust issues in a case relating to revenue sharing agreements in the retail grocery market, involving analysis of large sales databases and multiple reports.

» Foreclosure and exclusionary bundling case against a large medical manufacturer, related to GPO contracting.

## Presentations

» "No-Poach" Agreement Enforcement: Hot-Buttons in 2020 and Beyond." Knowledge Group Webinar on December 10, 2019.

» "Preliminary Analysis, CAST Data - Labor Trafficked Clients." Presentation to Los Angeles County Department of Public Health on July 15, 2019.

» "How to Effectively Use Expert Evidence in Wage and Hour Litigation: A Comprehensive Guide for 2019." Knowledge Group Webinar on April 25, 2019.

» "Calculating Damages and Modeling Exposure – Covering All the Bases." Presentation at FedEx Ground, Moon Township, PA on March 29, 2019.

**Exhibit 1**
Dr. Elizabeth Newlon

» "Preliminary Analysis, CAST Data - Labor Trafficked Clients." Presentation to LA Regional Human Trafficking Task Force's Labor Trafficking Subcommittee on February 14, 2019.

» "Wage and Hour Class Actions: Looking Back and What's Ahead." Knowledge Group Webinar on January 17, 2019.

» "Wage and Overtime Law in the 2018 Landscape: Updates and Developments You Need to Know." Knowledge Group Webinar on August 29, 2018.

» "Blurring the Bright Line of Statistical Significance - The High-Tech Employees Antitrust Litigation." NERA's 36th Antitrust and Trade Regulation Seminar on July 7, 2017.

» "Practical Strategies and Latest Legal Developments in Wage & Hour Litigation and Compliance." Knowledge Group Webinar on June 28, 2017.

» "The EEOC's Proposed Revisions to the EEO-1 Report: Time to Overhaul Your Payroll System?" Knowledge Group Webinar on September 19, 2016.

» "Class Certification in Wage and Hour Cases: How Statistics Can Help." Presentation given at Drinker Biddle and Reath in Century City, CA on May 21, 2014.

» "Post-*Dukes* Developments in Employment Class Actions and the Role of the Economist." Presentation with Betsy Becker and Flavia Bainbridge given at Paul Hastings in Los Angeles, CA on May 7, 2013.

» "Calculating Damages in Wrongful Termination Cases: Reality Matters." Presentation with Kristin Terris given at Mitchell Silberberg & Knupp, LLP in Los Angeles, CA on January 18, 2012.

» "What's in an Average? How to Recognize Misleading Statistics in Employment Cases." Presentation with Betsy Becker given at Jackson Lewis LLP in San Francisco, CA on December 16, 2010.

» "One Size Doesn't Fit All: Calculating Damages in Wrongful Termination Cases." Presentation given at Hill Farrer & Burrill LLP in Los Angeles, CA on January 21, 2010.

» "What's in an Average? How to Recognize Misleading Statistics in Employment Cases." Presentation with Stephanie Plancich given at O'Melveny & Myers LLP in Los Angeles, CA on August 11, 2009.

» "What's in an Average? How to Recognize Misleading Statistics in Employment Cases." Presentation with Kristin Terris and John Johnson given at NERA's CLE Labor Luncheon in Los Angeles, CA on October 23, 2008.

» The Public Choice Society, 2001, 1997, and 1996.

» Harvard University, December 2000.

» MacArthur Group on Poverty and Inequality, March 2000.

**Exhibit 1**
Dr. Elizabeth Newlon

- » Stanford Institute for Theoretical Economics (SITE), seminars on Competition in Urban Economics, July 1998.

- » The National Tax Association, 1997.

## Publications

- » "Life After Tyson: A New Demand for Expert Counterstudies," with Sarah Butler and Bryan Tomlin, *Law360*, March 29, 2016.

- » "Top Five Things You Should Know about the EEOC's Proposed Changes to the Employer Information Report," Online Legal Blog, Suits by Suits, presented by Zuckerman Spaeder LLP, March 25, 2016.

- » "Revenue Sharing Agreements: Do They Restrict Competition?," with Kristin Terris and Thomas McCarthy, *ABA Antitrust Law, Economics Committee Newsletter*, Vol. 10, No. 1, Summer 2010.

- » "Implications of the Fair Pay Act for Statistical Analysis in Wage Discrimination Suits," with Chris Erath and Denise Martin, March 2009.

- » "Ability Tracking, School Competition, and the Distribution of Economic Benefits," with Dennis Epple and Richard Romano, *Journal of Public Economics*, January 2002.

- » "The Effects of Educational Vouchers when Schools Track Students by Ability," with Dennis Epple and Richard Romano, *Environmental and Public Economics: Essays in Honor of Wallace E. Oates* (Arvind Panagariya, Paul R. Portney, and Robert M. Schwab, eds.), Edward Elgar Publishing, 1999.

January 2020

Exhibit 2

## Materials Considered by Elizabeth Newlon

**Court Filings**

*James S. Evans and Keineisha Smith, on behalf of themselves, all others similarly situated, Plaintiffs, vs. Wal-Mart Stores, Inc., a Delaware corporation; and DOEs 1 through 50, inclusive, Defendants.* United States District Court, Central District of California, Case No. 2:17-cv-7641-RGK-GJS:

Order Granting Motion to Stay Proceedings with Respect to Count VI and Granting in Part and Denying in Part Plaintiffs' Motion for Class Certification, November 25, 2019

Joint Stipulation to Dismiss Without Prejudice Plaintiff Keineisha Smith Pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii), November 14, 2019

Plaintiffs' Reply in Support of Motion for Class Certification, October 1, 2019

Plaintiffs' Request for Judicial Notice in Support of Reply in Support of Motion for Class Certification Filed Conditionally Under Seal, October 1, 2019

Notice of Errata Regarding Defendant Walmart's Brief in Opposition to Plaintiffs' Motion for Class Certification, September 25, 2019

Appendix of Evidence in Support of Walmart's Appendix of Evidence Submitted in Support of Its Opposition to Plaintiffs' Motion for Class Certification, September 3, 2019

Defendant Walmart's Brief in Opposition to Plaintiffs' Motion for Class Certification, September 3, 2019

Notice of Errata and Correction to Plaintiffs' Notice of Motion and Motion for Class Certification [Redacted] Filed Conditionally Under Seal, July 24, 2019

Plaintiffs' Amended Notice of Motion for Class Certification [Redacted] Filed Conditionally Under Seal, July 23, 2019

Plaintiffs' Application for Leave to File Under Seal Portions of Its Motion for Class Certification and Designated Exhibits Attached to the Declaration of William M. Pao, July 22, 2019

Plaintiffs' Notice of Motion and Motion for Class Certification [Redacted] Filed Conditionally Under Seal, July 22, 2019

[Proposed] Order Granting Class Certification, filed July 22, 2019

Wal-Mart Stores, Inc.'s Answer to Plaintiff's First Amended Complaint, January 8, 2018

First Amended Complaint, November 13, 2017

**Exhibit 2**

**Declarations**

Declaration of James Evans, July 22, 2019

Declaration of Robert J. Herrington in Support of Walmart's Opposition to Plaintiffs' Motion for Class Certification, September 3, 2019

Declaration of Diana McChristian in Support of Defendant Walmart Inc.'s Opposition to Plaintiffs' Motion for Class Certification, August 29, 2019

Declaration of William M. Pao in Support of Plaintiff's Reply in Support of Motion for Class Certification [Redacted] Filed Conditionally Under Seal, October 1, 2019 and accompanying exhibits

Declaration of William M. Pao in Support of Plaintiff's Motion for Class Certification [Unredacted] Filed Conditionally Under Seal, July 22, 2019 and accompanying exhibits

Declaration of Shaun Setareh in Support of Plaintiff's Motion for Class Certification Filed Conditionally Under Seal, July 22, 2019

Declaration of James Toney, December 16, 2019

Declaration of James Toney, October 1, 2019


**Depositions**

Deposition of James Evans, August 19, 2019 and accompanying exhibits


**Bates Stamped Documents**

DOC000001-DOC000015

DOC000814

DOC000815

DOC000816

DOC000817

DOC000818

DOC000819-DOC000821

**Exhibit 2**

DOC000822-DOC000927

DOC000980-DOC000992

DOC000993-DOC001005

DOC001006-DOC001020

DOC001021-DOC002021


**Publicly Available Information**

State of California, Department of Industrial Relations, Labor Commissioner's Office, Overtime.
 https://www.dir.ca.gov/dlse/faq_overtime.htm. Accessed January 14, 2020.

Open Data Handbook, Glossary, Machine Readable.
https://opendatahandbook.org/glossary/en/terms/machine-readable/. Accessed January 14, 2020.

### PROOF OF SERVICE
*Evans v. Wal-Mart - (Case No. 2:17-cv-07641-AB-KK)*

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the aforesaid county, State of California; I am over the age of 18 years and not a party to the within action; my business address is **1840 Century Park East, Suite 1900, Los Angeles, CA 90067,** *gutierrezd@gtlaw.com.*

On the date given below, I served the **DEFENDANT'S REBUTTAL EXPERT WITNESS DISCLOSURE AND REPORT** on the interested parties in this action by placing the true copy thereof, enclosed in a sealed envelope addressed as follows:

| | |
|---|---|
| Shaun Setareh, Esq. <br> William M. Pao, Esq. <br> Alexandra R. McIntosh, Esq. <br> SETAREH LAW GROUP <br> 315 S. Beverly Drive, Suite 315 <br> Beverly Hills, CA 90212 <br> Telephone: 310-888-7771 <br> Facsimile: 310-888-0109 <br> shaun@setarehlaw.com; <br> william@setarehlaw.com <br> alex@setarehlaw.com <br><br> *Attorneys for Plaintiff James S. Evans* | |

☒ **(BY MAIL)**

    ☒ I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

    ☒ I am readily familiar with the business practice of my place of employment in respect to the collection and processing of correspondence, pleadings and notices for mailing with United States Postal Service. The foregoing sealed envelope was placed for collection and mailing this date consistent with the ordinary business practice of my place of employment, so that it will be picked up this date with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of such business.

☐ **(BY OVERNIGHT COURIER)**     I deposited such envelope for collection and delivery by an overnight courier service with delivery fees paid or provided for in

accordance with ordinary business practices. I am "readily familiar" with the firm's practice of collection and processing packages for overnight delivery by an overnight courier service. They are deposited with a facility regularly maintained by the overnight courier service for receipt on the same day in the ordinary course of business.

☐ **(BY CM/ECF)**
Pursuant to CM/ECF System, registration as a CM/ECF user constitutes service through the Court's transmission facilities. The Court's CM/ECF system sends an e-mail notification of the filing to the parties and counsel of record listed above who are registered with the Court's EC/ECF system.

☒ **(BY ELECTRONIC MAIL) - COURTESY**
On the below date, I transmitted the foregoing document(s) by electronic mail, and the transmission was reported as complete and without error. This method of service was made as a professional courtesy to counsel.

☒ **(FEDERAL)**    I declare under penalty of perjury that the foregoing is true and correct, and that I am employed at the office of a member of the bar of this Court at whose direction the service was made.

Executed on January 15, 2020, at Los Angeles, California.

*Debbie Gutierrez*



 GreenbergTraurig

GREENBERG TRAURIG, LLP
1840 Century Park East, Suite 1900
Los Angeles, CA 90067

RECEIVED

JAN 17 2020

Shaun Setareh, Esq.
William Pao, Esq.
Alexandra McIntosh, Esq.
SETAREH LAW GROUP
315 S. Beverly Drive, Suite 315
Beverly Hills, CA  90212