Shaun Setareh (SBN 204514)
  shaun@setarehlaw.com
William M. Pao (SBN 219846)
  william@setarehlaw.com
Jose Maria D. Patino, Jr. (SBN 270194)
  jose@setarehlaw.com
Nolan Dilts (SBN 328904)
  nolan@setarehlaw.com
SETAREH LAW GROUP
9665 Wilshire Boulevard, Suite 430
Beverly Hills, California 90212
Telephone (310) 888-7771
Facsimile (310) 888-0109

Stanley D. Saltzman (SBN 90058)
  ssaltzman@marlinsaltzman.com
MARLIN & SALTZMAN LLP
29800 Agoura Road, Suite 210
Agoura Hills, California 91301
Telephone (818) 991-8080
Facsimile (818) 991-8081

Attorneys for Plaintiff
JAMES S. EVANS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JAMES S. EVANS, on behalf of himself, all others similarly situated,<br><br>_Plaintiff_,<br><br>vs.<br><br>WAL-MART STORES, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>_Defendants_. | Case No. 2:17-cv-07641-AB-KK<br><br>Assigned For All Purposes to the Hon. Andre Birotté, Jr., Courtroom 7B<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF SHAUN SETAREH, JAMES S. EVANS AND STANLEY D. SALTZMAN; [PROPOSED] ORDER**<br><br>Date:    November 12, 2021<br>Time:    10:00 a.m.<br>Place:   Courtroom 7B |

TO ALL PARTIES HEREIN AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 12, 2021 at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 7B of this Court, located at 350 West First Street, Los Angeles, California 90012, Plaintiff JAMES S. EVANS ("Plaintiff"), individually and behalf the class he seeks to represent, by and through his attorneys of record, will move for an order that this case be maintained as a class action for the purposes of settlement under Federal Rule of Civil Procedure ("Rule") 23 and Local Rule ("L.R.") 23-3, on behalf of a settlement class comprised of Plaintiff and all other persons similarly situated, for an order directing notice to the class, and for a scheduling order setting a Fairness Hearing for final approval of the proposed settlement.

This motion is based upon this notice, the accompanying Memorandum of Points and Authorities, the Declarations of Shaun Setareh, James S. Evans, Stanley D. Saltzman, and all documents and arguments in support thereof.

The parties to this action hereby jointly request the following relief:

1.      Preliminary approval of the Class Action Settlement, attached as Exhibit 24 to the Declaration of Shaun Setareh ("Setareh Decl."), which has been reached between them, so that they may proceed with notice to the class and to a Fairness Hearing for Final Settlement Agreement approval;

2.      Conditional certification of the Settlement Class defined in the Class Action Settlement Agreement for settlement purposes pursuant to Rule 23, the appointment of Plaintiff James S. Evans as the Settlement Class Representative, and the appointment of Shaun Setareh and William M. Pao of the Setareh Law Group and Stanley D. Saltzman of Marlin & Saltzman LLP as Settlement Class Counsel;

3.      An Order directing the dissemination of the notice of class action settlement to the Settlement Class, via United States First-Class Mail, in the form attached as Exhibits "A" (Postcard Notice) "B" (Long Form Notice) to the Settlement Agreement. (Setareh Decl., ¶ 24.);

1       4.      Appointment of Phoenix Settlement Administrators as the Settlement

2 Administrator;

3       5.      Preliminarily barring any Settlement Class Members or those purporting

4 to be Settlement Class Members, unless they have timely excluded themselves from

5 the Settlement Class as provided in Section 8, from commencing or continuing to

6 prosecute any action if such other action is based on or relates to the allegations and

7 claims in this Action;

8       6.      An Order setting a schedule for the dissemination of notice to the

9 Settlement Class; deadlines for Settlement Class Members to opt-out of the

10 Settlement; and deadlines for Settlement Class Members to object to the settlement;

11 or to enter an appearance through counsel; and for a Fairness Hearing to address final

12 approval of the Class Action Settlement Agreement following the notice period.

13       7.      Any other relief that the Court deems just and equitable under the

14 circumstances.

15

16 DATED:  September 3, 2021        SETAREH LAW GROUP

17

18                           */s/ Shaun Setareh*

19                           SHAUN SETAREH
Attorneys for Plaintiff

20                           JAMES S. EVANS

21 DATED:  September 3, 2021        MARLIN & SALTZMAN LLP

22

23                           */s/ Stanley D. Saltzman*

24                           STANLEY D. SALTZMAN
Attorneys for Plaintiff

25                           JAMES S. EVANS

26

27

28

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## **TABLE OF CONTENTS**

I.     INTRODUCTION…………………………………………………...1

II.    BACKGROUND…………………………………………………….1

    A.    FACTUAL AND LEGAL INVESTIGATION AS TO THE MERITS OF
         PLAINTIFF'S CLAIMS……………………………………………..2

    B.    PLEADINGS AND MATERIAL ALLEGATIONS…………………3

    C.    FORMAL WRITTEN DISCOVERY AND DEPOSITIONS………...3

    D.    THE COURT'S CLASS CERTIFICATION ORDER………………..4

    E.    POST-CERTIFICATION DISCOVERY AND RETENTION AND
         DEPOSITIONS OF EXPERT WITNESSES………..………………6

        1.    Plaintiff's Damages Expert, James Toney………………….6

        2.    Walmart's Rebuttal Expert, Dr. Elizabeth Hart Newlon…………7

    F.    DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT,
         DECERTIFICATION, AND STRIKING THE REPORT OF
         PLAINTIFF'S EXPERT WITNESS…………………...………………7

        1.    Walmart's Summary Judgment Motion…………..……………8

        2.    Walmart's Motion to Decertify……………………….………8

    G.    THE PARTIES FAILED MEDIATION ATTEMPT………………..9

    H.    PRE-TRIAL FILING AND FINAL PRE-TRIAL CONFERENCE…..…9

    I.     NEGOTIATIONS, SETTLEMENT AND POST-SETTLEMENT
         CONSIDERATION…………………………………..……...………10

III.   SUMMARY OF THE PROPOSED SETTLEMENT………………...…..10

    A.    The Scope of The Release…………………………………...…10

    B.    The Key Terms of the Settlement's Monetary Benefits………………10

        1.    PAGA Fund and Payment to the Labor and Workforce
            Development Agency…………………………..…………………11

        2.    Individual Payment to the Wage Statement Class………………11

        3.    Proposed Class Representative Service Payment………………12

iii

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

C.     ATTORNEYS' FEES AND EXPENSES...………………………………12

D.     THE SETTLEMENT CLASS REPRESENTATIVE AND
       SETTLEMENT CLASS COUNSEL….14

E.     CLASS NOTICE………………………………….…...…………...14

F.     THE SETTLEMENT ADMINISTRATOR WAS SELECTED AFTER
       OBTAINING MULTIPLE BIDS...………………………………………15

       1.     The Court Should Approve the Establishment of a Qualified
              Settlement Fund…...……………………………….……15

IV.   LEGAL ARGUMENT AND STANDARD…..…………………………16

A.     THE FORM AND MANNER OF NOTICE TO THE CLASS
       SATISFIES FED.R.CIV. P. 23(e)(1) AND SHOULD BE
       APPROVED………………………………………………………18

B.     THE PROPOSED SETTLEMENT SATISFIES FED.R.CIV. P. 23(e)(2)
       BECAUSE IT IS FAIR, REASONABLE AND ADEQUATE………..20

       1.     The Class Representatives and Class Counsel Have Adequately
              Represented the Class………………….…..…………………21

       2.     The Proposal Was Negotiated at Arm's Length……………...21

       3.     The Relief Provided for the Class Is Adequate…………………22

              a.     The Costs, Risks and Delay of Trial and Appeal……...…22

              b.     The Effectiveness of Any Proposed Method of Distributing
                     Relief to the Class, Including the Method of Processing
                     Class-Member Claims……………………...……………27

              c.     The Terms of Any Proposed Award of Attorneys' Fees,
                     Including Timing of Payment……………….…………27

              d.     Any Agreement Required to Be Identified Under Rule
                     23(e)(3)…………………….………………………………28

       4.     The Proposal Treats Class Members Equitably to Each Other….28

V.    PROPOSED SCHEDULE OF EVENTS…..………………………28

iv

# **TABLE OF AUTHORITIES**

<u>Cases</u>

*Acosta v. Evergreen Moneysource Mortgage Company*, 2018 WL 3831004 at *2 (E.D. Cal. Aug. 13, 2018)..................................................................................17

*Arias v. Superior Court* (2009) 46 Cal. 4th 969 ...........................................24

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 349 (2011)...............................18

*Bayat v. Bank of the West*, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015).....24

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015)........24

*Bravo v. Gale Triangle, Inc.*, 2017 WL 708766, *10 (C.D. Cal. Feb. 16, 2017).....24

*Churchill Vill, LLC v. Gen. Elec*, 361 F.3d 566, 575 (9th Cir. 2004) .........................18

*City Partnership Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F. 3d 1041, 1043 (1st Cir. 1996)...........................................................................................22

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).................17

*Cotter v. Lyft, Inc.* (N.D. Cal. 2016) 193 F.Supp.3d 1030, 1037 ...........................25

*Fleming v. Covidien*. No. ED CV 10-01487 RGK (OPx), 2011 WL 7563047 at *4 (C.D. Cal. Aug. 12, 2011) ..................................................................25

*Litty v. Merrill Lynch & Co., Inc.*, 2015 WL 4698475, at *9 (C.D. Cal. Apr. 27, 2015)..........................................................................................24

*Magadia v. Wal-Mart Assocaites, Inc.*, 999 F.3d 668 (9th Cir. 2021) ....................26

*Mays v. Wal-Mart Stores, Inc.*, 804 Fed.Appx. 641 (9th Cir. 2020) ........................26

*Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 452-53 (E.D. Cal. 2013)........18

*Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 473 (E.D. Cal. 2010) ...................20

*National Rural Telecommunications Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. Jan. 5, 2004) .................................................................22

*Natl Rural Telecommc'ns Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (CD. Cal. 2004) ..........................................................................................20

*Ochoa-Hernandez v. Cjaders Foods, Inc.* 2010 WL 134077, at *4 (N.D. Cal. Apr. 2, 2010)...........................................................................................24

*Officers for Justice v. Civil Service Com'n of City and Cty. of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982) ...................................................................................24

*Redwen v. Sino Clean Energy, Inc.*, No. CV 11-3936 PA (SSx), 2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013)...........................................................26

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ...............21

*Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1055 (9th Cir. 2019) ........................13

*Spann v. J.C. Penney Corporation*, 314 F.R.D. 312, 330 (C.D. Cal. Jan. 25, 2016)....18

*Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) .........................................17

*Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2002) .........................................17

*TransUnion LLC v. Ramirez,* 141 S. Ct. 2190 (2021)..............................................23, 26

*U.S. v. Alexander*, 106 F.3d 874 (9th Cir. 1997) .....................................................17

*Viceral v. Mistras Grp., Inc.* (N.D. Cal. Oct. 11, 2016, 2016 WL 5907869 at *9 ...25

*Williams v. Costco Wholesale Corp.*, No. 02cv2003 IEG (AJB) ...............................20

*Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 546 (9th Cir. 2016) ...........13

Statutes

28 U.S.C. § 1332(d)(2).................................................................................................3

Lab. Code §§ 2698 ......................................................................................................3

Labor Code § 2699 ....................................................................................................23

Labor Code 226 ...........................................................................................................3

Labor Code section 226 .................................................................................1, 8, 23, 25

Labor Code section 226(e)(1) .....................................................................................7

Labor Code section 2699 ...........................................................................................11

Labor Code section 2699(i).......................................................................................11

Rules

Fed. R. Civ. P. 23(h)(1)............................................................................................19

Fed.R.Civ.P. 23 .......................................................................................................1, 5

Fed.R.Civ.P. 23(a)(3)..................................................................................................5

Fed.R.Civ.P. 23(a)(4)..................................................................................................6

Fed.R.Civ.P. 23(b)(3) .................................................................................................6

Fed.R.Civ.P. 23(e) .......................................................................................................1

Fed.R.Civ.P. 23(e)(2)(A)...........................................................................................21

Fed.R.Civ.P. 23(e)(2)(C)(i) .......................................................................................22

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Fed.R.Civ.P. 23(e)(2)(C)(ii). .......................................................................... 26

Fed.R.Civ.P. 23(e)(2)(C)(iii) ......................................................................... 27

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION[1]

In accordance with Fed.R.Civ.P. 23(e), Plaintiff respectfully requests that the Court preliminarily approve this $35 million ($35,000,000) non-reversionary settlement that was negotiated at arms-length between counsel the morning of the Final Pre-Trial Conference.  The recovery achieved is for statutory and civil penalties pursuant to Labor Code section 226.  To Plaintiff's counsel's knowledge this matter is one the largest statutory penalty settlements pursuant to Labor Code section 226.

The settlement amount is fair, adequate, and reasonable given the strengths and risks of litigating the case through trial and appeal.

Plaintiff's counsel will seek attorney's fees of one-third of the gross settlement amount plus out-of-pocket expenses incurred in prosecuting this action.  Under the "lodestar" and/or "percentage-of-recovery" methods applied in this Circuit, Plaintiff's counsel seeks an upward adjustment to the 25% benchmark.

The claims administrator will send a postcard notice that includes basic information including summary of the settlement, a description of who is a class member, identifying Settlement Class Counsel, directing Settlement Class Members to the Settlement Website and instructions on how to proceed; along with other notice requirements as set forth in Fed.R.Civ.P. 23.

For the reasons set forth below, this Court should grant preliminary approval of the Settlement.

### II.   BACKGROUND

Plaintiff litigated this case diligently and aggressively against Walmart for almost four years through shortly before trial by: (**i**) conducting extensive factual and

---

[1] Walmart does not concede the Plaintiff's allegations, nor does it concede all of the factual statements or characterizations of legal positions set forth herein.  For purposes of this Settlement, however, Walmart does not oppose the filing of this Motion or the granting of preliminary approval.

1

legal investigation prior to the filing of the lawsuit; **(ii)** engaging in comprehensive discovery, including but not limited to deposing Walmart's Rule 30(b)(6) witness and defending the deposition of Plaintiff; **(iii)** successfully certifying the wage statement claim pursuant to Rule 23 and advancing the costs of sending class notice to the putative class; **(iv)** written and document discovery including review and analysis of voluminous timekeeping and payroll records for the putative class; **(v)** post-certification discovery and expert witness retention and depositions; **(vi)** retention of Michelle Yoshida to mediate the case; **(vii)** defeating Walmart's motion for partial summary judgment on the certified wage statement claim; **(viii)** defeating Walmart's motion to decertify the wage statement class; **(ix)** engaging Stan Saltzman of Marlin & Saltzman LLP as trial counsel to heighten the probability of resolving the case and/or trying the matter successfully; **(x)** drafting all pre-trial filings including motions in *limine* and opposing Walmart's motions in *limine*, and preparation for the Final Pre-Trial Conference and trial; **(xi)** resolving the wage statement claim on a class-wide basis with Walmart.

The Settlement is the product of well-informed, arm's-length settlement negotiations that spanned over five months beginning at mediation and arrives at a critical juncture in the litigation, after extensive motion practice and discovery, including certification and summary judgment proceedings, but before the Court was to render dispositive rulings on the parties' motions in *limine* that would have a substantial impact on how the case would be tried to a jury. The Settlement presents an excellent recovery and delivers tangible and immediate benefits to the Settlement Class, particularly considering the substantial risks protracted litigation would present. The Court should grant preliminary approval.

## A. FACTUAL AND LEGAL INVESTIGATION AS TO THE MERITS OF PLAINTIFF'S CLAIMS

Prior to filing the complaint, Plaintiff's counsel conducted an extensive investigation pertaining to the factual and, most importantly, legal viability of the

claims that were resolved in this case. (Declaration of Shaun Setareh ("Setareh Decl."), ¶ 3.)  Plaintiff's counsel undertook a thorough review of the case law, opinion letters, and legislative history relevant to the wage statement claim.  As more specifically explained below, the claims involved complex novel legal issues as there is a dearth of authority, whether state or federal, directly on point to the claims that were certified and headed to trial.  In this nuanced class and representative action which was resolved on the morning of the Final Pre-Trial Conference, Plaintiff relied upon the plain meaning of the statute and several opinion letters from the California Division of Labor Standards Enforcement (the California regulatory agency tasked with enforcement of the Labor Code) in support of his position that Walmart's conduct violated the Labor Code and was therefore legally liable to the class. Walmart denies liability and disputes the Plaintiff's position.

### B. PLEADINGS AND MATERIAL ALLEGATIONS

On September 13, 2017, Plaintiff filed this putative class action in the Los Angeles County Superior Court alleging a claim for Failure to Provide Accurate Written Wage Statements in violation of Labor Code 226, among other claims. (Setareh Decl., ¶ 4.)

On October 18, 2017, Walmart removed the action to federal court pursuant to the Class Action Fairness Act of 2005 ("CAFA") (28 U.S.C. § 1332(d)(2).) (ECF 1) (Setareh Decl., ¶ 5.)

On November 20, 2017, Plaintiff filed a First Amended Complaint adding Keineisha Smith as an additional class representative an adding, among other claims, an additional cause of action for  civil penalties under the Labor Code Private Attorneys General Act of 2004 ("PAGA") (Lab. Code §§ 2698 *et seq.*) (ECF 12) (Setareh Decl., ¶ 6.)

### C. FORMAL WRITTEN DISCOVERY AND DEPOSITIONS

The parties engaged in extensive discovery. (Setareh Decl., ¶ 7.)  Class counsel served interrogatories, requests for admissions and document requests, and obtained

written responses and document production from Walmart. (*Id.*)  Subsequently, Walmart continued to produce documents on a rolling basis and eventually produced more than two thousand pages of documents altogether and voluminous electronic data.  On August 19, 2019, Walmart took the deposition of Plaintiff. (Setareh Decl., ¶ 8.)  Walmart also served written discovery consisting of interrogatories, requests for admissions and document requests on Plaintiff, who provided complete written responses and documents. (Setareh Decl., ¶ 9.)

On February 4, 2020, Plaintiff took the deposition of Walmart's Rule 30(b)(6) witness, Ms. Diana McChristian, in Bentonville, Arkansas. (Setareh Decl., ¶ 11.)

## D.    THE COURT'S CLASS CERTIFICATION ORDER

On July 22, 2019, Plaintiff filed his motion for class certification.[2] (Setareh Decl., ¶ 12.)   In pertinent part, Plaintiff sought to certify the following class of individuals pursuant to Rule 23:

> **Wage Statement Class**[3]
>
> "All persons employed as hourly-paid employees by Defendant in any store in California at any time during the period beginning one year before the filing of this action and ending when final judgment is entered."

Plaintiff's counsel relied upon the extensive discovery produced by Walmart in this case, including but not limited to, the deposition of Walmart's Rule 30(b)(6) witness, Ms. Diana McChristian, along with Walmart's written responses to Plaintiff's written discovery, including relevant documents produced by Walmart.

After the matter was fully briefed and having considered oral arguments, this

---

[2] At the time, both James S. Evans and Keineisha Smith were putative class representatives.  On November 14, 2019, the parties stipulated to dismiss Keineisha Smith from this action without prejudice. (ECF 92.)

[3] Although the Court granted class certification as to both the Regular Rate Class and the Wage Statement Class, the claims of the Regular Rate Class were dismissed on summary judgment and the order dismissing that claim was entered on September 15, 2020.  (ECF 181.)

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Court issued an order granting Plaintiff's motion and certifying the Wage Statement Class pursuant to count V (failure to provide accurate written wage statements). (ECF 95.)  The Court certified the Wage Statement Class as:

> "All persons employed as hourly-paid employees by Defendant in any store in California at any time during the period beginning one year before the filing of this action and ending when final judgment is entered."

First, the Court concluded that Plaintiff has satisfied the numerosity requirement by presenting evidence that there are more than 200,000 putative class members, which Walmart does not contest.  Therefore, the numerosity requirement is satisfied. (Fed.R.Civ.P. 23(a)(1)) (*Id.*, 17:11-18.)

Second, the Court further agreed that Plaintiff has "provided common evidence as to Defendant's payment policy as it applies to putative class members." (Fed.R.Civ.P. 23(a)(2)) (*Id.*, at 18:14-15.)  Moreover, the Court rejected Walmart's arguments that it does in fact provide paper wage statements, and that its policy with respect to electronic wage statements, go purely to the merits of Plaintiff's claim and do not affect the Court's Rule 23 analysis. (*Id.*, at 18-15-21.)

Third, in finding that the typicality requirements of Rule 23(a)(3) was satisfied, the Court found that "[b]ecause Plaintiff[] ha[s] shown that Evans was not given the opportunity to receive paper wage statements [] and that Evans was subjected to the same payment policy as other putative members of the Wage Statement class, [] Plaintiff[] ha[s] shown that other members of the Wage Statement Class have suffered the same or similar injury, and that the action is based on conduct that is not unique to Evans.  Further, because Plaintiff [] showed that the alleged injury occurred pursuant to a policy of Defendant, Plaintiff [] ha[s] demonstrated that class members were purportedly injured by the same course of conduct." (Fed.R.Civ.P. 23(a)(3)) (*Id.*, at 19:6-14.)

Fourth, and with respect to adequacy, the Court concluded that Plaintiff has shown that Evans and class counsel have no conflicts of interest with other class members, and further held that the record shows that Plaintiff has vigorously prosecuted

1  this action and therefore concluded that the adequacy requirement is satisfied.

2  (Fed.R.Civ.P. 23(a)(4)) (*Id.*, at 19:17-20:3.)

3       Lastly, in finding that "questions of law or fact common to class members

4  predominate over any questions affecting only individual members, and that a class

5  action is superior to other available methods for fairly and efficiently adjudicating the

6  controversy" the Court found that Plaintiff has shown that the only "individualized

7  determination that would be necessary is whether each putative class member was given

8  the opportunity to elect to receive a paper wage statement. (Fed.R.Civ.P. 23(b)(3).)

9  Because Plaintiffs challenge Defendant's purported policy of failing to provide

10  employees with an opportunity to elect to receive a written wage statement, the

11  individualized inquiries required in this action are limited." (*Id.*, at 20:18-23.)

12       Following this Court's order granting in part Plaintiff's motion for class

13  certification, the parties met and conferred regarding the form and content of the class

14  notice and agreed that Phoenix Settlement Administrators should be the notice

15  administrator and that it shall be sent to the certified class. (Setareh Decl., ¶ 13.)  On

16  January 10, 2020, the parties filed the stipulation to disseminate class notice. (ECF 98.)

17  On January 13, 2020, this Court subsequently entered an order granting the stipulation

18  and ordering that the Notice Administrator send out notice within seven calendar days

19  after receipt of the data from Walmart. (ECF 101.)

20       Ultimately, there were a total of 200,787 notices mailed to the putative class.

21  (Setareh Decl., ¶ 14.)   Of those mailed, 2,557 notices were returned and 29 notices were

22  forwarded. (*Id.*)  The Notice Administrator received 127 requests to opt-out which

23  amounted to just 0.00063% of the total putative class. (*Id.*)

24  **E.   POST-CERTIFICATION DISCOVERY AND RETENTION AND**
    **DEPOSITIONS OF EXPERT WITNESSES**

25

26       On May 3, 2018, this Court issued a Scheduling Order that set the deadline for

27  initial expert disclosures to take place no later than December 15, 2019. (ECF 26.)

28

### 1. Plaintiff's Damages Expert, James Toney

Plaintiff retained damages expert James Toney who is qualified to render expert opinions with respect to the damages attributable to Walmart's conduct. Mr. Toney is a damages expert who has been accepted as an expert by many federal and state courts and arbitration panels across the country. Using industry-standard accounting methods, Toney calculated damages for the class resulting from Walmart's alleged failure to provide its associates with an opportunity to elect paper wage statements once they have elected to receive their wages electronically. His calculation is straightforward: it simply determines the total number of associates who were receiving electronic wage statements during the Class Period based on the data supplied by Walmart and applies the statutory penalty ($50 for the initial violation and $100 for subsequent violations with a cap of $4,000 per person pursuant to Labor Code section 226(e)(1)). Class Counsel advanced all of the costs associated with Mr. Toney's work on behalf of Plaintiff and the putative class. (Setareh Decl., ¶ 15.) Mr. Toney's calculations were instrumental in achieving the Class recovery and would not have been possible without his efforts.

### 2. Walmart's Rebuttal Expert, Dr. Elizabeth Hart Newlon

On January 15, 2020, Walmart disclosed that it had retained Dr. Elizabeth Hart Newlon ("Dr. Newlon") as its rebuttal expert. (Setareh Decl., ¶ 16.) Dr. Newlon obtained her Ph.D. from Carnegie Mellon University and prior to entering private practice, was an Assistant Professor at the University of Kentucky where she taught graduate classes in equilibrium theory and undergraduate classes in microeconomics. (*Id.*)

On February 15, 2021, Class Counsel took the deposition of Dr. Newlon. (Setareh Decl., ¶ 17.)

### F. DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT, DECERTIFICATION, AND STRIKING THE REPORT OF PLAINTIFF'S EXPERT WITNESS

On January 31, 2020, Walmart filed three motions: (1) motion for partial summary judgment; (2) motion for decertification; and (3) motion to strike the expert report of

7

James Toney. [4] (ECF 109, 118, 119.) (Setareh Decl., ¶ 18.)   The motions were vigorously opposed by Plaintiff.

### 1.   Walmart's Summary Judgment Motion

Walmart made two chief arguments in support of their motion for partial summary judgment. (ECF 109.)  First, Walmart's argued that it complied with Labor Code section 226 because the "undisputed facts now show that *all* Walmart's California associates had the opportunity to elect to receive a paper wage statement and receive live, physical payroll check with a paper wage statement attached until they affirmatively sign up for another option." (*Id.*, at 8:12-26.)  Second, Walmart asserted that Plaintiff cannot show that the violation of willful. (*Id.*, at 11:15-12:22.)

On September 14, 2020, and in denying Walmart's motion, this Court again stated:

> "As this Court explained in its class certification order, here the gravamen of Plaintiff's wage statement claim is that Walmart did not provide Plaintiff and other employees "with *an opportunity to elect* to receive a [paper] wage statement."

(ECF 181, at 7:23-26.)

After the Court issued its Order granting in part and denying in part Walmart's motion for partial summary judgment, the parties were ordered to meet and confer regarding new proposed pre-trial and trial dates.  The parties met and conferred and subsequently jointly filed a stipulation continuing the Final Pre-Trial Conference ("FPTC") to April 30, 2021 with the first round of pre-trial filings due three weeks prior to the FPTC, and the second round of trial filings due two weeks prior to the FPTC. (ECF 185.)

### 2.   Walmart's Motion to Decertify

In filing its motion for decertification, Walmart claimed that "the undisputed facts now show that *all* Walmart's California associates had the opportunity to receive a paper

---

[4] The parties subsequently stipulated to Walmart's withdrawal of this motion. (ECF 162.)

wage statement." (ECF 118, at 2:12-13.) Similarly, Walmart's arguments to decertify the claims of the Wage Statement Class all focus on their contention that Plaintiff failed to provide a methodology to calculate damages on a class wide basis. (*Id.*, at 4:6-8:11.)

In denying Walmart's motion, this Court explained:

> Here, the gravamen of Plaintiffs' wage statement claim is that Defendant violated California Labor Code section 226(a) because Defendant did not provide Walmart associates with an opportunity to elect to receive wage statements in paper, rather than electronic, form. (Dkt. No. 95 at 20.) Defendant contends that predominance cannot be established with respect to the Wage Statement Class because the factfinder will need to determine a wide array of individual questions, such as (1) whether each member received a paper check and wage statement, (2) whether each member preferred to receive electronic wage statements, (3) whether each member was allegedly directed to elect electronic pay, (4) whether each member printed wage statements at work for free, and (5) whether each member accessed their wage statements on an electronic device. (Dkt. No. 137 at 11-13.) However, as the Court previously held in its class certification order, "Plaintiffs have shown that the individualized inquiries inherent in the putative Wage Statement Class's cause of action would necessarily be more circumscribed. In particular, ***the only individualized determination that would be necessary is whether each putative class member was given the opportunity to elect to receive a paper wage statement***." (Dkt. No. 95 at 20 (emphasis added).) As this Court explained, "[b]ecause Plaintiffs challenge Defendant's purported policy of failing to provide employees with an opportunity to elect to receive a written wage statement, the individualized inquiries required in this action are limited."

(ECF 182, at 6:19-7:9) (emphasis in original.)

## G.    THE PARTIES FAILED MEDIATION ATTEMPT

On December 7, 2020, the Parties mediated the matter before Michelle Yoshida of Philips ADR; a well-regarded mediator with extensive experience mediating class actions. (Setareh Decl., ¶ 19.)  Unfortunately, the parties were not successful in resolving the matter. (*Id.*)

## H.    PRE-TRIAL FILING AND FINAL PRE-TRIAL CONFERENCE

On April 12, 2021, and in compliance with this Court's pre-trial scheduling order, the parties filed their respective motions in *limine* (four for Plaintiff and three for Walmart), preparing a detailed memorandum detailing Plaintiff's contentions of fact and law applicable to the case, gathering and indexing the parties' joint exhibit and witness

lists, drafting a proposed findings of fact and conclusions of law, the joint proposed jury verdict forms along with disputes jury ones, among others as specified in the Court's Order. (Setareh Decl., ¶ 20.)   On April 19, 2021, the following week, they filed their respective oppositions to the motions in *limine* among others. (Setareh Decl., ¶ 21.)

## I.   NEGOTIATIONS, SETTLEMENT AND POST-SETTLEMENT CONSIDERATION

Counsel for the parties had spoken intermittently regarding settlement after the unsuccessful mediation in December 2020.  Several days before the FPTC those discussions between counsel for the parties began again in earnest.  Those settlement discussions continued through the night prior to the FPTC and some further discussions the morning of the FPTC. (Setareh Decl., ¶ 22.)

Ultimately, the parties agreed to settle the wage statement claims on a class-wide basis for $35 million. (Setareh Decl., ¶ 23.)

## III.   <u>SUMMARY OF THE PROPOSED SETTLEMENT</u>

### A.   THE SCOPE OF THE RELEASE

The proposed Settlement Class is defined as follows:

> [A]ll Walmart associates who worked in a non-exempt position at a Walmart Retail Location[5] in California during the period of one year prior to the filing of Plaintiff's suit through preliminary approval of this matter.

(Settlement, ¶ 2.31.)

In exchange for the Settlement's benefits, Settlement Class Members will release any claims against Walmart that it violated Section 226 of the Labor Code. (*Id.*, ¶ 12.1.)

///

///

---

[5] Walmart Retail Locations are defined in the Settlement Agreement as Walmart stores, supercenters and neighborhood markets.  (Settlement, ¶ 2.42.)

### B.   THE KEY TERMS OF THE SETTLEMENT'S MONETARY BENEFITS

The Settlement provides for a non-reversionary Class Settlement Amount of $35 million to cover all payments under the Settlement. (Settlement, ¶ 5.1.)  The $35 million Class Settlement Amount is the maximum amount that Walmart shall pay under the Settlement and none of the Class Settlement Amount shall revert to Walmart. (*Id.*)  The parties have agreed to a settlement formula which allocates settlement amounts to Class Members on a *pro rata* basis, based on the number of Pay Periods worked during the Settlement Class Period. (*Id.*) The amount paid to each individual shall be allocated 100% as penalties. (Settlement, ¶ 5.2.5.)

#### 1.   PAGA Fund and Payment to the Labor and Workforce Development Agency

**$500,000.00** of the Class Settlement Amount shall be allocated for settlement of claims for civil penalties under PAGA, Labor Code section 2699, *et seq.*  Pursuant to Labor Code section 2699(i), 75% of that amount (**$375,000.00**) will be paid to the Labor and Workforce Development Agency. (Settlement, ¶ 5.2.4.)   The remaining 25% (**$125,000.00**) will be included as part of the Net Settlement Amount for distribution to Settlement Class Members as part of each Settlement Class Member's Individual Payment. (*Id.*)

#### 2.   Individual Payment to the Wage Statement Class

To fairly allocate settlement funds based on each Settlement Class Member's dates of employment as a Settlement Class Member (excluding weeks during which no duties were performed), the distribution amount will be calculated as follows: The Individual Settlement Amount for each Settlement Class Member shall be determined based on his or her proportional share of the Net Settlement Amount based on the total number of Applicable Pay Periods worked by each Settlement Class Member during the Settlement Class Period. (Settlement, ¶ 5.2.5.) Settlement Class Members who, according to Walmart's records, who were furnished all of their wage statements as a

detachable part of a paper check shall be allocated a proportionally lower amount (50% of the amount) than Settlement Class Members who were not furnished all of their wage statements as a detachable part of a paper check. (*Id.*) None of the payments to Settlement Class Members shall be treated as wages, and no withholdings shall be made; the QSF shall issue appropriate tax forms, in any, to Settlement Class members. (*Id.*).

### 3.   Proposed Class Representative Service Payment

Plaintiff has been a dedicated and active participant in this litigation.  He assisted in the investigation of facts, reviewed and approved various complaints, kept in close contact with counsel to monitor the progress of the litigation, and communicated with counsel regarding the Settlement. (Declaration of James S. Evans ("Evans Decl."), ¶ 7.)  Plaintiff spent significant time responding to extensive and broad discovery served by Walmart including having his deposition taken, provided necessary declarations in support of class certification and in opposition to Walmart's motion for partial summary judgment and motion for decertification, and assisted Plaintiff's Counsel in preparing for the mediation before Michelle Yoshida. (*Id.*) Plaintiff put his name and reputation on the line for the sake of the Class.  The class recovery here would not have been possible without his efforts.  In view of these efforts, Plaintiff will petition the Court for approval of a **$20,000.00** Service Payment to be paid out of the Class Settlement Amount. (Settlement, ¶ 5.2.2.)  This amount is consistent with those approved in other wage and hour class action settlements. (*See* § III(4), *infra.*)

### C.   ATTORNEYS' FEES AND EXPENSES

Plaintiff's counsel will file a motion for an award of reasonable attorneys' fees and reimbursement of litigation costs and expenses 35 days prior to the final fairness hearing or on another date set by the Court. (Settlement, ¶ 14.1.)  Class Counsel intends to seek up to one-third of the Settlement Fund (i.e., **$11,666,666.66**) as attorneys' fees, and no more than **$250,000.00** as reimbursement of expenses.

12

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1  (Setareh Decl., ¶ 31.) (Settlement, ¶ 5.2.1 and Exhs. A, B.)  Any approved fees and
2  expenses will be paid out of the Class Settlement Amount.

3      This Circuit permits two methods of calculating attorneys' fee awards in class
4  actions: (1) the "lodestar" method and (2) the "percentage-of-recovery" method. *In re*
5  *Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019). Under the
6  lodestar method, the court multiplies the number of hours the prevailing party
7  reasonably spent on litigation by a reasonable hourly rate to determine a
8  presumptively reasonable fee award. *See Yamada v. Nobel Biocare Holding AG*, 825
9  F.3d 536, 546 (9th Cir. 2016). The court may then "adjust" the award "by an
10 appropriate positive or negative multiplier reflecting . . . the quality of representation,
11 the benefit obtained for the class, the complexity and novelty of the issues presented,
12 and the risk of nonpayment." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at
13 941–42 (quoting *Hanlon*, 150 F.3d at 1029). Benefit to the class is the "[f]oremost"
14 consideration. *Id*. at 942.

15     The percentage-of-recovery approach may be used "where the defendants
16 provide monetary compensation to the plaintiffs" and class benefit is easy to quantify.
17 *See In re Hyundai*, 926 F.3d at 570.  Under this method, "the court simply awards the
18 attorneys a percentage of the fund sufficient to provide class counsel with a
19 reasonable fee." *Hanlon*, 150 F.3d at 1029. Injunctive relief is inherently difficult to
20 monetize. *Yamada*, 825 F.3d at 547. Thus, a district court must exercise caution when
21 using the value of injunctive relief to determine proportional attorneys' fees and
22 should generally avoid valuing hard-to-measure injunctive relief altogether, "because
23 of the danger that parties will overestimate the value of injunctive relief in order to
24 inflate fees." *Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1055 (9th Cir. 2019).

25     Here, as will be explained in more detail when Class Counsel submits their
26 motion for attorneys' fees, the attorneys' fees sought is justified as this case has been
27 diligently and aggressively litigated against Walmart for almost four years and was
28 only resolved shortly before trial.  Class Counsel engaged in extensive factual and

legal investigation prior to the filing of the lawsuit, and engaged in comprehensive discovery, including deposing Walmart's Rule 30(b)(6) witness and defending Plaintiff's deposition.  In addition to successfully certifying the Wage Statement Class, Class Counsel also defeated Walmart's motion for summary judgment and decertification.  The costs of this action were borne solely by Class Counsel including advancing the costs of sending class notice to the Settlement Class Members and retaining an expert to calculate class-wide damages.  Class Counsel participated in mediation (although unsuccessful) and litigated this action through the FPTC and having fully briefed Plaintiff's motions *in limine* and opposing Walmart's motions *in limine.*

Accordingly, Class Counsel has provided a tremendous benefit to the class that is easy to quantify.  Thus, the attorneys' fee sought is not only justified, but should be awarded by this Court.

### D.    The Settlement Class Representative and Settlement Class Counsel

The parties have agreed that Plaintiff is the Settlement Class Representative and that Plaintiff's attorneys are Settlement Class Counsel for the Settlement Class. (Settlement, ¶¶ 2.34 and 2.37.)

### E.    Class Notice

The Parties have agreed to notify the Settlement Class about the settlement by sending the notice by postcard directing them to the Settlement Website.

The proposed Notice forms are attached to the Settlement as **Exhibits A** (Postcard Notice) and **B** (Long Form Notice). (Settlement, ¶ 6.1.5.)  Each Settlement Class Member shall be mailed a postcard, substantially in the form of Exhibit A to the Settlement, that includes basic information including summary of the settlement, a description of who is a class member, identifying Settlement Class Counsel, directing Settlement Class Members to the Settlement Website and instructions on how to proceed, substantially in the form attached as Exhibit B to the Settlement. (*Id.*)

The Settlement Website will communicate all important information,

deadlines, and the Long Form Notice. (Setareh Decl., ¶ 33.)  This website shall have all relevant Motions, Orders and pleadings available for download as well as a copy of the Settlement Agreement. (*Id.*)  Additionally, a toll-free telephone number, email and physical mailing address will be made available will be made available for Settlement Class Members to contact the Settlement Administrator or Settlement Class Counsel directly. (*Id.*) The costs of Notice will be paid out of the Class Settlement Amount. (Settlement, ¶ 5.1.)  The Notice Plan is the best practicable notice under the circumstances and meets all due process requirements. (Setareh Decl., ¶ 33.)

### F.      The Settlement Administrator Was Selected After Obtaining Multiple Bids

Phoenix Settlement Administrators was selected after a competitive bidding process led by Class Counsel. (Setareh Decl., ¶ 35.)  Settlement Class Counsel considered proposed from two other potential administrators. (*Id.*)  Settlement Class Counsel – each of whom have litigated hundreds of class actions to settlement – previously have worked with Phoenix Settlement Administrators, the two other bidders, as well as other professional administrators. (*Id.*, ¶ 35.)  The estimated amount of $535,475.00 cost for settlement and notice administration for approximately 265,000 potential Settlement Class Members is reasonable. (*Id.*, ¶ 36.)

### 1.      The Court Should Approve the Establishment of a Qualified Settlement Fund

Under the Settlement, Walmart has agreed to transfer the required portions of the Class Settlement Amount into a Qualified Settlement Fund as described in Treasury Regulation § 1.468B-1, 26 C.F.R. § 1.468B-1, in full settlement and discharge of the Settlement Class Members' claims against Walmart that are included under the Settlement.  The Parties determined that establishing a Qualified Settlement Fund to receive and hold the settlement funds, and to distribute the funds according to the terms of the Settlement Agreement and under the administration of the Settlement

15

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Administrator would serve the Parties' best interests, and request that the Court approve the establishment of a Qualified Settlement Fund.[6]

Court approval of the establishment of the Qualified Settlement Fund serves the Settlement Class Members' interests by assuring that the Class Settlement Amount is transferred by Walmart following approval of this Motion, and benefits Walmart by assuring finality to the claims against it in this case that are the subject of the Settlement.[7]

## IV.   LEGAL ARGUMENT AND STANDARD[8]

Class action settlements are permitted "only with the court's approval ... after a hearing and on a finding that [the agreement] is fair, reasonable, and adequate." Rule 23(e). Courts certify proposed class-settlement actions in two phases. First, the court holds a preliminary fairness hearing to determine whether provisional class certification is appropriate and whether the proposed settlement is fair. Then, after all absent class members are notified about the litigation and given a chance to object or opt-out, the court holds a final fairness hearing. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

---

[6] The Qualified Settlement Fund will be administered by the Settlement Administrator, who, along with the Qualified Settlement Fund, will remain subject to the continuing jurisdiction of this Court.  The Qualified Settlement Fund will be a segregated bank account opened at a financial institution mutually agreed by the Parties.  The Qualified Settlement Fund account will receive the Class Settlement Amount from Walmart and will hold that sum, and the earnings thereon, until the Settlement Administrator has completed all administration of such funds and income thereon, as well as disbursements to Settlement Class Members and Class Counsel, and payment of taxes and administrative costs, as more fully set forth in Section 11 of the Settlement Agreement and subject to further approval of this Court, if required.

[7] With the Court's approval, the parties intend for the establishment of a Qualified Settlement Fund to satisfy the requirements of Treasury Regulation § 1.468B-1(c), C.F.R. § 1.468B-1(c), by (a) being established under this Court's approval, (b) resolving and satisfying claims against Walmart for alleged violations of law, and (c) constituting a segregated account, as required by those regulations.

[8] Walmart does not concede that class certification is appropriate in this action, but Walmart does not oppose certification of a Settlement Class for settlement purposes consistent with the Parties Settlement Agreement (Settlement ¶¶ 3.6, 4.1, 16.1.)

16

1     The Ninth Circuit has declared that a strong judicial policy favors settlement of

2  class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

3  Nevertheless, where, as here, "parties reach a settlement agreement prior to class

4  certification, courts must peruse the proposed compromise to ratify both [I] the

5  propriety of the certification and [II] the fairness of the settlement." *Staton v. Boeing

6  Co.*, 327 F.3d 938, 952 (9th Cir. 2003). "This independent judicial review protects the

7  due process rights of absent class members who have not yet appeared" especially

8  where, as here, "the settlement agreement is negotiated in their absence." *Acosta v.

9  Evergreen Moneysource Mortgage Company*, 2018 WL 3831004 at *2 (E.D. Cal.

10  Aug. 13, 2018) (citing *Bluetooth*, 654 F.3d at 946).

11     As a preliminary matter, this Court previously certified ... a Rule 23(b)(3) class

12  .... [Thus, it] need not analyze whether the requirements for certification have been

13  met and may focus instead on whether the proposed settlement is fair, adequate, and

14  reasonable."); *In re Apollo Group Inc. Securities Litigation*, 2012 WL 1378677 at *4

15  (D. Ariz. Apr. 20, 2012) ("The Court has previously certified, pursuant to Rule 23[,]

16  ... and hereby reconfirms its order certifying a class").  Moreover, under the law of

17  the case doctrine, a court is generally precluded from reconsidering an issue that has

18  already been decided by the same court or a higher court in the identical case. *U.S. v.

19  Alexander*, 106 F.3d 874 (9th Cir. 1997).  The doctrine is not a limitation on a

20  tribunal's power but, rather, a guide to discretion. (*Id.*)

21     In determining whether a proposed settlement is fair, adequate and reasonable,

22  courts must balance a number of factors, including: "(1) the strength of the plaintiff's

23  case; (2) the risk, expense, complexity, and likely duration of further litigation; (3)

24  the risk of maintaining class action status throughout the trial; (4) the amount offered

25  in settlement; (5) the extent of discovery completed, and the stage of the proceedings;

26  (6) the experience and views of counsel; (7) the presence of a governmental

27  participant; and (8) the reaction of the class members to the proposed settlement."

28  *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2002); *see also, Torrisi v. Tucson*

17

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).

### A. THE FORM AND MANNER OF NOTICE TO THE CLASS SATISFIES FED.R.CIV. P. 23(e)(1) AND SHOULD BE APPROVED

Federal Rule of Civil Procedure 23(e)(1) requires that "[t]he court must direct notice in a reasonable manner to all class members who would be bound" by the Settlement. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 349 (2011). Accordingly, the Notice and Summary Notice "describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard[,]" *Churchill Vill, LLC v. Gen. Elec*, 361 F.3d 566, 575 (9th Cir. 2004), and "provide sufficient information to allow class members to decide whether they should accept the benefits of the settlement, opt out and pursue their own remedies, or object to its terms[,]" *Spann v. J.C. Penney Corporation*, 314 F.R.D. 312, 330 (C.D. Cal. Jan. 25, 2016). The manner of providing notice, which includes individual notice by mail to all Class Members who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. *See, e.g.*, *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 452-53 (E.D. Cal. 2013) (approving similar form of notice).

Here, the Settling Parties negotiated the form of the Notice to be disseminated to all persons who fall within the definition of the Settlement Class and whose names and addresses can be identified with reasonable effort. In addition, the Claims Administrator will send a postcard notice to all putative class members directing them to a website that contains the Class Notice along with all pertinent information regarding this action and the terms and conditions of settlement.  As the wage statement claim involves the payment of a penalty, providing notice via a postcard that sets out the general terms with the long form notice posted on a website accessible through any web browser will not only result in cost-savings in mailing several hundred thousand dollars if each Settlement Class Member were to be mailed a long form notice, but also the resulting savings will

be passed on to the Settlement Class Members themselves who do not opt out of the settlement. The Postcard Notice and Long Form Settlement Class Notice are attached to the Settlement Agreement as **Exhibits A** and **B**. (Setareh Decl., ¶ 24.)

In addition, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1). Here, the Notice satisfies the requirements of Rule 23(h)(1), as it notifies Class Members that Lead Counsel will apply to the Court for attorneys' fees of no more than one-third of the Settlement Fund, after costs and expenses, and expenses of no more than **$250,000.00** plus the costs of settlement administration. (Settlement, ¶ 5.2.1.)

The proposed Notice describes the Settlement and sets forth the maximum total amount of the Settlement Fund ($35 million) and the estimated average per share recovery; states the Settling Parties' disagreement over liability and damages; sets out the amount of attorneys' fees and expenses that Plaintiff's counsel intends to seek in connection with final settlement approval; and describes the plan of allocation. (Settlement, ¶ 6.1.5.) In addition, the Notice explains the nature, history, and status of the Action; sets forth the definition of the Settlement Class; describes the Settlement Class' claims and the class-wide issues; discusses the rights of persons who fall within the definition of the Settlement Class; and summarizes the reasons the Settling Parties are proposing the Settlement. (Settlement, ¶ 6.1.5, Exhs. A, B.)

Further, Settlement Class Members are not required to submit a claim in order to participate in the Settlement. (Settlement, ¶ 5.2.5.) The Notice also provides the name and mailing address for the Settlement Administrator, Plaintiff's counsel, and Defendant's counsel. (Settlement, ¶ 6.1.1.) The Class Notice also informs Settlement Class Members that copies of the Notice and Settlement Agreement may be obtained by writing the Claims Administrator, calling a toll-free number, or by accessing the documents on the website of the Claims Administrator. (Settlement, ¶ 6.1.5.)

Finally, the Class Notice sets forth the date, time and place of the Final Approval

Hearing, along with the procedures for objecting to or seeking exclusion from the Settlement. (*Id.*; Exhs. A, B.)

### B. THE PROPOSED SETTLEMENT SATISFIES FED.R.CIV. P. 23(e)(2) BECAUSE IT IS FAIR, REASONABLE AND ADEQUATE

Approval of a class action settlement requires two stages of judicial approval: (i) *preliminary approval*, followed by the distribution of notice to the class, and (ii) *final approval*. *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 473 (E.D. Cal. 2010) ("Procedurally, the approval of a class action settlement takes place in two stages."); *see also Natl Rural Telecommc'ns Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (CD. Cal. 2004). "In the first stage of the approval process, the court preliminarily approve[s] the Settlement pending a fairness hearing, temporarily certifie[s] the Class …, and authorize[s] notice to be given to the Class." *Murillo*, 266 F.R.D. at 473 (alterations in original, citation and internal quotations omitted).

At this initial preliminary approval stage, the "Court need only determine whether the proposed settlement appears on its face to be fair" and "falls within the range of possible approval." *Hanlon*, 150 F.3d at 1026; *Williams v. Costco Wholesale Corp.*, No. 02cv2003 IEG (AJB), 2010 U.S. Dist. LEXIS 19674, at *15-16 (S.D. Cal. Mar. 4, 2010); *see also In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 612 (S.D. Cal. 2008). In considering whether to grant preliminary approval of a proposed class action settlement, courts make a preliminary evaluation of the fairness of the settlement. At this stage, however, the Court is not required to make a final determination as to whether the proposed settlement will ultimately be found to be fair, reasonable, and adequate. Rather, that evaluation is made only at the final approval stage, after notice of the proposed settlement has been given to the members of the class and class members have had an opportunity both to voice their views of the proposed settlement and to exclude themselves from the class. *See Williams*, 2010 U.S. Dist. LEXIS 19674, at *14-15 ("Given that some [] factors cannot be fully assessed until the Court conducts the Final Approval Hearing, 'a full fairness analysis is unnecessary at this stage.'").

As demonstrated below, the proposed Settlement is a fair result in light of the circumstances present in this action.  Given the risks of litigation, the Settlement represents a favorable resolution of this action and eliminates the risk that the Class might otherwise recover nothing at all. Accordingly, the proposed Settlement satisfies the criteria for preliminary approval and is well within the range of possible approval.

### 1.    The Class Representatives and Class Counsel Have Adequately Represented the Class

To satisfy the requirement of Fed.R.Civ.P. 23(e)(2)(A), a court must consider whether the class representatives and class counsel have adequately represented the class.  In other words, the proposed class representative must be free of interests that are antagonistic to the other members of the class, and counsel representing the class must be qualified, experienced, and capable of conducting the litigation. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978) (citation omitted); *Hanlon*, 150 F.3d at 1020.  Here, this Court has already determined that Plaintiff and Class Counsel have no conflicts with other class members. (ECF 95, 19:24-25.)  And as thoroughly explained in Section II, Plaintiff and Class Counsel have vigorously prosecuted this action through the FPTC.  Plaintiff and Class Counsel have prosecuted this action vigorously on behalf of the Settlement Class and will continue to do so. (ECF 95. 19:26-20:3); *Ebarle v. Lifelock, Inc.*, No. 15-cv-00258-HSG, 2016 WL 234364, at *4 (N.D. Cal. Jan. 20, 2016) (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F. 3d 454, 462 (9th Cir. 2000)).  In addition, Class Counsel engaged Stan Saltzman of Marlin & Saltzman LLP as trial counsel who has substantial experience class action trial experience. (Declaration of Stanley D. Saltzman ("Saltzman Decl.", 2, 4-12.)

### 2.    The Proposal Was Negotiated at Arm's Length

The proposed Settlement satisfies Fed.R.Civ.P. 23(e)(2)(B) because it is the product of serious, informed, non-collusive negotiations between experienced and capable counsel. *See, Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965 (9th

21

Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution"); *National Rural Telecommunications Cooperative v. DIRECTV, Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. Jan. 5, 2004) ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair," citing *City Partnership Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F. 3d 1041, 1043 (1st Cir. 1996)).  Plaintiff's counsel is a highly respected plaintiffs' class action litigator, has prosecuted this action from its early stages, and is deeply familiar with the strengths and weaknesses of the claims and defenses.  Plaintiff's counsel negotiated with counsel for Walmart, Greenberg Traurig LLP, a premier international defense firm.  These negotiations were at arms'-length and were reached on the morning of the FPTC, and after both sides having conducted extensive discovery and law and motion including a motion for summary judgment and motion for decertification brought by Walmart, as well as having participated in a full-day mediation session on December 7, 2020 before a private mediator. (Setareh Decl., ¶ 22.)   Prior to the mediation, the parties prepared and exchanged comprehensive mediation statements.

As the foregoing demonstrates, the proposed settlement is the product of serious, informed, non-collusive negotiations and there is no basis to believe otherwise.  The parties reached a settlement on April 30, 2021, the day of the Final Pre-Trial Conference. (ECF 226.)  Moreover, this Court had advised the parties that the dates set for trial may or may not proceed and that the parties should be prepared to move forward. (Tr. August 4, 2020, 18:8-20:13.)  The parties subsequently filed a joint stipulation continuing the trial date to June 15, 2021 (ECF 185) which was subsequently entered by the Court. (ECF 187.)  Due to the fast-approaching trial date, there was no time for the parties to participate in another mediation session.

### 3.   The Relief Provided for the Class Is Adequate

#### a.   The Costs, Risks and Delay of Trial and Appeal

With respect to the claims asserted on behalf of the settlement Class in this case,

1   there are significant risks that support the reduced compromise amount. (Fed.R.Civ.P.

2   23(e)(2)(C)(i).)  These risks include, but are not limited to:

3          (a)     the risk that the Supreme Court's recent decision in *TransUnion LLC v.*

4   *Ramirez,* 141 S. Ct. 2190 (2021), holding that only a plaintiff concretely harmed by a

5   defendant's conduct has Article III standing to seek damages in federal court may result

6   in a finding that the putative class lacks standing to recover damages;

7          (b)     the risk that uncertainties pertaining to the ultimate legality of Defendant's

8   policies and practices could preclude class-wide awards of statutory penalties under

9   Labor Code section 226(e);

10         (c)     the risk that any civil penalties award under the PAGA could be reduced by

11   the Court in its discretion, see Labor Code section 2699(e)(1);

12         (d)     the risk that lengthy appellate litigation could ensue.  As there is a dearth of

13   state court authority, there is a high likelihood that this Court will certify the issue to the

14   California Supreme Court on the issue of whether an employer satisfies the requirements

15   of Labor Code section 226 by furnishing electronic wage statements without affording

16   employees an option to elect paper wage statements.  Walmart strongly denies any

17   liability and the propriety of class certification for any reason other than settlement.

18   Continued litigation of this lawsuit presented Plaintiff and Defendant with substantial

19   legal risks that were (and continue to be) very difficult to assess.

20         Plaintiff and the Class ran the risk that no recovery would be obtained in the

21   action if the matter proceeded to trial. (Setareh Decl., ¶ 38.)  At the time the proposed

22   Settlement was reached, both parties had pending fully briefed motions in *limine* that

23   could be dispositive as to the other party. (*Id.*)  Moreover, both parties had already

24   taken and defended multiple depositions of the other party and their respective

25   experts, with Plaintiff having survived summary judgment and decertification

26   motions brought by Walmart, and with an impending trial and post-trial appeals

27   before the case saw a positive conclusion, all of which were taken into account by

28   both parties when agreeing to the Settlement. (*Id.*)

23

The amount offered in settlement is generally considered to be the most important considerations of any class settlement. *See Bayat v. Bank of the West*, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015) (citing, *inter alia*, *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178-79 (9th Cir. 2013). To determine whether that settlement amount is reasonable, the Court must consider the amount obtained in recovery against the estimated value of the class claims if successfully litigated. *Litty v. Merrill Lynch & Co., Inc.*, 2015 WL 4698475, at *9 (C.D. Cal. Apr. 27, 2015) (quoting *In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000)); *see also Officers for Justice v. Civil Service Com'n of City and Cty. of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982) ("[A] cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair."). Courts regularly approve class settlements where class members recover less than one quarter of the maximum potential recovery amount. *See Bravo v. Gale Triangle, Inc.*, 2017 WL 708766, *10 (C.D. Cal. Feb. 16, 2017) (approving a settlement where net recovery to class members was approximately 7.5% of the projected maximum recovery amount); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (approving a settlement where the gross recovery to the class was approximately 8.5% of the maximum recovery amount).

Against these risks, Plaintiff's counsel considered the benefits to the Class of securing a $35 million cash settlement immediately. (Setareh Decl., ¶ 39.) (Saltzman Decl., ¶ 2.) Plaintiff's counsel considered that, according to the estimates of damages expert retained by Plaintiff's counsel, $400,445,900 was calculated for the wage statement penalties and an additional $651,243,650 for PAGA penalties. (*Id.*) "Unlike class actions, [PAGA] civil penalties are not meant to compensate unnamed employees because the action is fundamentally a law enforcement action." *Ochoa-Hernandez v. Cjaders Foods, Inc.* 2010 WL 134077, at *4 (N.D. Cal. Apr. 2, 2010); *Arias v. Superior Court* (2009) 46 Cal. 4th 969 ("The act's declared purpose is to supplement enforcement actions by public agencies, which lack adequate resources to

bring all such actions themselves.")  Moreover, although civil penalties are "mandatory, not discretionary" they are still subject to reduction in the court's discretion PAGA penalties are subject to the discretion of the court. *Fleming v. Covidien*, No. ED CV 10-01487 RGK (OPx), 2011 WL 7563047 at *4 (C.D. Cal. Aug. 12, 2011) (reducing PAGA penalties from $2,800,000 to $500,000); *See, e.g.*, *Viceral v. Mistras Grp., Inc.* (N.D. Cal. Oct. 11, 2016, 2016 WL 5907869 at *9 (preliminarily approving class action settlement that included a PAGA set-aside of just 0.15 percent of the PAGA claim's full potential value, where "Plaintiffs face[d] a substantial risk of recovering nothing on either the class or PAGA claims"); *Cotter v. Lyft, Inc.* (N.D. Cal. 2016) 193 F.Supp.3d 1030, 1037 (preliminarily approving class action settlement allocating a PAGA set-aside worth a fraction of the PAGA claim's potential value, where the defendant's obligations were "genuinely unclear" and there was no evidence the defendant acted deliberately or negligently failed to learn about its obligations).

First, Class Counsel applied a 50% discount due to the probability of prevailing at trial due to the fact that (1) Walmart raised the issue that 15,646 associates (representing approximately 8% of the entire class) switched from an electronic wage statement to paper wage statements; (2) this Court's class certification order, order denying Walmart's motion for summary judgment, order denying Walmart's motion for decertification were all based on Walmart not having a written policy permitting associates to elect paper wage statements once they elected electronic wage statements. (Setareh Decl., ¶ 40.)   Accordingly, it is entirely plausible that a jury could infer that there was some mechanism by which Walmart associates could switch from electronic to paper wage statements.

Second, Class Counsel applied a 50% discount due to the probability of prevailing on appeal due to the fact that (1) the claims were based on an issue of first impression (i.e. whether Walmart complied with Labor Code section 226 by providing electronic wage statements without an opportunity to elect paper wage

statements); (2) this Court's order granting class certification, denying Walmart's motion for summary judgment, denying Walmart's motion for decertification, and the parties' fully briefed motions in *limine* would all be subject scrutiny on review; (3) Walmart has a track record of being able to obtain reversal of unfavorable rulings. *Magadia v. Wal-Mart Assocaites, Inc.*, 999 F.3d 668 (9th Cir. 2021) (obtaining reversal of a district court's entry of $102 million judgment); *Mays v. Wal-Mart Stores, Inc.*, 804 Fed.Appx. 641 (9th Cir. 2020) (reversing district court's order certification of the Wage Statement Class); and (4) the Supreme Court's recent decision in *TransUnion LLC v. Ramirez,* 141 S. Ct. 2190 (2021) may result in a finding that the putative class lacks standing to recover damages. (Setareh Decl., ¶ 41.)

Accordingly, after applying the discounts above to the total potential recovery to just the wage statement claim of $554,676,800[9], the $35 million settlement constitutes approximately 25% ($554,676,800 - $277,338,400 (50%) - $138,669,200 (50%) = $138,669,200) of the realistic maximum recoverable damages in this case. (Setareh Decl., ¶ 42.)

Plaintiff's counsel submit that, weighted against these challenges and uncertainties, and considering maximum possible recovery, the immediate $35 million cash recovery for the Settlement Class is well within the range of possible approval. *See, e.g., Redwen v. Sino Clean Energy, Inc.,* No. CV 11-3936 PA (SSx), 2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013) ("[A] recovery between 7% and 20% is 'well within range of reasonableness'" (quoting *In re Paine Webber Ltd. P'Ships Litig,* 147 F.3d 132, 132 (2nd Cir. 1998))).

In light of the uncertainties of protracted litigation, the settlement amount reflects a fair and reasonable recovery for the settlement Class Members. (Setareh Decl., ¶ 42.) The settlement amount is, of course, a compromise figure. (*Id.*)  By necessity it took into

---

[9] This is an extrapolation based on the data previously provided adjusting for an increase in the class size to 265,000.

1  account risks related to liability, damages, and all the defenses asserted by the

2  Defendant. (*Id.*)

### b.     The Effectiveness of Any Proposed Method of Distributing Relief to the Class, Including the Method of Processing Class-Member Claims

5          The method of distributing relief to the class satisfies Fed.R.Civ.P. 23(e)(2)(C)(ii).

6  And, confirming the fundamental fairness of the settlement, each Class Member will be

7  compensated based on the number of workweeks they worked during the class period.

8  (Settlement, ¶ 5.2.5.)  Settlement Shares will be calculated based on the Net Settlement

9  Amount times the ratio of the total pay periods worked by each Class Members for

10 Defendant in the State of California during the Class Period to the total pay periods

11 worked by all Settlement Class Members for Defendant in the State of California during

12 the Settlement Class Period, with discount applied for persons who were paid wholly by

13 pay of a wage statement with a detachable check. (*Id.*)   If the Court awards all of the

14 requested amounts, the average Settlement Share is estimated to be **$83.61** before taxes.

15 (Setareh Decl., ¶ 44.)

16         The entire Class Settlement Amount will be paid out; none of it will revert to

17 Walmart.  Settlement checks that are uncashed after ninety (90) days and additional

18 notice to the Settlement Class Members will be paid to State of California Unclaimed

19 Property Fund in the name of the Settlement Class Member. (Settlement, ¶ 10.3.)

20         Moreover, each Settlement Class Member will be given the opportunity to opt out

21 of the Settlement, allowing those who feel they have claims that are greater than the

22 benefits they can receive under this Settlement, to pursue their own claims. (*Id.*, ¶ 8.)

### c.     The Terms of Any Proposed Award of Attorneys' Fees, Including Timing of Payment

25         As for the matter of attorneys' fees and reimbursement of expenses, that will be

26 subject to the Court's oversight and approval at the final approval stage. (Fed.R.Civ.P.

27 23(e)(2)(C)(iii).)  As indicated in the proposed Class Notice, Plaintiff's counsel will not

28 seek a fee in excess of one-third of the Class Settlement Amount and will not seek

reimbursement of expenses above **$250,000.00**. (Settlement, ¶ 30.)

Thus, there is no reason to doubt the fairness of the Settlement, and the Settlement has no obvious deficiencies.

### d.   Any Agreement Required to Be Identified Under Rule 23(e)(3)

The parties have identified the Settlement as the only agreement made in connection with the proposed settlement. (Setareh Decl., ¶ 46.)  Accordingly, Rule 23(e)(2)(C)(iv) is satisfied.

### 4.   The Proposal Treats Class Members Equitably to Each Other

Settlement Shares will be calculated based on the Net Settlement Amount times the ratio of the total pay periods worked by each Class Members for Defendant in the State of California during the Class Period to the total pay periods worked by all Class Members for Defendant in the State of California during the Class Period. (Settlement, ¶ 5.2.5.)  If the Court awards all of the requested amounts, the average Settlement Share is estimated to be **$83.61** before taxes. (Setareh Decl., ¶ 44.)

## V.   PROPOSED SCHEDULE OF EVENTS

Plaintiff proposes the following schedule for approval of the Settlement, which assumes that preliminary approval of the Settlement is granted on November 12, 2021:

| Date | Event |
|------|-------|
| 12/13/21 | Defendant to provide to Settlement Administrator database containing Class Member information necessary to calculate Settlement Shares (30 calendar days after Preliminary Approval) |
| 01/03/22 | Settlement Administrator to mail Class Notice Packets to all Class Members (20 calendar days after Defendant provides data to Settlement Administrator) |
| 02/17/22 | Last day for Class Members to file with the Court and serve upon counsel for the parties objections to Settlement (45 calendar days after Settlement Administrator mails Class Notice Packets to all Class Members) |
|  | Last day for Class Members to mail Elections Not to Participate in Settlement (45 calendar days after Settlement Administrator mails Class Notice Packets to all Class Members) |

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

| Date | Event |
|---|---|
| 03/18/22 | Date by which parties will submit their joint motion for final approval of settlement (35 calendar days before Final Approval Hearing) |
| | Date by which Plaintiff and Class Counsel will submit their motion for Class Representative Payments and Class Counsel Fees and Expenses Payment (35 calendar days before Final Approval Hearing) |
| 04/22/22 | Hearing on joint motion for final approval of settlement |

DATED: September 3, 2021             SETAREH LAW GROUP


                                     _/s/ Shaun Setareh_
                                     SHAUN SETAREH
                                     Attorneys for Plaintiff
                                     JAMES S. EVANS

DATED: September 3, 2021             MARLIN & SALTZMAN LLP


                                     _/s/ Stanley D. Saltzman_
                                     STANLEY D. SALTZMAN
                                     Attorneys for Plaintiff
                                     JAMES S. EVANS

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF