1  Shaun Setareh (SBN 204514)
   shaun@setarehlaw.com
2  William M. Pao (SBN 219846)
   william@setarehlaw.com
3  Nolan E. Dilts (SBN 328904)
   nolan@setarehlaw.com
4  SETAREH LAW GROUP
   9665 Wilshire Boulevard, Suite 430
5  Beverly Hills, California 90212
   Telephone (310) 888-7771
6  Facsimile (310) 888-0109

7  Stanley D. Saltzman (SBN 90058)
   ssaltzman@marlinsaltzman.com
8  MARLIN & SALTZMAN LLP
   29800 Agoura Road, Suite 210
9  Agoura Hills, California 91301
   Telephone (818) 991-8080
10 Facsimile (818) 991-8081

11 Attorneys for Plaintiff
   JAMES S. EVANS
12

13              UNITED STATES DISTRICT COURT

14             CENTRAL DISTRICT OF CALIFORNIA

15                    WESTERN DIVISION

16

17 JAMES S. EVANS, on behalf of himself,    Case No. 2:17-cv-07641-AB-KK
18 all others similarly situated,
                                            Assigned For All Purposes to the
19         *Plaintiff*,                     Hon. Andre Birotté, Jr., Courtroom 7B

20     vs.                                  **PLAINTIFF'S NOTICE OF MOTION
                                            AND MOTION FOR FINAL
21                                          APPROVAL OF CLASS ACTION
                                            SETTLEMENT; MEMORANDUM
22 WAL-MART STORES, INC., a                 OF POINTS AND AUTHORITIES;
   Delaware corporation; and DOES 1         DECLARATIONS OF SHAUN
23 through 50, inclusive,                   SETAREH, JAMES S. EVANS AND
                                            STANLEY D. SALTZMAN;
24                                          [PROPOSED] ORDER**
         *Defendants*.
25                                          Date:    December 2, 2022
                                            Time:    11:00 a.m.
26                                          Place:   Courtroom 7B

27

28

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

---

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 2, 2022, at 11:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 7B of the above-captioned Court located at 350 West First Street, Los Angeles, California 90012, Plaintiff JAMES S. EVANS ("Plaintiff") will and does hereby move, pursuant to Federal Rule of Civil Procedure ("Rule") 23(e), for final approval of the class action settlement, for which this Court granted preliminary approval on June 30, 2022 (Dkt. 261), and request that the Court:

1. Finally approve the proposed class action settlement reflected in the amended Settlement Agreement (the "Settlement") between Plaintiff and Defendant WALMART INC. ("Walmart" or "Defendant") (formerly known as WAL-MART STORES, INC.) attached as Exhibit 1 to the Declaration of Shaun Setareh In Support of Plaintiff's Motion for Final Approval of Class Action Settlement ("Setareh Decl.") filed concurrently with this motion[1];

2. Confirming the appointment of Shaun Setareh and William M. Pao of Setareh Law Group and Stanley D. Saltzman of Marlin & Saltzman as Class Counsel and Plaintiff as Class Representative for the Settlement Class;

3. Finally approving Class Counsel's application for Class Counsel Fees for 1/3 of the gross settlement amount as authorized under the Settlement and in line with this Court's benchmark for attorneys' fees;

4. Finally approving Class Counsel's application for litigation costs which were expended in the amount of **$158,765.80,** as authorized under the Settlement;

5. Finally approving settlement administration costs to Phoenix Settlement Administrators in the amount of **$535,475.00**;

6. Finally approving an incentive award of **$20,000.00** to Plaintiff, as authorized

---

[1] All references to "Settlement" used in this motion are to the Settlement as amended.

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

1    under the Settlement; and

2    7. Enter final judgment to give finality to the Settlement.

3    This Motion is made on the following grounds: (1) the Settlement meets all the

4    requirements for class certification for settlement purposes under Rule 23(e); (2)

5    Plaintiff and his counsel are adequate to represent the Settlement Class; (3) the terms of

6    the Settlement are fair, adequate and reasonable; and (4) the notice process performed

7    by the Settlement Administrator comports with all applicable due process requirements.

8    In view of the foregoing, the Proposed Final Approval Order/Judgment submitted with

9    this Motion should be entered.

10    This Motion is based on this Notice of Motion and Motion, the attached

11    Memorandum of Points and Authorities, the Declarations of Shaun Setareh, Stanley D.

12    Saltzman, James S. Evans, Kevin Lee and, all exhibits thereto, all papers and pleadings

13    on file with the Court in this action, all matters judicially noticeable, and on such oral

14    and documentary evidence as may be presented at the hearing on this Motion.

15

16    DATED: October 28, 2022              SETAREH LAW GROUP

17

18                                        */s/ Shaun Setareh*
19                                        SHAUN SETAREH
                                          WILLIAM M. PAO
20                                        NOLAN DILTS
                                          Attorneys for Plaintiff
21                                        JAMES S. EVANS

22

23

24

25

26

27

28

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

1

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................ 1

II.   OVERVIEW OF THE SETTLEMENT ................................................ 4

      A.    SETTLEMENT CONSIDERATION ................................. 4

      B.    RELEASE OF CLAIMS ................................................. 6

            1.    Release By Plaintiff and Settlement Class Members .................... 6

            2.    Further General Release by Plaintiff Only .................... 7

      C.    NOTICE ........................................................................ 7

      D.    ALLOCATION AND PAYMENT OF SETTLEMENT AMOUNTS ........................................................................ 7

III.  THE SETTLEMENT MEETS THE STANDARDS GOVERNING JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS ..................... 9

      A.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE .............................................. 11

            1.    Plaintiff And Class Counsel Have Adequately Represented The Class .................... 12

            2.    The Settlement Was Negotiated At Arms'-Length ................. 14

            3.    The Relief to the Class Is Adequate ................. 14

            4.    The Proposed Settlement Treats Class Members Equitably Relative to Each Other ................. 15

            5.    The Reaction Of The Settlement Class Favors Approval ............ 16

IV.   NOTICE TO THE CLASS WAS ADEQUATE .............................. 17

V.    THE CAFA AND PAGA NOTICE REQUIREMENTS HAVE BEEN SATISFIED .............................................. 19

VI.   THIS COURT SHOULD GRANT CLASS COUNSEL'S REQUEST FOR FEES AND COSTS, THE CLASS ENHANCEMENT AWARD AND SETTLEMENT ADMINISTRATION COST ............................ 19

            1.    The Results Achieved: Substantial Benefits to the Class ............. 21

            2.    The Risks of Litigation .............................................. 23

            3.    The Complexity of the Case, the Skill Required and the Quality of the Work Performed ........................ 24

            4.    The Contingent Nature of the Fee and the Financial Burden Carried By Class Counsel ........................ 28

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

5.    Awards in Comparable Cases ............................................ 28

A.    A LODESTAR CROSS-CHECK CONFIRMS THAT THE
PROPOSED FEE IS REASONABLE ....................................... 29

B.    AN AWARD OF LITIGATION COSTS SHOULD BE MADE
FROM THE COMMON FUND ............................................... 31

C.    THE ENHANCEMENT AWARD IS REASONABLE ......................... 31

D.    THE SETTLEMENT ADMINISTRATOR'S EXPENSES
SHOULD BE APPROVED ..................................................... 32

VII.    CONCLUSION .................................................................... 32

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

# TABLE OF AUTHORITIES

## Cases

*Aguilar v. Wawona Frozen Foods*, No. 1:15-cv-00093-DAD, 2017 WL 2214936 (E.D. Cal. May 19, 2017)..................................................................................22

*Ahlstrom v. DHI Mortg. Co., Ltd., L.P.*, 21 F.4th 631 (9th Cir. December 29, 2021)..26

*Anthem, Inc. Data Breach Litigation*, 2018 WL 3960068, at *10 (N.D. Cal. Aug. 17, 2018)......................................................................................................15

*Arnold v. Fitflop USA, LLC*, 2014 WL 1670133, at *8 (S.D. Cal. Apr. 28, 2014).......16

*Beaver v. Tarsadia Hotels*, 2017 WL 43107074 (S.D. Cal. 2017) ...............................29

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015).............30

*Blair v. Rent-A-Center, Inc.*, 2020 WL 408970, at *2 (N.D. Cal. Jan. 24, 2020) ..........9

*Bluetooth Headset Products Liability Litig.*, 654 F.3d 935, 944 (9th Cir. 2011)..........20

*Boeing Company v. Van Gemert*, 444 U.S. 472, 478 (1980) ........................................20

*Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1020-21 (E.D. Cal. 2019)...........15

*Carlin v. DairyAmerica, Inc.*, 380 F.Supp.3d 998, 1018-23 (E.D. Cal. 2019).............22

*Chavez v. Converse, Inc.*, No. 15-CV03746-NC, 2020 WL 10575028, *5-*6 (N.D. Cal. Nov. 25, 2020) ....................................................................................21

*Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008).....................................21

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).........................18

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).......................9

*Critical Path, Inc.*, 2002 WL 32627559, at *5-6 (N.D. Cal. June 18, 2002) ...............15

*Echavaez v. Abercrombie & Fitch Co.* (C.D. Cal. March 23, 2017) ............................27

*Fornaio (America) Corporation v. Lazzari Fuel Company, LLC*, 2015 WL 2406966, at *1-2 (N.D. Cal. May 20, 2015) ...........................................................19

*Gilberg v. California Check Cashing Stores, LLC*, 913 F.3d 1169 (9th Cir. 2019) .....26

*Greer v. Dick's Sporting Goods., Inc.*, No. 2:15-CV-01063-KJM, 2020 WL 5535399, *11 (E.D. Cal. Sept. 15, 2020)............................................................21

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)..................................10

*Harris v. KM Industrial, Inc.,* 980 F.3d 694 (9th Cir. November 13, 2020) .................26

*Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) .........................32

*Joh v. American Income Life Ins. Co.*, No. 18-cv-06364-TSH, 2021 WL 66305, *7 (N.D. Cal. Jan.7, 2021) ............................................................................ 27

*Jordan v. Michael Page Int'l, Inc.*, 2020 WL 4919732, *8-*10 (C.D. Cal. Jul. 2, 2020) ........................................................................................................ 22

*Kang v. Wells Fargo Bank, N.A.*, No. 17-cv-06220-BLF, 2021 WL 5826230, *16 (N.D. Cal. Dec. 8, 2021) ....................................................................... 21

*Karl v. Zimmer Blomet Holdings, Inc.*, 2022 WL 658970, at *2 (N.D. Cal. Mar. 4, 2022)............................................................................................ 15

*Laffitte v. Robert Half Int'l., Inc.*, 1 Cal.5th 480, 489-90 (2016) .................. 20

*Laguna v. Coverall North America Corp.*, 753 F.3d 918, 922 (9th Cir. 2014)............. 21

*Lidoderm Antitr. Litig.*, No. 14-md-02521- WHO, 2018 WL 4620695, *1 (N.D. Cal. Sept. 20, 2018)............................................................................ 22

*Luna v. Marvell Tech Grp.*, 2018 WL 1900150, at *2 (N.D. Cal. Apr. 20, 2018)........ 17

*Magadia v. Wal-Mart Associates, Inc.*, 999 F.3d 668 (9th Cir. 2021)........................... 23

*Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995)......... 20

*McGrath v. Wyndham Resort Development Corporation*, 2018 WL 637858 (S.D. Cal. 2018).......................................................................................... 29

*Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ............................14, 15

*Mendenhall v. NTSB*, 213 F.3d 464, 472 (9th Cir. 2000) ...................................... 30

*Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980) ...........17, 18

*Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 ............................... 21

*Mills v. Auto Lite Co.*, 396 U.S. 375, 392-93 (1970) ............................................ 20

*Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395 (1970) ........................................ 25

*Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 452 (E.D. Cal. 2013) ............. 18

*Moreno v. Capital Bldg. Maint. & Cleaning Servs., Inc.*, No. 19-cv-07087- DMR, 2021 WL 4133860, *4-*6 (N.D. Cal. Sept. 10, 2021) .................................... 21

*Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)...................... 17

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D 523, 526 (C.D. Cal. 2004) ....................................................................................... 10

*Officers for Justice v. Civil Service Commission*, 688 F.2d 615, 625 (9th Cir. 1982)... 9, 10

*Omnivision Techs.*, 559 F.Supp.2d 1036, 1046 (N.D. Cal. 2007).................................. 21

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

*Parsittie v. Schneider Logistics, Inc. et al.,* Case No. 20-55470 (9th Cir. June 9, 2021) ........................................................................................................26

*Paul, Johnson, Alston, & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) ............21

*Pitre v. Wal-Mart Stores, Inc.*, 2019 WL 5294397 at *4 (C.D. Cal. 2019) ..................23

*re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) ...........................10

*re Nat'l Collegiate Athletic Assn. etc. Antitrust Litig.*, No. 4:14-md-2541-CA, 2017 WL 6040065, *3 (N.D. Cal. Dec. 6, 2017) ..............................................................28

*Reyes v. Bakery and Confectionery Union and Industry International Pension Fund*, 281 F. Supp. 3d 833, 848 (N.D. Cal. 2017) .......................................................16

*Ridgeway v. Wal-Mart Stores, Inc.*, No. 08-cv-05221-SI, 2017 WL 4071293 (N.D. Cal. Sept. 14, 2017, *aff'd* 946 F.3d 1066 (9th Cir. 2020) .........................................27

*Rodriguez v. Nike Retail Servs., Inc.*, No. 14-cv-01508-BLF, 2022 WL 254349, *5-*6 (N.D. Cal. Jan. 27, 2022) .................................................................................21

*Rodriguez v. U.S. Healthworks*, 813 Fed.Appx. 315 (9th Cir. 2020) .........................26

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 963 (9th Cir. 2003) ....................9

*Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997) ...........32

*Taylor v. Shippers Transport Express, Inc.*, 2015 ..................................................29

*Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) .......................16

*TransUnion LLC v. Ramirez,* 141 S. Ct. 2190 (2021) ............................................13

*Troester v. Starbucks Corp.,* 738 Fed. Appx. 562 (9th Cir. 2018) ............................26

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) ...............32

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) .....................20, 28

*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011) .........................................23

*Washington Public Power Supply Sys. Sec. Litig* ......................................20, 23, 24, 28

*Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) 20

*Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 254 (2001) ..........................20

*Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224, 255 (2001) ...........................31

<u>Statutes</u>

1453(b) ..............................................................................................................19

28 U.S.C. § 1715(b).............................................................................................19

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

28 U.S.C. §§ 1332(d) ................................................................. 19

28 U.S.C. section 1715(b) .......................................................... 19

Fed. R. Civ. P. 23(e) ................................................................. 12

Fed. R. Civ. P. 23(e)(2)(A)-(D) ................................................... 9

Fed. R. Civ. P. 23(e)(2)(A)-(D). .................................................. 12

Fed. R. Civ. P. 23(e)(2)(C)(i) ..................................................... 13

Fed. R. Civ. P. 23(h) ................................................................. 31

Federal Rule of Civil Procedure 23 .............................................. 9

Lab. Code § 2699 ...................................................................... 13

Labor Code § 2699 .................................................................... 13

Rule 23(c)(2)(B) ....................................................................... 18

Rule 23(e)(2) ........................................................................... 12

## Other Authorities

*Google Referrer Header Privacy Litig.*, 869 F.3d 737, 748 (9th Cir. 2017) ............... 30

*Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 456, 463 (9th Cir. 2000) ...................... 21

*Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 458 ............................................... 10

Newberg on Class Actions (4th ed. 2002) .................................................... 10

*Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) ........................... 21

*Prudential Ins. Co. Sales Practices Litig.*, 148 F.3d 283, 339 (1998) ....................... 24

*Re Equity Funding Corp. Sec. Litig.*, 438 F.Supp. 1303, 1337 (C.D. Cal. 1977) ........ 27

*re Prudential Ins. Co. Sales Practices Litig.*, 962 F.Supp. 572, 585-86 (D.N.J. 1997) 22

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION[2]

After almost five years of heavily contested litigation in this Court, Plaintiff is pleased to submit this motion for final approval of the $35 million non-reversionary Settlement reached for the benefit of the class.  The Settlement provides a substantial and immediate recovery for the approximately 264,000 Releasing Settlement Class Members.[3]  If approved, the Settlement Class Members are expected to receive an average *gross* settlement of **$161.15**, and the highest *gross* individual settlement payment is **$528.00**.  The expected *net* average settlement payment per Settlement Class Member is **$102.00**, and the highest *net* individual settlement payment is **$334.19**.  To date, Settlement Class Members have received the Settlement favorably, with **no** objections to the Settlement and just **73** requests for exclusion (which represents only 0.02% of the Settlement Class).

This is a significant, non-reversionary settlement reached after nearly five years of hard-fought litigation, including comprehensive discovery, Plaintiff's successful motion for class certification, the parties' cross-motions for summary judgment, and Defendant's motion for decertification.  Indeed, from the inception of this action, Plaintiff vigorously pursued his claims against Defendant for failure to provide him and others with compliant wage statements under Labor Code section 226.  This Settlement is a culmination of those efforts, and was reached on the morning of the Final Pre-Trial Conference only after extensive arms'-length negotiations that occurred during and after a full-day mediation.  Undoubtedly, the Settlement was the result of serious, well-

---

[2] Walmart does not concede the Plaintiff's allegations, nor does it concede all of the factual statements or characterizations of legal positions set forth herein. For purposes of this Settlement, however, Walmart does not oppose the filing of this Motion or the granting of final approval to the Settlement.

[3] Unless otherwise defined, capitalized terms used herein shall have the same meaning as used in the Settlement.

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

informed and non-collusive negotiations. *See* Dkt. 261 at p. 9 ("The Court observes that the Amended Settlement Agreement was reached after considerable investigation…"). And the $35 million Settlement is an outstanding result in view of the potential hurdles to recovering monetary relief had the case proceeded through trial.  As the Court recognized in the Preliminary Approval Order, "It appears to the Court on a preliminary basis that the Amended Settlement Agreement "is fair, adequate, and reasonable when considering that it provides Class Members with a definite recovery and is in proportion to the strengths and challenges associated with (1) achieving and maintaining certification of the claims, and (2) establishing liability for all claims." *Id.* The absence of any objections whatsoever to the Settlement and the low number of requests for exclusion relative to the Settlement Class further confirms that the Settlement will provide substantial benefits to the class.

Moreover, an award of attorneys' fees of one-third of the common fund is justified in this case especially given the substantial benefits to the class from a $35 million settlement given the defenses asserted by Defendant and the fact that one of the (many) allegations was based on an issue of first impression (*i.e.*, whether Defendant complied with Labor Code section 226 by providing electronic wage statements without an opportunity to elect paper wage statements).  It is also justified given Defendant's track record of reversing the trial courts and the substantial opposition Defendant brought to bear through its counsel of record Greenberg Traurig LLP through much of this litigation and its subsequent association with Gibson Dunn & Crutcher LLP just prior to trial.  Class Counsel, for their part, brought to bear their extensive and award-winning prior experience handling wage and hour class actions and appellate litigation in the Ninth Circuit and California Supreme Court; and even associated Stanley D. Saltzman, a seasoned litigator with extensive experience trying class action cases to verdict.  When viewed through the lens of how this case was litigated, the risks undertaken by Class Counsel not only in terms of time and money but also in terms of the nature of the claims (*i.e.,* an issue of first impression) and the

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

2

substantial opposition brought to bear by Defendant, as well as the procedural posture
when the parties were finally able to reach a settlement (*i.e.*, on the morning of the
Final Pre-Trial Conference after the parties had fully briefed their motions *in limine*),
the $35 million settlement is not only outstanding, but the one-third attorneys' fees
sought by Class Counsel is more than justified.

For these and other reasons discussed below, Plaintiff and Class Counsel believe
that this Settlement is eminently fair, adequate and reasonable. Accordingly, and for
their efforts in achieving this result, Plaintiff and Class Counsel, through this Motion,
respectfully request that this Court:

(1) Confirm its conditional certification of the Settlement Class for settlement
purposes;

(2) Confirm its appointment of Setareh Law Group and Marlin & Saltzman as
Settlement Class Counsel and Plaintiff as Settlement Class Representative for
the Settlement Class;

(3) Finally approve the Settlement between Plaintiff and Defendant;

(4) Finally approve the following awards to be paid from the Class Settlement
Amount, as authorized by the Amended Settlement Agreement ("Amended
Settlement Agreement"):

- Class Counsel Fees: **$11.666.666.66** (one-third of the Class Settlement
Amount) (Declaration of Shaun Setareh ("Setareh Decl."), ¶ 30;
Amended Settlement Agreement, ¶ 5.2.1);

- Class Counsel Expenses: **$158,765.80** in costs expended by Settlement
Class Counsel in litigating this action (Setareh Decl., ¶ 30; Amended
Settlement Agreement, ¶ 5.2.1);

- Notice and Administration Costs: **$535,475.00** (Declaration of Kevin

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT

Lee ("Lee Decl."),[4] ¶ 18); Amended Settlement Agreement, ¶ 5.2.3;

- <u>Settlement Class Representative Payment to Plaintiff</u>: **$20,000.00** to Plaintiff (Amended Settlement Agreement, ¶ 5.2.2); and

- <u>PAGA Payment Amount</u>: **$375,000.00** to the LWDA (Amended Settlement Agreement, ¶ 5.2.4);

- <u>Net Settlement Amount</u>: distribution of the remaining Net Settlement Amount as provided by the Amended Settlement Agreement (Settlement Agreement, ¶ 5.2.5); and

(5) Enter final judgment.

## II.  <u>OVERVIEW OF THE SETTLEMENT</u>

Plaintiff presumes the Court's familiarity with the litigation and rely upon the summary of the litigation in Plaintiff's Renewed Preliminary Approval Motion (Dkt. 258), including the Declaration of Shaun Setareh in support (Dkt. 258-1), which are expressly incorporated by reference.  The Amended Settlement Agreement is attached as Exhibit 1 to the Declaration of Shaun Setareh in Support of Motion for Final Approval of Class Action Settlement filed concurrently with this motion.[5] For the Court's ease of reference, Plaintiff briefly summarizes the pertinent terms of the Settlement.

### A.    SETTLEMENT CONSIDERATION

The Settlement provides for a Class Settlement Amount of **$35,000,000.00** to be paid by Defendant. (Amended Settlement Agreement, ¶ 5.1.)  The Settlement is non-reversionary; that is, no portion of the $35 million fund will ever revert back to Defendant. (*Id.*, ¶ 5.2.3.)  Significantly, no Settlement Class Member will be

---

[4] Per the Settlement Agreement, the Notice and Administration Costs have already been paid by Walmart.

[5] In its Order granting preliminary approval, this Court noted that Plaintiff did not submit the signed, non-redline Amended Settlement Agreement and directed Plaintiff to submit it with the Motion for Final Approval of Class Action Settlement.

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

required to submit a claim form. (*Id.*, ¶¶ 2.30, 8.2.)  If the Settlement is approved, checks will be mailed directly to the Settlement Class Members in the amount of their *pro-rata* share of the Settlement fund, net of any Court-approved deductions. (*See id.*, ¶ 5.2.5.)

The "Net Settlement Amount" ("NSA") is defined as the amount remaining from the Class Settlement Amount after subtracting (i) the Attorneys' Fees and Litigation Expenses awarded by the Court; (ii) the Settlement Class Representative Payment awarded to the Settlement Class Representative by the Court; (iii) all Notice and Administration Costs approved by the Court; (iv) the PAGA Payment Amount approved by the Court; and (v) and any other fees or expenses incurred in connection with this settlement as approved by the Court (including, without limitation, taxes on interest, if any, earned by the QSF but excluding the costs of sending CAFA notice to be borne by Walmart as set forth in Section 7 of the Amended Settlement Agreement) and shall be allocated as follows, subject to Court approval: (1) Attorneys' Fees to Class Counsel of up to 1/3 of the Class Settlement Amount, or **$11,666,666.66**; (2) **$158,765.80** in actual Litigation Costs and expenses to Class Counsel; (3) up to **$20,000.00** as an enhancement award to Plaintiff; (4) **$375,000.00** be paid to the LWDA (75% of the $500,000.00 allocated as civil penalties under PAGA); and (5) reasonable settlement administration costs which have already been paid to the Settlement Administrator in the amount of **$535,475.00**. (Amended Settlement Agreement, ¶ 5.2; Setareh Decl., ¶ 36; Lee Decl., ¶ 18.)

The Net Settlement Amount will be distributed as Individual Settlement Amounts to those Settlement Class Members who do not submit a timely Request to Opt Out. (Amended Settlement Agreement, ¶ 8.2.)  The Individual Settlement Amount for each such Settlement Class Member will be determined based on his or her proportional share of the Net Settlement Amount based on the total number of Applicable Pay Periods worked by each Settlement Class Member during the Settlement Class Period, provided, however, that Settlement Class Members who,

according to Walmart's records, were furnished all of their wage statements as a detachable part of a paper check shall be allocated a proportionally lower amount than Settlement Class Members who were not furnished all of their wage statements as a detachable part of a paper check. With respect to determining the number of pay periods allocated to each Settlement Class Member, Walmart's records of Applicable Pay Periods shall control.

The *gross* average estimated payment is **$161.15**, and the highest *gross* estimated payment is **$528.00**. (Lee Decl., ¶ 17.)  The *net* average estimated payment is **$102.00**, and the highest *net* estimated payment is **$334.19**. *Id.*  For tax purposes, the Individual Settlement Amounts paid to those Settlement Class Members shall be allocated as statutory and civil penalties and interest not subject to payroll tax withholdings. (Amended Settlement Agreement, ¶ 5.3.)

## B.    RELEASE OF CLAIMS

### 1.    Release By Plaintiff and Settlement Class Members

The Amended Settlement Agreement provides the following class-wide release:

Subject to final approval by the Court of the Settlement, and for good and valuable consideration set forth herein, the receipt and sufficiency of which is hereby acknowledged, all Releasing Settlement Class Members do hereby irrevocably release, acquit, and forever discharge all of the Releasees of and from any and all actual or potential claims, rights, demands, charges, complaints, causes of action, obligations, damages, penalties, debts, costs and expenses (other than those payments, costs, and expenses required to be paid pursuant to this Agreement), liens, or liabilities of any and every kind, that reasonably arise out of the same set of operative facts plead in the Complaint or First Amended Complaint in the Lawsuit, or that are reasonably related to the allegations in the Complaint or First Amended Complaint in the Lawsuit, with respect to claims that Walmart violated Section 226 of the Labor Code, whether known or unknown, whether such allegations were or could have been based on common law or equity, or on any statute, rule, regulation, order, or law, whether federal, state, or

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

6

local and whether for damages, wages, penalties or injunctive or any other kind of relief ("the Released Claims"). (Amended Settlement Agreement, ¶ 12.1.)

## 2. <u>Further General Release by Plaintiff Only</u>

In addition, as part of the Settlement Plaintiff also agreed to a broader general individual release, releasing in his individual capacity all manner of claims against Defendant. (Amended Settlement Agreement, ¶ 12.2.)

## C. NOTICE

As further discussed in the Declaration of Kevin Lee dated October 28, 2022 ("Lee Decl."), notice of the Settlement was effectuated by Phoenix in accordance with the Preliminary Approval Order and the Settlement. Specifically, within 30 calendar days of the issuance of the Preliminary Approval Order, Defendant provided Phoenix with the Settlement Class List including last known contact information for the Settlement Class Members. (*See* Lee Dec., ¶ 8.) Upon the receipt of the Settlement Class List, Phoenix prepared the individual class notices and conducted a national change of address search and a skip trace for the most recent mailing addresses of all former employee Settlement Class Members. (*Id.*, ¶¶ 4-7.) Thereafter, Phoenix caused the Postcard Notice to be mailed to 264,6387 Settlement Class Member addresses included on the Settlement Class List, via U.S. Postal Service First-Class mail, postage prepaid. (*Id.*, ¶ 8.) Notices returned as undeliverable by the U.S. Postal Service without a forwarding address were processed through address verification searches using TLOxp, one of the most comprehensive address databases available for skip tracing, and re-mailed to the updated addresses located through this process. (*Id.*, ¶ 10.) Of the 264,638 Notices mailed, 1,276 were not successfully delivered. (*Id.*, ¶ 11.)

In addition to mailing the Notices, Phoenix also established a toll-free number and the Settlement Website with links to documents relevant to the Action. (*Id.*, ¶¶ 5-6.) The Long Form Notice was published on the Settlement Website. (*Id.*, ¶ 6.)

## D. ALLOCATION AND PAYMENT OF SETTLEMENT AMOUNTS

Individual Settlement Payments will be calculated *pro-rata* based on the number

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

7

of pay periods each Settlement Class Member who did not opt out worked for Defendant in California during the Settlement Class Period (September 13, 2016 through July 26, 2021), as reflected in Walmart's records provided to Settlement Class Counsel and the Settlement Administrator.  (Amended Settlement Agreement., ¶¶ 2.36-2.37.)  In addition, all Settlement Class Members (regardless of whether he or she opted out) shall also receive a share of the **$125,000.00** PAGA allocation (25% of the **$500,000.00** allocated to PAGA). (*Id.*, ¶ 5.2.4.)

In accordance with the Amended Settlement Agreement, established the Qualified Settlement Fund ("QSF") and Defendant properly transferred the funds due following preliminary approval.  (Amended Settlement Agreement ¶ 10.1.1.) Within twenty (20) business days following the Settlement Effective Date, Walmart shall transfer the balance of the Class Settlement Amount to the QSF. (*Id.*, ¶ 10.1.2.)

The Settlement Administrator will distribute the money in the QSF by making the following payments:

- Paying the amount awarded by the Court for Attorneys' Fees and Litigation Expenses within three (3) business days after the receipt of the funds transferred to the QSF by Walmart. (*Id.*, ¶ 10.2.1.)

- Paying the amount awarded by the Court for the Settlement Class Representative Payment to the Settlement Class Representative within three (3) business days after the receipt of the funds transferred to the QSF by Walmart. (*Id.*, ¶ 10.2.2.)

- Paying the amount awarded by the Court for the PAGA Penalty Payment to the LWDA within three (3) business days after the receipt of funds transferred to the QSF by Walmart. (*Id.*, ¶ 10.2.3.)

- Paying the Individual Settlement Amounts from the from the Net Settlement Amount to Settlement Class Members within thirty (30) days of the funds transferred to the QSF by Walmart. (*Id.*, ¶ 10.2.4.)

Settlement Class Members will have ninety days (90) days from the date the

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

8

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

settlement checks are mailed to cash their settlement checks. (*Id.*, ¶ 10.3.)  Thirty (30) days prior to the close of the ninety (90) day period, the Settlement Administrator will send a reminder postcard to those Settlement Class Members who have not cashed their settlement checks. (*Id.*)

At the expiration of the period for redeeming final payments, the Settlement Administrator shall advise Walmart's Counsel and Settlement Class Counsel what amount, if any, remains in the QSF. (*Id.,* ¶ 10.4.)  Those funds represented by checks returned as undeliverable and those checks remaining un-cashed for more than 90 days after issuance will be voided and the equivalent amount will be sent to the Controller of the State of California, in the name of that Class Member, to be held pursuant to the Unclaimed Property Law for the benefit of the Class Member until such time as they claim their property, as allowed by law. (*Id.*)

## III.  THE SETTLEMENT MEETS THE STANDARDS GOVERNING JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS

It is well-established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution," particularly where class action litigation is involved. *See Officers for Justice v. Civil Service Commission*, 688 F.2d 615, 625 (9th Cir. 1982); s*ee also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.")  In determining if a class settlement warrants final approval under Federal Rule of Civil Procedure 23, the district court must find that the settlement is "fair, reasonable, and adequate" considering whether: (i) the class representatives and class counsel have adequately represented the class; (ii) the proposal was negotiated at arms'-length; (iii) the relief provided for the class is adequate; and (iv) the proposal treats class members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(A)-(D); *see also Rodriguez v. West Publishing Corp*., 563 F.3d 948, 963 (9th Cir. 2003); *Blair v. Rent-A-Center, Inc*., 2020 WL 408970, at *2 (N.D. Cal. Jan. 24, 2020) (Alsup, J.) (identifying various factors

9

1    courts look at in determining whether a settlement is fair, reasonable, and adequate).

2    The Court should also balance the continuing risks of litigation against the benefits

3    afforded to the class and the immediacy and certainty of a substantial recovery. *In re*

4    *Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *Nat'l Rural Telecomms.*

5    *Coop. v. DIRECTV, Inc.*, 221 F.R.D 523, 526 (C.D. Cal. 2004).  When, as here, a

6    proposed class settlement is negotiated at arms'-length and presented for court

7    approval, there is an initial presumption of fairness. *See* Newberg and Conte, Newberg

8    on Class Actions (4th ed. 2002), § 11:41, p. 90.

9        As the Ninth Circuit has explained, a decision "to approve or reject a settlement

10    is committed to the sound discretion of the trial judge because he is exposed to the

11    litigants, and their strategies, positions, and proof." *In re Mego Fin. Corp. Sec. Litig.*,

12    213 F.3d at 458.  The function of final approval is merely to "reach a reasoned

13    judgment that the agreement is not the product of fraud or overreaching by, or collusion

14    between, the negotiating parties, and that the settlement, taken as a whole, is fair,

15    reasonable, and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625; *see*

16    *also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (the question is

17    "not whether the final product could be prettier, smarter or snazzier, but whether it is

18    fair, adequate and free from collusion.").  As such, courts have taken a liberal approach

19    towards approval of class action settlements.  Indeed, "[i]n most situations, unless the

20    settlement is clearly inadequate, its acceptance and approval are preferable to lengthy

21    and expensive litigation with uncertain results." *Nat'l Rural Telecomms.*, 221 F.R.D. at

22    526.

23        Here, as further discussed below, the Settlement is fair, reasonable, and

24    adequate, and is a highly favorable result for the class.  Plaintiff and Class Counsel

25    have adequately represented the class, having vigorously litigated this action for nearly

26

27

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

five years against *the* largest corporation in the United States.[6]  To this end, Plaintiff and Class Counsel overcame significant hurdles in defeating multiple motions, including Defendant's motions for partial summary judgment and decertification.  The Settlement was the product of arms'-length negotiations that culminated on the morning of the Final Pre-Trial Conference.  And the relief afforded to the class is more than adequate, providing an average *gross* payment of **$161.15** each.

The proposal also treats class members equitably relative to each other based on an allocation that is driven by the number of pay periods each Settlement Class Member worked.  Additionally, notice of the Settlement was the best notice practicable under the circumstances.  To this end, notice was distributed by Phoenix Settlement Administrator, an experienced settlement claims administrator, in accordance with the Preliminary Approval Order, as further discussed above.

For these reasons, as further discussed below, the Settlement warrants final approval.

## A. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

A district court may approve a proposed class settlement only upon finding that it is fair, reasonable, and adequate, taking into account: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See Blair*, 2020 WL 408970, at *2 (citing Fed. R. Civ. P. 23(e)). Each of these factors were addressed at length in Plaintiffs' Motion for Preliminary Approval – which the Court considered

---

[6] On the Fortune 500 list, Walmart is ranked number 1. (https://fortune.com/fortune500/, last visited October 17, 2022.)

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT

and found "reflects the strengths and vulnerabilities of Plaintiff's case, the risks of class certification, and the risks of proceeding on the merits of the claims" (Dkt. 261 at p. 10) – and are expressly incorporated herein.  Pursuant to Rule 23(e)(2), the Court should also consider whether (i) the class representative and class counsel have adequately represented the class; (ii) the proposal was negotiated at arms'-length; (iii) the relief provided for the class is adequate; and (iv) the proposal treats class members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(A)-(D).

### 1.  Plaintiff And Class Counsel Have Adequately Represented The Class

Plaintiff and Class Counsel overcame significant hurdles for the benefit of the class, ultimately culminating in the substantial $35 million settlement.  Plaintiff successfully moved for class certification. (Dkt. 95.)  Plaintiff was likewise successful in defeating Defendant's motions for partial summary judgment and decertification. (Dkts. 181-182.)

Shortly thereafter, the parties agreed to participate in mediation before Michelle Yoshida of Philips ADR, a well-regarded mediator with extensive experience mediating class actions. (Setareh Decl., ¶ 19.)  Unfortunately, the parties were unable to resolve the matter at mediation. (*Id.*)

Counsel for the parties continued to discuss potential settlement intermittently after the unsuccessful mediation in December 2020.  Several days before the Final Pre-Trial Conference, discussions between counsel for the parties began again in earnest. Those settlement discussions continued through the night prior to and continued through the morning of the Final Pre-Trial Conference. (Setareh Decl., ¶ 22.) Ultimately, the parties agreed to settle the action on a class-wide basis for $35 million. (Setareh Decl., ¶ 23.)

With respect to the claims asserted on behalf of the Settlement Class, there were significant risks that support the reduced compromise amount. (Fed. R. Civ. P. 23(e)(2)(C)(i).)  These risks include, but are not limited to:

12

- the risk that the Supreme Court's recent decision in *TransUnion LLC v. Ramirez,* 141 S. Ct. 2190 (2021), holding that only a plaintiff concretely harmed by a defendant's conduct has Article III standing to seek damages in federal court may result in a finding that the putative class lacks standing to recover damages;

- the risk that uncertainties pertaining to the viability of Plaintiff's claims could preclude class-wide awards of statutory penalties under Labor Code section 226;

- the risk that any civil penalties awarded under the PAGA could be reduced by the Court in its discretion (*See* Lab. Code § 2699(e)(1));

- the risk that lengthy appellate litigation could ensue.  As there is a dearth of state court authority, there is a high likelihood that this Court might have certified the issue of whether an employer satisfies the requirements of Labor Code section 226 by furnishing electronic wage statements without affording employees an option to elect paper wage statements to the California Supreme Court.  Defendant strongly denies any liability and the propriety of class certification for any reason other than settlement.  Continued litigation of this lawsuit presented Plaintiff and Defendant with substantial legal risks that were (and continue to be) very difficult to assess.

Plaintiff and the Class ran the risk that no recovery would be obtained in the action if the matter proceeded to trial. (Setareh Decl., ¶ 38.)  At the time the proposed Settlement was reached, both parties had pending fully briefed motions *in limine* that could have significantly impacted the trial and were potentially dispositive as to the other party. (*Id.*)  Moreover, both parties had already taken and defended multiple depositions of the other party and their respective experts, with Plaintiff having survived summary judgment and decertification motions brought by Defendant, and with an impending trial and post-trial appeals before the case saw a positive conclusion, all of which were taken into account by both parties when agreeing to the Settlement.

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

13

1    (*Id.*)

2    ## 2.    The Settlement Was Negotiated At Arms'-Length

3    The Parties engaged in substantial investigation and analysis of the legal issues

4    in reaching a Settlement in this case. *Cf. In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d

5    454, 459 (9th Cir. 2000) (emphasizing that touchstone of analysis is whether "the

6    parties have sufficient information to make an informed decision about settlement,"

7    including formal and informal discovery) (citation omitted).  Even before the mediation

8    with Michelle Yoshida, Class Counsel not only reviewed thousands of pages of

9    documents, as well as payroll and timekeeping data, produced by Defendant during

10    discovery, but also by then had already successfully certified the class and defeated

11    Defendant's partial summary judgment and decertification motions. (Setareh Decl., ¶¶

12    13-18.)  The Parties also spent significant time preparing for, and taking part, in

13    mediation.  And although the parties were unable to reach a settlement at the mediation,

14    they continued to discuss potential settlement intermittently; these discussions

15    continued through the night prior to and through the morning of the Final Pre-Trial

16    Conference. (Setareh Decl., ¶ 226.)

17    ## 3.    The Relief to the Class Is Adequate

18    The Settlement provides substantial relief for the class.  Average *net* settlement

19    payments are expected to be **$102.00** each, with the highest individual payment of

20    **$334.19**.

21    Individual Settlement Payments will be calculated based on the Net Settlement

22    Amount times the ratio of the total pay periods worked by each Class Members for

23    Defendant in the State of California during the Settlement Class Period to the total pay

24    periods worked by all Settlement Class Members for Defendant in the State of

25    California during the Settlement Class Period. (Settlement, ¶ 5.2.5.)

26    The results achieved are exceptional and fully support approval of the

27    Settlement. *See, e.g*., *Karl v. Zimmer Blomet Holdings, Inc*., 2022 WL 658970, at *2

28    (N.D. Cal. Mar. 4, 2022) (Alsup, J.) (approving settlement representing 6.9% of

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

14

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

1  defendant's total exposure); *In re Anthem, Inc. Data Breach Litigation*, 2018 WL

2  3960068, at \*10 (N.D. Cal. Aug. 17, 2018) (approving settlement where the settlement

3  fund represented 14.5% of the projected recovery that class members would be entitled

4  to if they prevailed); *In re Critical Path, Inc*., 2002 WL 32627559, at \*5-6 (N.D. Cal.

5  June 18, 2002) (Alsup, J.) (approving settlement representing 8.5% of estimated

6  damages); *In re Mego Fin. Corp. Sec. Litig*., 213 F.3d at 459 (finding a settlement

7  amount of one-sixth of the potential recovery to be fair and reasonable).

8  ### 4.  The Proposed Settlement Treats Class Members Equitably Relative to Each Other

9

10  The Settlement treats each Class Member equitably relative to each other as each

11  Settlement Class Member who does not opt-out will receive payment calculated *pro-*

12  *rata* based on the number of pay periods he or she worked at a Walmart Retail Location

13  in California during the Settlement Class Period (September 13, 2016 through July 26,

14  2021). (Amended Settlement Agreement, ¶¶ 2.34, 2.37.)  Specifically, each Settlement

15  Class Member will receive, from the Net Settlement Amount, his or her Individual

16  Settlement Payment, calculated on a *pro-rata* basis based on the number of pay periods

17  each Settlement Class Member worked at a Walmart Retail Location in California

18  during the Settlement Class Period, calculated by dividing a Settlement Class

19  Member's individual pay periods worked by the total of all pay periods worked by all

20  Settlement Class Members during the Settlement Class Period, and multiplying this

21  result by the Net Settlement Amount. (*See id*., ¶ 2.3.) The number of pay periods

22  worked by each Settlement Class Member for the purposes of calculating Individual

23  Settlement Payments is based on Defendant's business records. (*Id*., ¶ 2.36.)  In

24  addition, Settlement Class Members (regardless of whether they opt-out) will also

25  receive a share of the **$125,000.00** PAGA allocation (25% of the total PAGA

26  allocation), calculated *pro-rata* based on the same number of pay periods they worked

27  during the PAGA Period (September 13, 2016 through July 26, 2021), as reflected in

28  Defendant's business records. (Settlement, ¶ 15.2.5.)  Within twenty (20) business days

15

following the date by which the Settlement is finally approved and the Court's final

approval order and the Judgment become binding and no longer subject to appeal (*i.e.*,

the Settlement Effective Date), Defendant shall fund the Settlement by transferring the

balance of the Class Settlement Amount to the QSF. (*Id.*, ¶ 10.1.2.)  The Settlement

Class Members' shares of the Net Settlement Amount and the LWDA's share of the

PAGA allocation will then be distributed by check within 3 business days after receipt

of the funds transferred to the QSF by Defendant pursuant to paragraph 10.1.2 of the

Settlement. (*Id.*, ¶¶ 10.2.2, 10.2.3.)  The Settlement Class Members will have 90 days

after mailing to cash their checks (*Id.*, ¶ 10.3), with reminder notices to be sent 60 days

after the mailing date to any Settlement Class Members who have not cashed their

checks. (*Id.*, ¶ 10.3.)

### 5.    The Reaction Of The Settlement Class Favors Approval

In evaluating the fairness, reasonableness, and adequacy of a settlement, courts

also consider the reaction of the class. *See Torrisi v. Tuscon Elec. Power Co*., 8 F.3d

1370, 1375 (9th Cir. 1993); *Reyes v. Bakery and Confectionery Union and Industry

International Pension Fund*, 281 F. Supp. 3d 833, 848 (N.D. Cal. 2017) ("class

members' positive reaction to a settlement weighs in favor of settlement approval");

*Arnold v. Fitflop USA, LLC*, 2014 WL 1670133, at *8 (S.D. Cal. Apr. 28, 2014) (the

reaction of the class to the proposed settlement "presents the most compelling argument

favoring settlement.")  Indeed, "the absence of a large number of objections to a

proposed class action settlement raises a strong presumption that the terms of a

proposed class settlement action are favorable to the class members." *Reyes*, 281 F.

Supp. 3d at 848) (internal quotations omitted); *see also Hanlon*, 150 F.3d at 1027 ("the

fact that the overwhelming majority of the class willingly approved the offer and stayed

in the class presents at least some objective positive commentary as to its fairness.").

Here, the reaction of the class favors approval.  The Postcard and Long Form

Notices advised the class of the terms of the Settlement, the plan of allocation, and

counsels' request for an award of attorneys' fees and expenses, as well as the procedure

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

16

and deadline for filing objections. (Dkt. 258-1, Ex. 1, Exhs. A and B.)  264,638 Notices were mailed to Settlement Class Members. (Lee Dec., ¶ 10.)  As of the date of this filing, not a single Class Member has filed an objection to the Settlement, the plan of allocation, counsels' request for an award of attorneys' fees and expenses, and service awards to the class representative and named plaintiff James S. Evans.  Accordingly, this factor weighs in favor of final approval of the Settlement.

## IV.    NOTICE TO THE CLASS WAS ADEQUATE

Notice of a class action settlement "must be 'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Blair¸* 2020 WL 408970 at *2 (quoting *Mullane v. Central Hanover Bank & Tr. Co*., 339 U.S. 306, 314 (1950)).  The notice must describe "'the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward and be heard.'" *Luna v. Marvell Tech Grp*., 2018 WL 1900150, at *2 (N.D. Cal. Apr. 20, 2018) (Alsup, J.) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)).  Notice by mail is sufficient to provide due process to known affected parties, so long as the notice is reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *See Monterrubio v. Best Buy Stores, L.P*., 291 F.R.D. 443, 452 (E.D. Cal. 2013).

The Court previously approved the parties' Notices in connection with the parties' motion for preliminary approval.  Specifically, the parties distributed a Postcard Notice to all Settlement Class Members. (Lee Decl., ¶ 10.)  Phoenix created the Settlement Website where the Long Form Notice was posted and available for Settlement Class Members to view.  The Notices advise class members of the essential terms of the Settlement, sets forth the procedure and deadline for submitting objections, identifies contacts for additional information, and provides specifics regarding the date, time, and place of the Final Fairness Hearing.  The Notices also included: (1) a statement indicating that Plaintiff's counsel intend to make an application for attorneys'

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

fees and costs, and the maximum amount of attorneys' fees they will seek; (2) the name, telephone number, and address of Class Counsel who will be reasonably available to answer questions from class members; (3) a brief statement explaining the reasons why the parties are proposing the Settlement; (4) the plan of allocation; and (5) a website dedicated to the Settlement (www.evanswalmartwageandhour.com) with information and links to pertinent documents. The content of the Notice is sufficient to satisfy Rule 23(c)(2)(B). *See Churchill Vill., LLC v. Gen. Elec.¸* 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'") (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)).

As required by the Settlement, Defendant provided Phoenix with the Settlement Class List on August 8, 2022, which included last known contact information for the Settlement Class Members. (Lee Dec., ¶ 6.) Upon the receipt of the Settlement Class List, Phoenix prepared the individual postcard notices and conducted a national change of address search and a skip trace for the most recent mailing addresses of all former employee Settlement Class Members. (*Id.*, ¶ 9.) On August 29, 2022, Phoenix caused the Postcard Notice to be mailed to all 264,638 Settlement Class Member addresses included on the Settlement Class List, via U.S. Postal Service First-Class mail, postage prepaid. (*Id.*, ¶ 10.)

As of October 28, 2022, the U.S. Postal Service has returned 7,035 of the Postcard Notices initially mailed as undeliverable. (*Id.*, ¶ 12.) As all the Notices were returned as undeliverable by the U.S. Postal Service without a forwarding address, they were processed through address verification searches using TransUnion TLOxp, one of the most comprehensive address databases available for skip tracing. As a result of the above-described efforts, a total of 5,759 Notices have been re-mailed. (*Id.*, ¶ 12.) Of the 264,638 Notices mailed, only 1,276 were not successfully delivered. (*Id.*, ¶ 13.)

This is well-within the parameters in this Circuit. *See, e.g. Il Fornaio (America)*

18

*Corporation v. Lazzari Fuel Company, LLC*, 2015 WL 2406966, at \*1-2 (N.D. Cal. May 20, 2015) (Alsup, J.) (approving notice where approximately 13% of the notices were undeliverable). Accordingly, notice to the class was adequate.

## V.     THE CAFA AND PAGA NOTICE REQUIREMENTS HAVE BEEN SATISFIED

Notice pursuant to Section 1715(b) of the Class Action Fairness Act of 2005 ("CAFA") to the appropriate federal and state officials is required in this action because this action is a class action and was removed from state court pursuant to the CAFA removal provisions. 28 U.S.C. §§ 1332(d) and 1453(b).  Defendant provided notice of the Settlement on September 13, 2021 and again on June 10, 2022 to provide an update in light of the Amended Settlement Agreement to the appropriate governmental officials as required by 28 U.S.C. § 1715(b).  As such, the final order will not be entered prior to 90 calendar days after notice as required pursuant to 28 U.S.C. section 1715(b).

In addition, on June 9, 2022, Class Counsel gave notice of the Settlement to the California Labor Workforce and Development Agency as required by PAGA. (Dkt. 260.)

## VI.    THIS COURT SHOULD GRANT CLASS COUNSEL'S REQUEST FOR FEES AND COSTS, THE CLASS ENHANCEMENT AWARD AND SETTLEMENT ADMINISTRATION COST

### A.     THE COMMON FUND DOCTRINE AND FACTORS THAT THE COURT SHOULD CONSIDER IN CALCULATING FEES

The United States Supreme Court has recognized that "a litigant or lawyer who recovers a fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole." *Boeing Company v. Van Gemert*, 444 U.S. 472, 478 (1980); *see Mills v. Auto Lite Co.*, 396 U.S. 375, 392-93 (1970). The purpose of the common fund doctrine is to avoid unjust enrichment: "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Public Power Supply Sys. Sec. Litig.*,

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

19

19 F.3d 1291, 1300 (9th Cir. 1994); *see also Laffitte v. Robert Half Int'l., Inc.*, 1 Cal.5th 480, 489-90 (2016) (California courts recognize the common fund doctrine). When, as here, the claims arise under California law, California law governs the calculation and award of attorneys' fees. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citing *Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995)). Both the Ninth Circuit and California courts recognize two methods of awarding attorneys' fees in class action cases: the percentage-of-recovery method and the lodestar/multiplier method. *In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d at 1295; *Laffitte*, 1 Cal.5th at 489-90; *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 254 (2001). Trial courts may cross-check one method against the other to ensure that the fee award is reasonable. *In re Bluetooth Headset Products Liability Litig.*, 654 F.3d 935, 944 (9th Cir. 2011); *Laffitte*, 1 Cal. 5th at 503; *Consumer Privacy Cases*, 175 Cal. App. 4th 545, 557 (2009).

The percentage-of-recovery method is most appropriate where, as here, the settlement results in a true common fund. *Laguna v. Coverall North America Corp.*, 753 F.3d 918, 922 (9th Cir. 2014). The "'recognized advantages of the percentage method'" include "'relative ease of calculation,'" which reduces the burden on the court, "alignment of incentives between counsel and the class," and "a better approximation of [private] market conditions'" in contingency-fee litigation. *Kang v. Wells Fargo Bank, N.A.*, No. 17-cv-06220-BLF, 2021 WL 5826230, *16 (N.D. Cal. Dec. 8, 2021) (quoting *Laffitte*, 1 Cal.5th at 503, 505)). The percentage method has long been the "dominant" method of determining fees in cases like this one, in which counsel's efforts generated a non-reversionary cash settlement fund in a fixed amount for the benefit of the class. *In re Omnivision Techs.*, 559 F.Supp.2d 1036, 1046 (N.D. Cal. 2007) (Conti, J.) (citing *Vizcaino*, 290 F.3d at 1046; *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311; *Paul, Johnson, Alston, & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)). Although the Ninth Circuit has established a "benchmark" fee of 25% for common fund cases, which a district court may increase or

20

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

decrease if warranted in a particular case, *Six Mexican Workers*, 904 F.2d at 1311 (9th Cir. 1990), there is no such benchmark under California law. In appropriate cases, state and federal courts applying the percentage-of-recovery method frequently award 33-1/3% of the common fund. *See, e.g., Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008) (empirical studies show that California fee awards generally average around one-third of the recovery); *Laffitte*, 1 Cal.5th at 486-88 (affirming 33-1/3% fee); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (same); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 456, 463 (9th Cir. 2000) (same).[7]

In *Vizcaino*, the Ninth Circuit identified five factors relevant to determining whether a particular percentage fee is reasonable: (1) the results achieved; (2) the risks of litigation; (3) the complexity of the case, the skill required and the quality of work performed by plaintiffs' counsel; (4) the contingent nature of the fee and the financial burden carried by plaintiffs' counsel; and (5) awards made in similar cases. *Vizcaino*, 290 F.3d at 1048-50. Applying the *Vizcaino* analysis, the requested one-third fee is reasonable under the circumstances of this case.

### 1.    The Results Achieved: Substantial Benefits to the Class

Exceptional results are a relevant circumstance. *See Torrisi*, 8 F.3d at 1377 (considering counsel's "expert handling of the case"); *Six(6) Mexican Workers*, 904

---

[7] *Accord Rodriguez v. Nike Retail Servs., Inc.*, No. 14-cv-01508-BLF, 2022 WL 254349, *5-*6 (N.D. Cal. Jan. 27, 2022); *Moreno v. Capital Bldg. Maint. & Cleaning Servs., Inc.*, No. 19-cv-07087- DMR, 2021 WL 4133860, *4-*6 (N.D. Cal. Sept. 10, 2021); *Chavez v. Converse, Inc.*, No. 15-CV03746-NC, 2020 WL 10575028, *5-*6 (N.D. Cal. Nov. 25, 2020); *Greer v. Dick's Sporting Goods., Inc.*, No. 2:15-CV-01063-KJM, 2020 WL 5535399, *11 (E.D. Cal. Sept. 15, 2020); *Jordan v. Michael Page Int'l, Inc.*, 2020 WL 4919732, *8-*10 (C.D. Cal. Jul. 2, 2020); *Carlin v. DairyAmerica, Inc.*, 380 F.Supp.3d 998, 1018-23 (E.D. Cal. 2019); *In re Lidoderm Antitr. Litig.*, No. 14-md-02521- WHO, 2018 WL 4620695, *1 (N.D. Cal. Sept. 20, 2018); *Aguilar v. Wawona Frozen Foods*, No. 1:15-cv-00093-DAD, 2017 WL 2214936 (E.D. Cal. May 19, 2017) (all awarding one-third under *Vizcaino*).

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

F.2d at 1311 (noting plaintiffs' "substantial success"); *In re Prudential Ins. Co. Sales Practices Litig.*, 148 F.3d at 339 (observing that "results achieved were 'nothing short of remarkable'" (quoting *In re Prudential Ins. Co. Sales Practices Litig.*, 962 F.Supp. 572, 585-86 (D.N.J. 1997))).

As a result of Class Counsel's efforts, a $35 million non-reversionary monetary recovery has been established for the benefit of the class.  This is an outstanding result. The $35 million settlement constitutes approximately 25% of the total potential recovery for just the wage statement claim of $554,676,800 *after* applying two 50% discounts for risk; taking into consideration the probability of prevailing at trial given that Defendant raised the issue that approximately 15,646 associates (representing approximately 8% of the entire class) switched from electronic wage statements to paper wage statements, and the fact that certain of the allegations  were based on an issue of first impression (*i.e.*, whether Defendant complied with Labor Code section 226 by providing electronic wage statements without an opportunity to elect paper wage statements). (*See* Dkt. 258 at 30:14-31:14.)

When awarding fees, courts routinely rely on the estimated gross recovery per class member, rather than the estimated net recovery, in order to assess the value to the class of the monetary settlement achieved by counsel. *E.g., Carlin*, 380 F.Supp.3d at 1020-21; *Lidoderm*, 2018 WL 4620695 at *2; *Omnivision*, 559 F.Supp.2d at 1046; *see also Heritage Bond*, 2005 WL 1594403 at *19 (considering both).  In this case, the average gross share is **$161.15** per class member, which represents 8.73% of average estimated wage statement. (Lee Decl., ¶ 17.) *See, e.g*., *Karl v. Zimmer Blomet Holdings, Inc*., 2022 WL 658970, at *2 (N.D. Cal. Mar. 4, 2022) (Alsup, J.) (approving settlement representing 6.9% of defendant's total exposure); *In re Anthem, Inc. Data Breach Litigation*, 2018 WL 3960068, at *10 (N.D. Cal. Aug. 17, 2018) (approving settlement where the settlement fund represented 14.5% of the projected recovery that class members would be entitled to if they prevailed); *In re Critical Path, Inc*., 2002 WL 32627559, at *5-6 (N.D. Cal. June 18, 2002) (Alsup, J.) (approving settlement

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

22

representing 8.5% of estimated damages); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d
at 459 (finding a settlement amount of one-sixth of the potential recovery to be fair and
reasonable).

This is an excellent recovery for the class and justifies the one-third fee.

## 2.    The Risks of Litigation

Risk is a relevant circumstance. *See In re Pacific Enters. Sec. Litig.*, 47 F.3d at
379 (holding fees justified "because of the complexity of the issues and the risks");
*Bebchick v. Wash. Metro. Area Transit Comm'n*, 805 F.2d 396, 408 (D.C. Cir. 1986)
(considering counsel's repeated successes in overturning adverse determinations)
(calculating lodestar); *cf. In re Washington Public Power Supply Sys. Sec. Litig.*, 19
F.3d at 1302 (finding district court's failure to apply multiplier to lodestar calculation
was abuse of discretion where case was "fraught with risk and recovery was far from
certain").

This litigation presented a very significant risk of total failure.

Defendant has a track record of reversing the trial courts. *See Magadia v. Wal-
Mart Associates, Inc.*, 999 F.3d 668 (9th Cir. 2021) (reversing a district court's $102
million judgment and holding that certain class members lacked Article III standing);
*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011) (reversing the trial court's class
certification order); *Pitre v. Wal-Mart Stores, Inc.*, 2019 WL 5294397 at *4 (C.D. Cal.
2019) (decertifying a class of almost 5 million class members due to lack of Article III
standing).

The risk undertaken by Class Counsel is further underscored by the fact, as
explained above, this case involved allegations that were issues of first impression with
no appellate case on point.  Not to mention the thousands of hours of professional time
spent by Class Counsel and the costs incurred by Class Counsel to prosecute this
action.  For its part, Defendant pursued a vigorous defense from day one.  Defendant
opposed Plaintiff's motion for class certification, Class Counsel also incurred the cost
of class notice (in the amount of **$84,573.37**, Setareh Decl., ¶ 30) shortly after the Court

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

23

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

certified the Wage Statement Class, without any assurance that the cost would ever be recouped.  Class Counsel mounted a vigorous opposition to Defendant's motion to decertify the certified class, which this Court denied, along with Defendant's motion for partial summary judgment which resulted in the wage statement claim being the only surviving claim for trial. (Dkts. 109, 118.)

All of Class Counsel's efforts were performed in the face of a formidable adversary.  Defendant is *the* largest corporation in the United States, and it is represented by Greenberg Traurig LLP, one of the country's preeminent and prestigious law firms long recognized for its ability to defend large corporations in complex litigation, who vigorously defended this action, asserting every available defense at every stage of the litigation. *Cf. In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d at 1301 n.10 ("The stronger the defense, the higher the risk involved … and the greater the [fee] necessary to compensate plaintiff's attorney for bringing the action."); *Carlin*, 380 F.Supp.3d at 1020 (overcoming "vigorous opposition" of "exceptionally skilled [defense] counsel" warranted above-benchmark fee percentage of 33%)  In short, this case was "extremely risky for class counsel" and the "results achieved were 'nothing short of remarkable.'" *Vizcaino*, 290 F.3d at 1048 (quoting *In re Prudential Ins. Co. Sales Practices Litig.*, 148 F.3d 283, 339 (1998)). The proposed one-third fee is appropriate to reward Class Counsel for undertaking such high-risk litigation and for doing so skillfully and successfully.

### 3.    The Complexity of the Case, the Skill Required and the Quality of the Work Performed

Incidental or non-monetary benefits conferred by the litigation are a relevant circumstance. *See In re Pacific Enters. Sec. Litig.*, 47 F.3d at 379 (considering "nonmonetary benefits in the derivative settlement"); *cf. Bebchick*, 805 F.2d at 408 (allowing an upward adjustment to the lodestar "to reflect the benefits to the public flowing from [the] litigation"); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395 (1970) (stating that a corporation may receive a substantial benefit from a derivative suit

24

justifying a fee award regardless of whether the benefit is pecuniary).`

As mentioned above, this case involved issues of first impression. The complexity of this class action is evident from the record, including this Court's own detailed orders on Plaintiff's class certification motion and Defendant's partial summary judgment and decertification motions; the volume of discovery conducted; the magnitude of the evidentiary record presented on class certification and on summary judgment; and the fact that the litigation has been ongoing for almost five years, since September 13, 2017. The skill employed and the quality of the work performed by Class Counsel are demonstrated by the outstanding results they achieved and the volume and magnitude of the risks they overcame on their way to the $35 million settlement.

Class Counsel brought to bear their extensive and award-winning prior experience handling wage and hour class actions and appellate litigation in the Ninth Circuit and California Supreme Court. Setareh Law Group was lead trial counsel *in Troester v. Starbucks Corporation* that resulted in the California Supreme Court rejecting the federal *de minimus* doctrine in California wage-and-hour laws. *Troester,* 5 Cal.5th 829 (2018). For his work in *Troester,* Shaun Setareh was awarded the California Lawyer of the Year by the Daily Journal. (Setareh Decl., ¶ 28(a)-(i).) Moreover, the Setareh Law Group has more than 250 Westlaw-citable opinions and has prevailed in six out of its last seven Ninth Circuit appeals.[8] The Setareh Law Group

---

[8] (i) *Troester v. Starbucks Corp.,* 738 Fed. Appx. 562 (9th Cir. 2018) (Ninth Circuit opinion following the California Supreme Court answering the Ninth Circuit's certified question); (ii) *Gilberg v. California Check Cashing Stores, LLC*, 913 F.3d 1169 (9th Cir. 2019) (vacated district court's summary judgment in favor of Defendants and remanded for further proceedings, holding that Defendants' Fair Credit Reporting Act disclosure form lacked sufficient clarity in a published opinion); (iii) *Rodriguez v. U.S. Healthworks*, 813 Fed.Appx. 315 (9th Cir. 2020) (reversed district court's summary judgement in favor of Defendants with instructions to remand the action to state court); (iv) *Harris v. KM Industrial, Inc.,*

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

1    was also lead trial counsel in *Gilberg v. California Check Cashing Stores, LLC*, 913

2    F.3d 1169 (9th Cir. 2019) (clarifying the Ninth Circuit's seminal decision in *Syed v. M-*

3    *1, LLC*, 853 F.3d 492 that the FCRA's standalone disclosure requirements does not

4    permit *any* extraneous language). (Setareh Decl., ¶ 28(g).)

5        And just as important, Class Counsel associated with Stanley D. Saltzman as

6    lead trial counsel in the event this matter proceeded to trial.  Mr. Saltzman has

7    extensive experience litigating complex class actions throughout the country and was

8    co-lead trial counsel in a class action against Defendant where the trial court awarded

9    almost $61 million in damages after a 16-day trial in *Ridgeway v. Wal-Mart Stores,*

10   *Inc.*, No. 08-cv-05221-SI, 2017 WL 4071293 (N.D. Cal. Sept. 14, 2017, *aff'd* 946 F.3d

11   1066 (9th Cir. 2020)) [9]. (Declaration of Stanley D. Saltzman ("Saltzman Decl."), ¶ 15.)

12       Lastly, as notices were provided to the LWDA regarding the terms of the

13   Settlement on June 9, 2022 (Dkt. 260), the LWDA could have and would have

14   intervened in this action at any point since then if it had determined that intervention

15   was necessary to protect the State's interest.  That it has not done so is presumptive

16   evidence that the State does not object to the terms of the settlement. *See Echavaez v.*

17   *Abercrombie & Fitch Co.* (C.D. Cal. March 23, 2017), No. CV 11-09754-GAF, 2017

18

19   _____

20   980 F.3d 694 (9th Cir. November 13, 2020) (affirmed the district court's granting of
     Plaintiff's motion to remand, holding in a published opinion that Defendants had
21   failed to establish by a preponderance of the evidence that the amount in
     controversy exceeded $5 million as required under the Class Action Fairness Act for
22   removal); (v) *Parsittie v. Schneider Logistics, Inc. et al.,* Case No. 20-55470 (9th
     Cir. June 9, 2021) (reversed the district court's dismissal of Plaintiff's meal and rest
23   break claims, holding that Plaintiff's security check allegations were sufficient to
     state a claim for break-time violations and remanding for further proceedings); (vi)
24   *Ahlstrom v. DHI Mortg. Co., Ltd., L.P.*, 21 F.4th 631 (9th Cir. December 29, 2021)
25   (reversed the district court's ruling compelling claims to arbitration, holding that
     parties cannot delegate issues of formation of an arbitration agreement to the
26   arbitrator for determination).
27
         [9] The court also awarded $13,000,000.00 in statutory attorneys' fees.
28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

1  U.S. Dist. LEXIS 141134, at *10 (because the LWDA was invited to respond to

2  proposed settlement and did not respond in any way, court drew an inference that

3  LWDA did not object to the terms of settlement).

4      Successful pursuit of a complex class action requires unique skills and abilities.

5  *Carlin*, 380 F.Supp.3d at 1021; *Joh v. American Income Life Ins. Co*., No. 18-cv-

6  06364-TSH, 2021 WL 66305, *7 (N.D. Cal. Jan.7, 2021) (citing *Omnivision*, 559

7  F.Supp.2d at 1047).  That is particularly true in this case.  Class Counsel prevailed

8  without the benefit of any factually on-point precedents, both on the merits of their

9  wage statement theory of liability and on the application of class certification principles

10  to that theory.  "[T]he quality of Class Counsel's effort, experience and skill is

11  demonstrated in the exceptional result achieved." *In re Heritage Bond Litig*., 2005 WL

12  1594403 at *19.

13      The quality of opposing counsel is also important in evaluating the excellence of

14  Class Counsel's work. *See In Re Equity Funding Corp. Sec. Litig*., 438 F.Supp. 1303,

15  1337 (C.D. Cal. 1977) (counsel who faced off "against established and skillful defense

16  lawyers … should be compensated accordingly").  Defendant was represented by

17  Greenberg Traurig LLP throughout much of this litigation, a firm with significant

18  experience in complex litigation, including wage and hour class actions.  Eventually,

19  Scott A. Edelman of Gibson, Dunn & Crutcher LLP was associated as lead trial

20  counsel on behalf of Defendant. (Dkt. 225.)  With this association, there was no less

21  than five partners all with extensive experience litigating complex class actions

22  involved in this case on behalf of Defendant.  That Class Counsel prevailed in the face

23  of such capable opposition further underscores the high quality of the work and skill

24  they brought to bear for the benefit of the class.[10]

25

26      [10] *See, e.g., In re Nat'l Collegiate Athletic Assn. etc. Antitrust Litig*., No. 4:14-

27  md-2541-CA, 2017 WL 6040065, *3 (N.D. Cal. Dec. 6, 2017) (hereafter "*NCAA*")

28  ("Plaintiffs' counsel achieved these exceptional raw-dollar, percentage, and per

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

4.   **The Contingent Nature of the Fee and the Financial Burden Carried By Class Counsel**

Class Counsel undertook this litigation on a pure contingency basis. Class Counsel pursued the litigation for almost five years in the face of significant setbacks, expending thousands of hours in professional time and declining other potentially remunerative work. "These burdens are relevant circumstances." *Vizcaino*, 290 F.3d at 1050 (citing *Six (6) Mexican Workers*, 904 F.2d at 1311). Attorneys should be "reward[ed]" "for taking the risk of non-payment by paying them a premium … for winning contingency cases," thereby "assuring competent representation for plaintiffs who could not afford to pay on an hourly basis …." *In re Washington Public Power Supply Sys. Sec. Litig*, 19 F.3d at 1299-1300. What is more, Class Counsel incurred over $150,000.00 in out-of-pocket litigation costs (as discussed further below). "This substantial outlay, when there [was] a risk that none of it [would] be recovered, further supports the award of the requested fees." *Omnivision*, 559 F. Supp. 2d at 1047. "A higher-than-benchmark award exists to reward counsel for investing "substantial time, effort, and money, especially in light of the risks of recovering nothing." *Carlin*, 380 F.Supp.3d at 1021 (quoting *In re Washington Public Power Supply Sys. Sec. Litig*, 19 F.3d at 1299-300); *see also Vizcaino*, 290 F.3d at 1051 ("[C]ourts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases.").

5.   **Awards in Comparable Cases**

As noted above, this case involved a certified class claim concerning issues of first impression. In other wage-and-hour cases involving an issue of first impression resulting in a sizable settlement for the benefit of the class, class counsel were awarded

---

capita results despite facing off against some of the best, and most well-resourced, defense lawyers in the country."); *In re Heritage Bond*, 2005 WL 1594403, *20 (noting defense counsel's "local and nationwide reputations for vigorous advocacy in the defense of their clients" in approving one-third fee to plaintiffs' counsel).

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

at least one third of the common fund.  For example, in *Lafitte*, the California Supreme Court affirmed a one-third award in a related wage and hour class actions that, like this case, involved extensive discovery, contentious law and motion practice, motions for summary judgment, a class certification motion, several experts, and even mediation. *Lafitte*, 1 Cal.5th at 506 (awarding one third attorneys' fees on a $19 million settlement); *Beaver v. Tarsadia Hotels*, 2017 WL 43107074 (S.D. Cal. 2017) (in a wage-and-hour class action involving novel issues awarding one-third attorneys' fees on a $51 million settlement); *Taylor v. Shippers Transport Express, Inc.*, 2015 WL 12658458 at *14 (awarding one third attorneys' fees on an $11 million settlement in a wage-and-hour case where a class was certified and survived summary judgment); *McGrath v. Wyndham Resort Development Corporation*, 2018 WL 637858 (S.D. Cal. 2018) (awarding one-third of attorneys' fees on a $7,250,000 settlement (where the parties completed exhaustive discovery, fully briefed motions for summary judgment and class certification, and participated in a full-day mediation).

## A.   A LODESTAR CROSS-CHECK CONFIRMS THAT THE PROPOSED FEE IS REASONABLE

Generally, a district court is "not required" to conduct a lodestar cross-check to assess the reasonableness of a fee award. *See In re Google Referrer Header Privacy Litig.*, 869 F.3d 737, 748 (9th Cir. 2017). A district court may, however, elect to perform such a check in order to confirm "the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050.  Even a pure lodestar-based fee award does not require mathematical precision. *Mendenhall v. NTSB*, 213 F.3d 464, 472 (9th Cir. 2000)32; *Laffitte*, 1 Cal.5th at 505. "Where a lodestar is merely being used as a cross-check, the court 'may use a rough calculation ….'" *Joh*, 2021 WL 66305 at *7 (quoting *Aguilar*, 2017 WL 2214936 at *5)); *Kang*, 2021 WL 5826230, *17 ("on a lodestar cross-check this Court is not required to flyspeck the time sheets"); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015) ("lodestar cross-check calculation need entail neither mathematical precision nor bean counting"). "[T]he lodestar calculation

29

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

1  can be helpful in suggesting a higher percentage when," as in this case, the "litigation

2  has been protracted." *Vizcaino*, 290 F.3d at 1050.

3  Class Counsel's lodestar to date is $3,352,394, reflecting 4,149.28 hours of

4  professional time[11] that have been devoted to this case thus far. (Setareh Decl. ¶ 47.)

5  The lodestar figures are based on hourly rates ranging from $95 for paralegals up to

6  $1200 for senior partners, which have been accepted by other courts as fair and

7  reasonable.  The blended rate is $807.9 per hour. (Setareh Decl., ¶ 47.)

8  Based on the current lodestar, the proposed fee award of **$11,666,666.66**

9  represents a multiplier of **3.4795**. This is eminently reasonable in view of "the

10  substantial risk class counsel faced, compounded by the litigation's duration and

11  complexity"—factors that would have justified a significantly higher multiplier under

12  both federal and California law. *Vizcaino*, 290 F.3d at 1051 (affirming multiplier of

13  3.65); *Omnivision*, 559 F.Supp.2d at 1048 (courts have approved multipliers between 1

14  and 4); *NCAA*, 2017 WL 6040065 at *7 (approving 3.66 multiplier); *Wershba v. Apple

15  Computer, Inc.*, 91 Cal.App.4th 224, 255 (2001) ("Multipliers can range from 2 to 4 or

16  even higher"); *Chavez*, 162 Cal.App.4th at 66 (2.5 multiplier). Between now and the

17  close of settlement administration, Class Counsel anticipate devoting additional hours

18  to such tasks as communicating with class members, coordinating with the Settlement

19  Administrator and defense counsel, drafting the final approval motion, presenting

20  argument at the final approval hearing, and overseeing post-approval distribution.

21  (Setareh Decl. ¶ 50.)

22  In sum, a lodestar cross-check confirms that a fee award of one third of the

23  common fund is reasonable and appropriate in this case.

24  ///

25

26  ───────────────

27  [11] Setareh Decl., ¶ 49. Detailed summaries of the work performed and time
spent from inception through the present are set forth in the declaration of Class

28  Counsel, filed herewith.

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

## B.    AN AWARD OF LITIGATION COSTS SHOULD BE MADE FROM THE COMMON FUND

In a common fund settlement, Class Counsel are entitled to recover the reasonable expenses incurred in prosecuting the litigation. Fed. R. Civ. P. 23(h); *Omnivision*, 559 F.Supp.2d at 1047.  Here, Class Counsel initially estimated that the out-of-pocket litigation costs incurred by all plaintiffs' counsel would not exceed $250,000.00. (Dkt. 258 at 17.)  The actual costs to date turned out to be less than the estimated figure. This motion seeks costs totaling **$158,765.80**. (Setareh Decl., ¶ 30), including **$84,573.37** for the 2015 class notice; **$18,419.00** in expert costs (including a damages expert and a consulting expert); and **$7,500.00** for mediation. (*Id.*)  All of these costs were reasonably incurred in the prosecution of this matter over the past five years, benefitted the class, and would have been charged to a paying client had this been a non-contingency case.  The costs are therefore reimbursable. *Kang*, 2021 WL 5826230 at *16 (awarding $99,000 in costs); *LendingClub*, 2018 WL 4586669 at *3 ($456,000 in costs); *Omnivision*, 559 F. Supp. 2d at 1047 ($560,000 in costs).

The Court is respectfully asked to award them.

## C.    THE ENHANCEMENT AWARD IS REASONABLE

Enhancement awards serve to reward the named plaintiffs for the time and effort expended on behalf of the class, and for exposing themselves to the significant risks of litigation.  "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Ingram v. The Coca-Cola Co*., 200 F.R.D. 685, 694 (N.D. Ga. 2001); *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997).  In *CocaCola*, for example, the court approved enhancement awards of $300,000 to each named plaintiff in recognition of the services they provided to the class by responding to discovery, participating in the mediation process and taking the risk of stepping forward on behalf of the class. *Coca-Cola*, 200 F.R.D. at 694; see *also Van Vranken v. Atl. Richfield Co*., 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000

31

participation award).  Here, Class Counsel counsel requests that the Court grant an enhancement award of **$20,000.00** to Plaintiff.  The amount of the enhancement award requested for Plaintiff is reasonable given the risks undertaken by Plaintiff.  Taking the risk of filing a lawsuit against an employer deserves reward, especially in light of the settlement achieved by Plaintiff.

Additionally, Plaintiff was actively involved in the litigation and settlement negotiations of this action.  Plaintiff worked diligently with counsel to prepare the action, provided detailed accounts of his experience working for Defendant and provided several declarations to support Plaintiff's motion for class certification and opposing Defendant's motions for partial summary judgment and decertification, and made himself available by telephone during mediation and conferred with counsel regarding settlement negotiations. (Declaration of James S. Evans In Support of Motion for Preliminary Approval ("Evans Prelim. App. Decl."), ¶ 7.)  Plaintiff undertook to prosecute the case despite the risk of a cost judgment against him, and despite the potential risk that prospective employers would hold it against them. (Evans Prelim. App. Decl., ¶¶ 8-9.)  The requested enhancement award is reasonable and should be approved.

### D.    THE SETTLEMENT ADMINISTRATOR'S EXPENSES SHOULD BE APPROVED

The charges for the Settlement Administrator Phoenix are capped at **$535,475.00**. (Lee Decl. ¶ 18.) Phoenix's costs to administer this settlement match the **$535,475.00** amount allocated in the Settlement Agreement are reasonable and should be approved. (Setareh Decl., ¶ 36.)  As noted above, Defendant has already transferred these funds to the QSF in accordance with the terms of the Amended Settlement Agreement.  (Amended Settlement Agreement, ¶10.1.1.)

### VII.    CONCLUSION

This settlement is fair and reasonable, especially given the novelty of the claims and the potential defenses raised by Defendant. Thus, the **$35 million** gross settlement

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

is worthy of final approval.  And because Class counsel were required to expend
considerable resources and take risks to obtain that result, fair compensation is also
reasonable.  For the reasons set forth herein, Plaintiff request that the Court award Class
counsel **$11,666,666.66** in fees, which is one-third of the gross settlement and roughly
**3.4795** times the lodestar of Plaintiff's counsel and **$158,765.80** in costs and
**$20,000.00** enhancement award to Plaintiff Evans.


DATED:  October 28, 2022                    SETAREH LAW GROUP



                                            */s/ Shaun Setareh*
                                            SHAUN SETAREH
                                            WILLIAM M. PAO
                                            NOLAN DILTS
                                            Attorneys for Plaintiff
                                            JAMES S. EVANS

SETAREH LAW GROUP
ATTORNEYS AT LAW
9665 WILSHIRE BOULEVARD, SUITE 430
BEVERLY HILLS, CALIFORNIA 90212
(310) 888-7771

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT